1  WILLIAM L. STERN (CA SBN 96105)
   WStern@mofo.com
2  WILLIAM F. TARANTINO (CA SBN 215343)
   WTarantino@mofo.com
3  CLAUDIA M. VETESI (CA SBN 233485)
   CVetesi@mofo.com
4  MORRISON & FOERSTER LLP
   425 Market Street
5  San Francisco, California  94105-2482
   Telephone: 415.268.7000
6  Facsimile: 415.268.7522

7  Attorneys for Defendant
   THE HERSHEY COMPANY
8

9              UNITED STATES DISTRICT COURT

10            NORTHERN DISTRICT OF CALIFORNIA

11                  SAN JOSE DIVISION

12

13  LEON KHASIN, an individual, on his own          Case No. CV12-01862 EJD
    behalf and on behalf of all others similarly
14  situated,                                        **NOTICE OF MOTION AND MOTION;
                                                     MEMORANDUM OF POINTS AND
15                    Plaintiff,                      AUTHORITIES IN SUPPORT OF
                                                     DEFENDANT THE HERSHEY
16          v.                                       COMPANY'S MOTION TO DISMISS OR,
                                                     IN THE ALTERNATIVE, MOTION TO
17  THE HERSHEY COMPANY,                             STRIKE**

18                    Defendant.                     Hearing Date: August 10, 2012
                                                     Time:  9:00 a.m.
19                                                   Judge:  Hon. Edward J. Davila
                                                     Action Filed:  April 13, 2012
20

21

22

23

24

25

26

27

28

## **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ............................................................................................. ii

NOTICE OF MOTION AND MOTION ........................................................................... ix

STATEMENT OF THE ISSUES TO BE DECIDED ......................................................... x

MEMORANDUM OF POINTS & AUTHORITIES ........................................................... 1

I.      INTRODUCTION AND SUMMARY OF ARGUMENT .................................... 1

II.     FACTUAL BACKGROUND ............................................................................ 2

III.    THE LEGAL STANDARD ............................................................................... 3

IV.     ARGUMENT .................................................................................................... 3

    A.      All of Plaintiff's Claims are Preempted. ............................................... 3

        1.      Plaintiff Has No Private Right of Action to Enforce FDA
            Regulations. ...................................................................... 4

        2.      The Sherman Law Cannot Be Used To Enforce FDA Regulations. .......... 6

        3.      Plaintiff's State Law Claims Are Expressly Preempted. ............................ 7

        4.      In the Alternative, the Court Should Abstain or Stay the Case
            Under the Doctrine of Primary Jurisdiction. ............................................ 10

    B.      Plaintiff Has Not Alleged Plausible Legal Injury, Reliance, or Deception. .......... 10

        1.      Plaintiff's Claims Are Facially Implausible. ........................................... 10

        2.      Plaintiff Has Not Pled His Case with the Requisite Particularity. ............ 13

    C.      Plaintiff Cannot Satisfy Article III's "Case or Controversy" Requirement. ......... 15

        1.      The Court Should Strike All Claims Regarding Statements
            Plaintiff Did Not See. .............................................................................. 15

        2.      This is a No-Injury Case that Fails the Test of Article III. ....................... 16

    D.      Plaintiff Cannot Show that the Labels Violate FDA Regulations or Policy. ......... 18

        1.      The NAD Has Found Hershey's Antioxidant Claims
            Substantiated. ......................................................................................... 18

        2.      Hershey's Nutrient and Antioxidant Statements Are Not Nutrient
            Content Claims. ..................................................................................... 19

        3.      Health Claims ........................................................................................ 21

    E.      Plaintiff's Claims All Fail for Other, Claim-Specific Reasons. ........................... 21

        1.      Plaintiff's UCL, CLRA, and FAL Claims Fail to State a Claim. .............. 21

        2.      Plaintiff's Breach of Warranty Claims Should Be Dismissed. ................. 22

        3.      "Unjust Enrichment" is Not a Cause of Action in California. ................... 23

V.      CONCLUSION ............................................................................................... 24

1

**TABLE OF AUTHORITIES**

2

**Page(s)**

3

C<small>ASES</small>

4

*Albertson's, Inc. v. Kanter,*
5
    129 S. Ct. 896 (2009) ................................................................................................... 9

6

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ..................................................................................... 3, 11, 13, 18

7

*Bell Atl. Corp. v. Twombly,*
8
    550 U.S. 544 (2007) ............................................................................................... 11, 13

9

*Birdsong v. Apple, Inc.,*
    590 F.3d 955 (9th Cir. 2009) ............................................................................... 17, 21
10

*Briehl v. GMC,*
11
    172 F.3d 623 (8th Cir. 1999) ..................................................................................... 17

12

*Buckman Co. v. Pls.' Legal Comm.,*
13
    531 U.S. 341 (2001) ..................................................................................................... 4

14

*Cahill v. Liberty Mut. Ins. Co.,*
    80 F.3d 336 (9th Cir. 1996) ......................................................................................... 3
15

16

*Carrea v. Dreyer's Grand Ice Cream, Inc.,*
    No. C 10-01044 JSW, 2011 WL 159380 (N.D. Cal. Jan. 10, 2011),
17
    *aff'd,* No. 11–15263, 2012 WL 1131526 (9th Cir. Apr. 5, 2012) ............................. 8

18

*Chacanaca v. Quaker Oats Co.,*
    752 F. Supp. 2d 1111 (N.D. Cal. 2010) ..................................................................... 9
19

*Chavez v. Nestle USA, Inc.,*
20
    No. CV 09-9192-GW,
    2011 U.S. Dist. LEXIS 9773 (C.D. Cal. Jan. 10, 2011) ............................................ 5
21

22

*Chavez v. Nestle USA, Inc.,*
    No. CV 09-91920GW(CWx),
23
    2011 U.S. Dist. LEXIS 58733 (C.D. Cal. May 2, 2011) ...................................... 8, 11

24

*Clark v. Time Warner Cable,*
    523 F.3d 1110 (9th Cir. 2008) ................................................................................... 10
25

*Degelmann v. Advanced Med. Optics, Inc.,*
26
    659 F.3d 835 (2011) .............................................................................................. 7, 18

27

*Desert Healthcare Dist. v. PacifiCare FHP, Inc.,*
28
    94 Cal. App. 4th 781 (2001) ...................................................................................... 10

*Dvora v. Gen. Mills, Inc.*,
　No. CV 11-1074-GW(PLAx), 2011 WL 1897349 (C.D. Cal. May 16, 2011)........................15

*Edmunson v. Procter & Gamble Co.*,
　No. 10-CV-2256-IEG (NLS), 2011 U.S. Dist. LEXIS 53221 (S.D. Cal. May 17, 2011).......14

*Farm Raised Salmon Cases*,
　42 Cal. 4th 1077 (2008)..................................................................................................6

*Freeman v. Time, Inc.*,
　68 F.3d 285 (9th Cir. 1995)...........................................................................................13

*Frye v. L'Oreal USA, Inc.*,
　583 F. Supp. 2d 954 (N.D. Ill. 2008).............................................................................17

*Gomez v. Wells Fargo Bank, N.A.*,
　676 F.3d 655 (8th Cir. 2012)..........................................................................................17

*Hairston v. S. Beach Beverage Co.*,
　No. CV 12-1429-JFW, 2012 WL 1893818 (C.D. Cal. May 18, 2012) ...........................12, 22

*Henderson v. Gruma Corp.*,
　No. CV 10-04173 AHM, 2011 WL 1362188 (C.D. Cal. Apr. 11, 2011)..............................20

*Herrington v. Johnson & Johnson Consumer Cos.*,
　No. C 09-1597 CW, 2010 WL 3448531 (N.D. Cal. Sept. 1, 2010) .........................................3

*Hill v. Roll Int'l Corp.*,
　195 Cal. App. 4th 1295 (2011)........................................................................................13

*In re Apple & A T & T iPad Unlimited Data Plan Litig.*,
　802 F. Supp. 2d 1070 (N.D. Cal. 2011)............................................................................24

*In re Epogen & Aranesp Off-Label Mktg. & Sales Practices Litig.*,
　590 F. Supp. 2d 1282 (C.D. Cal. 2008)..............................................................................7

*In re Ferrero Litig.*,
　794 F. Supp. 2d 1107 (S.D. Cal. 2011) (Huff, J.) ...........................................................15, 21

*In re Fruit Juice Products Mktg. & Sales Practices Litig.*,
　No. 11-MD-02231-MAP,
　2011 U.S. Dist. LEXIS 147588 (D. Mass. Dec. 21, 2011) ...............................................16, 17

*In re Paxil Litig.*,
　218 F.R.D. 242 (C.D. Cal. 2003) ...................................................................................10

*In re PepsiCo, Inc. Bottled Water Mktg. & Sales Practices Litig.*,
　588 F. Supp. 2d 527 (S.D.N.Y. 2008) .............................................................................9

*In re Schering-Plough Corp. Intron/Temodar Consumer Class Action*,
No. 2:06-cv-5774 (SRC), 2009 U.S. Dist. LEXIS 58900 (D.N.J. July 10, 2009)....................7

*In re Sears, Roebuck & Co. Tools Mktg. & Sales Practices Litig.*,
No. MDL-1703, 2012 WL 1015806 (N.D. Ill. 2012).............................................................23

*In re Tobacco II Cases*,
46 Cal. 4th 298 (2009)............................................................................................................21

*In re Vioxx Class Cases*,
180 Cal. App. 4th 116 (2009)..................................................................................................13

*Johns v. Bayer Corp.*,
No. 09-1935, 2010 U.S. Dist. LEXIS 10926 (S.D. Cal. Feb. 9, 2010) ...........................15, 23

*Kanter v. Warner-Lambert Co.*,
99 Cal. App. 4th 780 (2002)..................................................................................................9, 22

*Kasky v. Nike, Inc.*,
27 Cal. 4th 939 (2002)............................................................................................................18

*Kearns v. Ford Motor Co.*,
567 F.3d 1120 (9th Cir. 2009)..............................................................................................3, 13

*Kelley v. Mortg. Elec. Registration Sys.*,
642 F. Supp. 2d 1048 (N.D. Cal. 2009)..................................................................................15

*Korens v. R.W. Zukin Corp.*,
212 Cal. App. 3d 1054 (1989).................................................................................................10

*Kuenzig v. Kraft Foods, Inc.*,
No. 11–cv–838–T–24 TGW, 2011 WL 4031141 (M.D. Fla. Sept. 12, 2011) .........................9

*Lavie v. Procter & Gamble Co.*,
105 Cal. App. 4th 496 (2003)..................................................................................................13

*Loreto v. Procter & Gamble Co.*,
737 F. Supp. 2d 909 (S.D. Ohio 2010) ....................................................................................7

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) ................................................................................................................16

*Mason v. Coca-Cola Co.*,
774 F. Supp. 2d 699 (D.N.J. 2011)..........................................................................................11

*Meaunrit v. Pinnacle Foods Grp., LLC*,
No. C 09-04555 CW, 2010 WL 1838715 (N.D. Cal. May 5, 2010) .........................................9

*Meyer v. Sprint Spectrum, L.P.*,
45 Cal. 4th 634 (2009)............................................................................................................21

*Mills v. Giant of Md., LLC,*
    441 F. Supp. 2d 104 (D.D.C. 2006), *aff'd on other grounds*,
    508 F.3d 11 (D.C. Cir. 2007) ...................................................................... 7, 9

*Minims Apothecary, LLC v. InformedRx, Inc.,*
    No. C 11-6612 PJH, 2012 U.S. Dist. LEXIS 41162 (N.D. Cal. Mar. 26, 2012) ..................... 23

*Moss v. U.S. Secret Serv.,*
    572 F.3d 962 (9th Cir. 2009) ......................................................................... 3

*Myers-Armstrong v. Actavis Totowa, LLC,*
    382 F. App'x 545 (9th Cir. 2010) ................................................................. 23

*Nat'l Council Against Health Care Fraud v. King Bio Pharm., Inc.,*
    107 Cal. App. 4th 1336 (2003) ...................................................................... 8

*Oswald v. GMC (In re GMC Engine Interchange Litig.),*
    594 F.2d 1106 (7th Cir. 1979) ..................................................................... 22

*Perez v. Nidek Co.,*
    657 F. Supp. 2d 1156 (S.D. Cal. 2009) ...................................................... 7, 21

*Peviani v. Hostess Brands, Inc.,*
    750 F. Supp. 2d 1111 (C.D. Cal. 2010) ........................................................ 9

*Polk v. KV Pharm. Co.,*
    No. 4:09-CV-00588 SNLJ,
    2011 U.S. Dist. LEXIS 144313 (D. Mo. Dec. 15, 2011) ............................... 11

*Pom Wonderful LLC v. Coca-Cola Co.,*
    679 F.3d 1170 (9th Cir. 2012) ............................................................... *passim*

*Posadas de Puerto Rico Assocs. v. Tourism Co.,*
    478 U.S. 328 (1986) .................................................................................. 18

*Red v. The Kroger Co.,*
    No. 10-01025-DMG-MAN,
    2010 U.S. Dist. LEXIS 115238 (C.D. Cal. Sept. 2, 2010) ............................. 9

*Rivera v. Wyeth-Ayerst Labs.,*
    283 F.3d 315 (5th Cir. 2002) ...................................................................... 17

*Rosal v. First Fed. Bank of Cal.,*
    671 F. Supp. 2d 1111 (N.D. Cal. 2009) ...................................................... 24

*Rosen v. Unilever United States, Inc.,*
    No. C 09-02563 JW, 2010 WL 4807100 (N.D. Cal. May 3, 2010) .................. 13

*Russian Std. Vodka (USA), Inc. v. Allied Domecq Spirits & Wine USA, Inc.*,
  523 F. Supp. 2d 376 (S.D.N.Y. 2007) ...................................................................... 19

*Sandoz Pharm. Corp. v. Richardson-Vicks, Inc.*,
  902 F.2d 222 (3d Cir. 1990) ..................................................................................... 6

*Shepard v. DineEquity, Inc.*,
  No. 08-2416-KHV, 2009 U.S. Dist. LEXIS 97245 (D. Kan. Sept. 25, 2009) ........... 9

*Skelton v. GM Corp.*,
  660 F.2d 311 (7th Cir. 1981) ................................................................................... 23

*Smith v. Ebay Corp.*,
  No. C 10-03825 JSW, 2012 U.S. Dist. LEXIS 1211 (N.D. Cal. Jan. 5, 2012) ........ 23

*Syntek Semiconductor Co. v. Microchip Tech., Inc.*,
  307 F.3d 775 (9th Cir. 2002) ................................................................................... 10

*The Hershey Company*,
  NAD Case No. 4700 (July 13, 2007) ....................................................................... 19

*Turek v. Gen. Mills, Inc.*,
  662 F.3d 423 (7th Cir. 2011) ................................................................................ 4, 7

*Vess v. Ciba-Geigy Corp. USA*,
  317 F.3d (9th Cir. 2003) .................................................................................... 13, 14

*Weaver v. Chrysler Corp.*,
  172 F.R.D. 96 (S.D.N.Y. 1997) ............................................................................... 17

*Whitson v. Bumbo*,
  No. C 07-05597 MHP,
  2009 U.S. Dist. LEXIS 32282 (N.D. Cal. Apr. 15, 2009) ........................................ 21

*Williams v. Purdue Pharma Co.*,
  297 F. Supp. 2d 171 (D.D.C. 2003) ......................................................................... 17

*Wolfe v. State Farm Fire & Cas. Ins. Co.*,
  46 Cal. App. 4th 554 (1996) .................................................................................... 10

*Wright v. Gen. Mills, Inc.*,
  No. 08cv1532 L(NLS), 2009 WL 3247148 (S.D. Cal. Sept. 30, 2009) .................... 13

**STATUTES**

15 U.S.C.
  § 2301 *et seq.* .................................................................................. 3, 22
  § 2301(6) ............................................................................................. 22
  § 2302(e) ............................................................................................. 22
  § 2310(d)(3)(A),(C) ............................................................................. 22

21 U.S.C.
  § 301 *et seq.* ....................................................................................... 4
  § 321(g)(1)(B) ..................................................................................... 14
  § 337(a) ...................................................................................... 4, 9, 21
  § 343-1(a) .............................................................................................. 7
  § 343(q) ................................................................................................. 7
  § 343(r)(1)(A) ....................................................................................... 8

21 C.F.R.
  § 100.1(c)(4) ......................................................................................... 8
  § 101.13 .............................................................................................. 19
  § 101.13(b) .......................................................................................... 19
  § 101.13(h) ............................................................................................ 8
  § 101.14 ................................................................................................ 8
  § 101.22(a)(5) ..................................................................................... 20
  § 101.22(j) ........................................................................................... 20
  § 101.54 .............................................................................................. 19
  § 101.54(g) ........................................................................................ 5, 8
  § 170.3(o)(2) ....................................................................................... 20

Fed. R. Civ. P.
  Rule 9(b) ...................................................................................... 13, 14

Cal. Bus. & Prof. Code
  § 17200 .................................................................................................. 2
  § 17500 .................................................................................................. 3

Cal. Civ. Code
  § 1750 *et seq.* ..................................................................................... 3
  § 1790 *et seq.* .............................................................................. 3, 22
  § 1791.(a) ............................................................................................ 23
  § 1791.(d) ............................................................................................ 23
  § 1791.2(a)(1) ..................................................................................... 23
  § 1794(a) ............................................................................................. 23

**OTHER AUTHORITIES**

Nurk, et al., *Intake of Flavonoid-Rich Wine, Tea, and Chocolate by Elderly Men and Women is Associated with Better Cognitive Test Performance*, 139 J. Nutr. 120 (2009) ....... 17

Dick Taubert, Renate Roesen, & Edgar Schömig, *Effect of Cocoa and Tea Intake on Blood Pressure: A Meta-analysis*, 167 Arch. Intern. Med. 626 (2007) ................................. 17

*Report of the Dietary Guidelines Advisory Committee on the Dietary Guidelines for Americans, Appendix E-1 ("Major Conclusions")* (2010), *available at* http://www.cnpp.usda.gov/dgas2010-dgacreport.htm (last visited June 21, 2012) ............... 17

1

## NOTICE OF MOTION AND MOTION

2

**TO PLAINTIFF AND HIS ATTORNEYS OF RECORD:**

3

    **PLEASE TAKE NOTICE THAT** on August 10, 2012, at 9:00 a.m. or as soon thereafter

4

as the matter may be heard, in the United States District Court, Northern District of California,

5

San Jose Division, located at 280 South 1st Street, San Jose, CA 95113, before the Honorable

6

Edward J. Davila, defendant The Hershey Company will, and hereby does move, to dismiss the

7

Complaint of Plaintiff Leon Khasin pursuant to (i) Fed. R. Civ. P. 12(b)(1) for lack of subject

8

matter jurisdiction, (ii) Fed. R. Civ. P. 12(b)(6) on the ground that the Complaint fails to state a

9

claim upon which relief can be granted, and (iii) Fed. R. Civ. P. 9(b) for failure to plead claims

10

grounded in fraud with sufficient particularity.

11

    In addition, pursuant to Fed. R. Civ. P. 12(f), The Hershey Company will ask the Court to

12

strike as "immaterial" all averments regarding the company's website and non-label advertising

13

that Plaintiff does not allege that he read or saw.  (*See* Compl. ¶¶ 11, 13-15, 51, 54.)

14

    This motion is based on this Notice of Motion and Motion, the accompanying

15

Memorandum of Points and Authorities, Defendant The Hershey Company's Request for Judicial

16

Notice in Support of Its Motion to Dismiss, and declarations filed simultaneously with this

17

motion, and on such other written and oral argument as may be presented to the Court.

18

Dated:  June 28, 2012                          WILLIAM L. STERN
                                                              WILLIAM F. TARANTINO
19                                                          CLAUDIA M. VETESI
                                                              MORRISON & FOERSTER LLP
20

21                                                          By:  /s/ William L. Stern
                                                                          William L. Stern
22

                                                              Attorneys for Defendant
23                                                          THE HERSHEY COMPANY

24

25

26

27

28

**STATEMENT OF THE ISSUES TO BE DECIDED**

This motion raises the following issues:

1. **Preemption.**  Are Plaintiff's state-law claims seeking to privately enforce FDA regulations barred under 21 U.S.C. § 337(a) and the Ninth Circuit's holding in *Pom Wonderful LLC v. Coca-Cola Co.*, 679 F.3d 1170 (9th Cir. 2012)?  To the extent Plaintiff seeks to impose product label requirements that are "not identical to" FDA regulations and guidance, are such claims preempted by the Nutrition Labeling and Education Act, 21 U.S.C. § 343-1(a)? Should the Court "equitably abstain" or stay the case under the doctrine of primary jurisdiction?

2. **Plausibility (*Iqbal/Twombly*).**  Can a consumer sue a food manufacturer over a product label if the product itself is not tainted or corrupted and there is no plausible allegation that he suffered cognizable injury or was deceived?   Must Plaintiff plead his claims with particularity?

3. **Article III/Standing.**  Can a consumer sue a food manufacturer over a product label in the absence of any particularized allegation that Plaintiff suffered an injury in fact, economic or otherwise, within the meaning of Article III? Alternatively, can Plaintiff sue on the basis of website advertising that he never read or saw?

4. **First Amendment/Truthful and Compliant Labeling.**  Can Plaintiff sue a food manufacturer over truthful product labels that comply with FDA regulations, guidance, or FDA policy?

5. **Individual Causes of Action (UCL/CLRA; Warranty; Unjust Enrichment).**  First, if Plaintiff bought and consumed food products and suffered no personal or economic injury, has he stated a claim under Cal. Bus. & Prof. Code §§ 17200/17500 or Cal. Civ. Code § 1750?  Second, if the food products were sold without any promise of a defect-free product or level of performance over a specific period of time and Plaintiff does not allege the products meet the statutory minimum dollar amount, can he state a claim for breach of express warranty under Cal. Civ. Code § 1790 and 15 U.S.C. § 2301?  Third, is there a cause of action in California for unjust enrichment?

Notice of Motion and Motion to Dismiss Complaint; MPA in Support of Motion
Case no. C12-01862 EJD                                                                          x
sf-3159219

1    **MEMORANDUM OF POINTS & AUTHORITIES**

2    **I.    INTRODUCTION AND SUMMARY OF ARGUMENT**

3         This is a "private Surgeon General" action, one of 23 (and counting) nearly-identical

4    "misbranding" class action cases filed within a twelve-week period against various food

5    manufacturers by a collection of counsel from nine law firms and six different states.[1] These

6    "assembly-line" complaints follow a common recipe:  Posit a wrong by reading in isolation a few

7    words on a food label, contrast those words with a cramped reading of an FDA regulation, then

8    find a plaintiff and sue.  For the remedy, insist that everyone in the state who bought the product

9    since 2008 gets a full refund, toss in punitive damages, and finish with an injunction requiring

10   changes to product labeling more to class counsel's liking.  The resulting broth, reflecting the

11   make-up of the cooks who created it, is a recipe only a lawyer could love.

12        Plaintiff Leon Khasin's claims fail for multiple reasons.

13        First, his claims are preempted.  If Mr. Khasin is trying to use state law to enforce alleged

14   violations of FDA regulations, he has no private right of action.  Only FDA may enforce those

15   rules, as the Ninth Circuit recently held in *Pom Wonderful LLC v. Coca-Cola Co.*, 679 F.3d 1170

16   (9th Cir. 2012).  On the other hand, if he is trying to impose *different* labeling standards than FDA

17   has mandated, his claims are expressly preempted.  Either way, Mr. Khasin is barred.

18        Second, Plaintiff cannot show a cognizable injury, reliance, or deception.  Nor has he pled

19   his case with the requisite level of specificity.

20        Third, Plaintiff cannot show "injury-in-fact" under Article III.  Starting from cooked-up

21   wrongs, Mr. Khasin alleges that Hershey's Cocoa, Special Dark Chocolate Bars, Special Dark

22   Kisses, and Special Dark Cocoa products are "legally worthless."  Not because they were spoiled

23   or contaminated, not because he (or anyone else) suffered injury, and not because the products

24   aren't what their labels say they are.  These products are "*legally* worthless," he says, because the

25   product labels and statements on Hershey's website—which he never saw—do not measure up to

26   his notions of what FDA requires.  But merely buying a product is not "injury-in-fact," and

27   ───────────────

          [1] Exhibit A to Hershey's Request for Judicial Notice (RJN) lists the 23 cases.

28

1   calling the product "legally worthless" does not amount to legal injury under Article III.  The

2   phrase adds nothing, except, perhaps a preview of class counsel's closing argument.

3   Fourth, there is no violation.  Hershey has complied with FDA regulations.  Moreover, the

4   labels are truthful and constitute commercial free speech protected by the First Amendment.

5   Fifth, none of Mr. Khasin's nine causes of action state a viable claim.  Plaintiff seeks

6   massive damages, punitive damages, and an injunction that asks the Court to redesign Defen-

7   dant's product label.  These are matters that FDA oversees, yet Plaintiff wants to become a self-

8   appointed "private Surgeon General."  He is saying, in effect, "Never mind FDA, I get to do the

9   mandating."  But a "*Khasin* label"—named in honor of this case—is both unnecessary and

10  unwarranted.

11  The Court should grant Defendant's motion to dismiss and to strike, with prejudice.

## II.   FACTUAL BACKGROUND

13  Plaintiff seeks certification of a California class of buyers of Hershey's Cocoa, Special

14  Dark Chocolate Bars, Special Dark Kisses, and Special Dark Cocoa products.  (Compl. at p. 1:20-

15  26.)  The crux of the grievance is that Hershey made statements that do not comply with FDA

16  labeling regulations.  A "reasonable person," Mr. Khasin supposes, "would attach importance to

17  whether Defendant's products are legally salable and capable of legal possession" in reference to

18  FDA labeling rules.  (Compl. ¶ 101.)  Plaintiff alleges that he would not have bought the products

19  had he known they were "not capable of being legally sold or held." (*Id.*; *see also id.* ¶¶ 97, 98.)

20  Mr. Khasin's complaint reads like a law school term paper.  It includes a 16-page

21  inventory of regulatory injustices suffered by Mr. Khasin (*id.* at pp. 12-27), including vague

22  "nutrient content" and "antioxidant" claims, claims that Hershey has made improper "health"

23  claims, etc.  He alleges that the words on Hershey's labels violate both the FDCA and

24  California's "Sherman Law" (*id.* ¶¶ 50, 90),[2] which he seeks to vindicate through eight state law

25  claims and a related federal law claim: (i) California's unfair competition law (Cal. Bus. & Prof.

26  Code § 17200) (UCL) as regards its "unlawful" prong, (ii)  the UCL's "unfair" prong, (iii) the

27  _____

[2] We have attached legible copies of the product labels to the RJN, Exs. B-E.

28

1  UCL's "fraudulent" prong, (iv) deceptive advertising under the False Advertising Law (Cal. Bus.

2  & Prof. Code § 17500) (FAL), (v) untrue advertising, (vi) the Consumer Legal Remedies Act

3  (Cal. Civ. Code § 1750 *et seq.*) (CLRA), (vii) unjust enrichment, (viii) the Beverly-Song Act

4  (Cal. Civ. Code § 1790), and (ix) the Magnuson-Moss Act (15 U.S.C. § 2301).  Mr. Khasin prays

5  for compensatory and punitive damages, restitution, profit disgorgement, interest, attorneys' fees,

6  costs, and injunctive relief. (Compl. at pp. 46:15–47:2.)

7  **III.    THE LEGAL STANDARD**

8         A court must accept all factual allegations pleaded in the complaint as true, *Cahill v.*

9  *Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996), but it need not accept unreasonable

10  inferences or legal conclusions cast in the form of factual allegations.  *See Ashcroft v. Iqbal*, 556

11  U.S. 662, 681 (2009) ("[B]are assertions…amount[ing] to nothing more than a 'formulaic

12  recitation of the elements'" of a claim are not entitled to an assumption of truth (quoting *Bell Atl.*

13  *Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see also Moss v. U.S. Secret Serv.*, 572 F.3d 962,

14  969 (9th Cir. 2009).

15         The entire Complaint must be pled with specificity, as Plaintiff's allegations suggest a

16  "unified course of fraudulent conduct."  *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126-27

17  (9th Cir. 2009); *see also Herrington v. Johnson & Johnson Consumer Cos.*, No. C 09-1597 CW,

18  2010 WL 3448531, at *7 (N.D. Cal. Sept. 1, 2010) (Wilken, J.) (dismissing UCL, FAL, and

19  CLRA claims because plaintiffs did not plead with particularity).

20  **IV.    ARGUMENT**

21         **A.    All of Plaintiff's Claims are Preempted.**

22         Mr. Khasin faces a dilemma.  The requirements that he says Hershey must follow are

23  either identical to requirements FDA imposes, or they are different.  If identical, he loses because

24  only FDA (or the Justice Department) may enforce FDA regulatory violations.  If different, he

25  loses because his claims are expressly preempted.  Either way, the Court should dismiss

26  Mr. Khasin's claims with prejudice.

27

28

**1.      Plaintiff Has No Private Right of Action to Enforce FDA Regulations.**

Under the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 301 *et seq.* ("FDCA") as amended in 1990 by the Nutrition Labeling and Education Act ("NLEA"), private litigants are prohibited from suing to enforce compliance.  *See Buckman Co. v. Pls.' Legal Comm.*, 531 U.S. 341, 349 n.4 (2001); *Turek v. Gen. Mills, Inc.*, 662 F.3d 423, 426 (7th Cir. 2011).  As the FDCA says: "[A]ll such proceedings for the enforcement, or to restrain violations, of [the FDCA] shall be by and in the name of the United States."  21 U.S.C. § 337(a).

Mr. Khasin seeks to clothe FDA's labeling requirements in state law garb and thus escape this § 337 prohibition.  He claims he was hoodwinked into buying Hershey products that he would not have bought "had he known they were not capable of being legally sold or held"—as measured by federal labeling laws.  (Compl. ¶ 101; *see also id.* ¶¶ 97, 98.)  This he may not do.

The Ninth Circuit's recent decision in *Pom Wonderful LLC v. Coca-Cola Co.*, 679 F.3d 1170 (9th Cir. 2012) forecloses a private party from bringing indirectly a claim to enforce alleged violations of FDA labeling regulations.  In *Pom Wonderful*, the manufacturer of a pomegranate juice beverage sued Coca-Cola under the federal Lanham Act, alleging that Coke's competing product, "Pomegranate Blueberry," was false in both name and label because it consisted of 99.4% apple and grape juice.  As in this case, the plaintiff brought state law claims under the Sherman Law, the UCL, and the FAL, alleging that those state laws incorporate identical FDCA labeling standards and prohibitions.[3]  The district court (Otero, J.) granted Coca-Cola's motion for summary judgment, finding that "Pom's Lanham Act challenge to Pomegranate Blueberry's name and labeling was barred by the FDCA's implementing regulations."  *Id.* at 1174.

The Ninth Circuit affirmed, holding that the FDCA "comprehensively regulates food and beverage labeling . . ."  *Id.* at 1175.  That bars Lanham Act plaintiffs from doing three things:

- A plaintiff may not "sue under the Lanham Act to enforce the FDCA or its regulations because allowing such a suit would undermine Congress' decision to limit enforcement of the FDCA to the federal government."  *Id.*

---

[3] Mr. Khasin adopts the same stratagem.  (*Cf.* Compl. ¶ 25 ("Pursuant to the Sherman Law, California has expressly adopted the federal labeling requirements as its own…"); *see also id.* ¶¶ 79-91, 116.)

- A plaintiff may not "maintain a Lanham Act claim that would require a court originally to interpret ambiguous FDA regulations, because rendering such an interpretation would usurp FDA's interpretive authority." *Id.*

- "Where FDA has not concluded that particular conduct violates the FDCA, we have even held that a Lanham Act claim may not be pursued if the claim would require litigating whether that conduct violates the FDCA." *Id.*

Mr. Khasin seeks to do each of the three things *Pom Wonderful* prohibits.[4]

<u>First</u>, Plaintiff's claims piggyback alleged violations of FDA regulations. (Compl. ¶¶ 40-78.) Notably, Mr. Khasin never challenges the labels as *intrinsically* misleading. (*Cf.* Compl. ¶ 52.) Rather, the deception he asserts is only by reference to FDA regulations. But FDA has oversight as to food product labels. Mr. Khasin admits as much, as he devotes an entire section of his Complaint (called "FDA Enforcement History") to a chronicle of FDA's industry "guidance" (*id.* ¶¶ 28, 37), FDA directives (*id.* ¶ 31) and FDA "warning letters" (*id.* ¶¶ 33, 34, 57 [Unilever warning letter], 75 [Masterfoods warning letter], 76 [TCHO warning letter].). That history underscores what the Ninth Circuit has now concluded: "[A]llowing such a suit would undermine Congress' decision to limit enforcement of the FDCA to the federal government." *Pom Wonderful*, 679 F.3d at 1175.

<u>Second</u>, Mr. Khasin asks this Court "originally to interpret" FDA rules. Indeed, he cannot prevail *unless* he can convince this Court to interpret whether, for example, Hershey's label statement that "antioxidants" are found in the products at issue is governed by FDA's "nutrient content" regulations (21 C.F.R. § 101.54(g)).[5] In short, Mr. Khasin seeks license to become a "private Surgeon General" and decide what "antioxidants" and "nutrient content claims" mean in this context, thereby supplanting FDA's authority to interpret its own rules and policies. *Pom Wonderful* prohibits that.

---

[4] Another court has already applied *Pom Wonderful's* Lanham Act analysis to UCL claims. *See Chavez v. Nestle USA, Inc.*, No. CV 09-9192-GW (CWx), 2011 U.S. Dist. LEXIS 9773, at *24-25 (C.D. Cal. Jan. 10, 2011) (Wu, J.) (product labeling claims brought under the UCL are preempted).

[5] This regulation sets forth the requirements for "nutrient claims" describing antioxidants.

1    <u>Third</u>, what matters in determining preemption is not whether FDA has acted.  What

2    matters is that FDA *could* act:  "If the FDA believes that more should be done to prevent

3    deception, or that Coca-Cola's label misleads consumers, it can act.  But, under our precedent, for

4    a court to act when the FDA has not—despite regulating extensively in this area—would risk

5    undercutting the FDA's expert judgments and authority. … Out of respect for the statutory and

6    regulatory scheme before us, we decline to allow the FDA's judgments to be disturbed."

7    679 F.3d at 1178.  Substitute "Hershey" for "Coca-Cola" in the above quote and the Ninth Circuit

8    could have been writing of this case.

9         Hershey's labels fully comply with FDA regulations.  (*See* pages 19-21, *infra*.)  If there

10   were a "packaging" violation in this case, it was committed by Mr. Khasin and his lawyers.  They

11   are trying to "repackage" federal regulations—whose enforcement is vested exclusively in

12   FDA—and market them under a "state law" label.

13        The FDCA precludes a private right of action.  The Court should dismiss with prejudice.

14        **2.      The Sherman Law Cannot Be Used To Enforce FDA Regulations.**

15        Plaintiff will say the Sherman Law offers a detour around the private enforcement bar.

16   Not so.  This is the same argument the plaintiff in *Pom Wonderful* tried.  *Cf.* 679 F.3d at p. 1174.

17        What FDA regulations do not create directly, other statutes may not create indirectly.  *See*

18   *Sandoz Pharm. Corp. v. Richardson-Vicks, Inc.*, 902 F.2d 222, 231 (3d Cir. 1990) (FDA

19   guideline violations are insufficient to succeed on a Lanham Act claim, because there is no

20   private right of action for these abuses).  If Congress had wanted to deputize Mr. Khasin to decide

21   if Hershey products are "legally salable," it would have said so.[6]

22   _____

23        [6] *Farm Raised Salmon Cases*, 42 Cal. 4th 1077 (2008) is not to the contrary.  There, the
     California Supreme Court allowed plaintiffs to proceed with state law claims that alleged
24   defendants were selling salmon without disclosing artificial color additives that made grey
     salmon appear pink so as to resemble wild salmon.  Unlike this case, *Farm Raised Salmon* was a
25   classic case of "passing off"—the product had been allegedly adulterated to fool people into
     thinking it was something it was not.  *Id.* at 1083-84.  *Farm Raised Salmon* illustrates, by
26   contrast, how far afield Mr. Khasin has strayed.  *Farm Raised Salmon* was an adulteration case.
     Nothing like that is alleged here.  Mr. Khasin alleges no adulteration.  Indeed, he would likely
27   concede that, but for the overlay of FDA labeling rules, he would have no claim.

28

1    Numerous courts have dismissed this argument: "A purported state-law claim does not

2    exist where the 'claim is in substance (even if not in form) a claim for violating the FDCA—that

3    is, when the state claim would not exist if the FDCA did not exist.'" *Loreto v. Procter & Gamble*

4    *Co.*, 737 F. Supp. 2d 909, 919 (S.D. Ohio 2010); *see also In re Epogen & Aranesp Off-Label*

5    *Mktg. & Sales Practices Litig.*, 590 F. Supp. 2d 1282, 1290-91 (C.D. Cal. 2008) (Gutierrez, J.)

6    (plaintiffs may not use other laws as a means to assert a private cause of action that is based on

7    violations of the FDCA); *Perez v. Nidek Co.*, 657 F. Supp. 2d 1156, 1166 (S.D. Cal. 2009)

8    (Moskowitz, J.) ("The Court will not permit Plaintiffs to privately enforce the FDCA and its

9    regulations under the guise of state law claims."); *In re Schering-Plough Corp. Intron/Temodar*

10   *Consumer Class Action*, No. 2:06-cv-5774 (SRC), 2009 U.S. Dist. LEXIS 58900, at *47 (D.N.J.

11   July 10, 2009) (plaintiffs may not "merely recite violations of the FDCA, for which there is no

12   private cause of action").

13        The Sherman Act is not a license to sidestep the federal bar against private remedies.

14              **3.    Plaintiff's State Law Claims Are Expressly Preempted.**

15        Mr. Khasin might argue that he is not seeking to enforce identical FDA regulations but,

16   rather, to impose *different* labeling rules.  If so, that argument only ensures that his claims are

17   expressly preempted.

18        The NLEA includes a broad express preemption provision.  *See Mills v. Giant of Md.,*

19   *LLC*, 441 F. Supp. 2d 104, 106-09 (D.D.C. 2006), *aff'd on other grounds*, 508 F.3d 11 (D.C. Cir.

20   2007).  It provides:  No state may "directly or indirectly establish ... any requirement for the

21   labeling of food that is *not identical to* the requirement of section 403(q) [21 U.S.C. § 343(q)]"

22   (emphasis added).  21 U.S.C. § 343-1(a).  As the Seventh Circuit noted, "[i]t is easy to see why

23   Congress would not want to allow states to impose disclosure requirements of their own on all

24   packaged food products, most of which are sold nationwide.  Manufacturers might have to print

25   50 different labels, driving consumers who buy food products in more than one state crazy."

26   *Turek*, 662 F.3d at 426.

27        In *Degelmann v. Advanced Medical Optics, Inc.*, 659 F.3d 835, 841 (2011), the Ninth

28   Circuit prescribed a two-part test for determining whether a state law claim is preempted by the

1   FDCA.  First, the court must ask whether FDA has established requirements applicable to the

2   particular product at issue.  Second, it must ask if the state law claims impose requirements that

3   differ from or are in addition to federal requirements.  If so, the state law claim is preempted.  The

4   Ninth Circuit recently found UCL, FAL, and CLRA food labeling claims preempted by the

5   NLEA.  *See Carrea v. Dreyer's Grand Ice Cream, Inc.*, No. C 10-01044 JSW, 2011 WL 159380

6   (N.D. Cal. Jan. 10, 2011) (White, J.), *aff'd*, No. 11–15263, 2012 WL 1131526, at *1 (9th Cir.

7   Apr. 5, 2012).  So too here.

8       First, FDA has established requirements applicable to all of the alleged labeling violations

9   that Mr. Khasin asserts:  Antioxidant claims (21 C.F.R. § 101.54(g)), "nutrient content" claims

10  (21 U.S.C. § 343(r)(1)(A)), "other" nutrient content claims "on products containing disqualifying

11  levels of fat, saturated fat, cholesterol and sodium" (21 C.F.R. § 101.13(h)), and "health" claims

12  (21 C.F.R. § 101.14.  In fact, there is no label element Mr. Khasin attacks that FDA has *not*

13  addressed, either by regulation or policy.[7]

14      Second, Plaintiff's claims create requirements "not identical to" the federal requirements.

15  This standard forecloses any "State requirement [that] directly or indirectly imposes obligations

16  or contains provisions concerning the composition or labeling of food" that are "not imposed by

17  or contained in the applicable provision" or "differ from those specifically imposed by or

18  contained in the applicable provision."  21 C.F.R. § 100.1(c)(4).  Thus, a court may impose a

19  labeling requirement only if it is "*identical* to" FDA requirements.

20

21

22

23      [7] Plaintiff's Complaint also alleges in passing that Hershey's label claims violate
24  California law because "Hershey lacks adequate scientific evidence" that the antioxidants in its
    products have actual health benefits.  (Compl. ¶ 54.)  This fails too.  There is no private right of
25  action for unsubstantiated label claims; only the government has standing.  *See Chavez v. Nestle*,
    No. 09cv9192, 2011 U.S. Dist. LEXIS 58733, at *15 (C.D. Cal. May 2, 2011) (Wu, J.) (quoting
26  *Fraker v. Bayer Corp.*, No. CV F 08-1564 AWI GSA, 2009 U.S. Dist. LEXIS 125633, at *21
    (E.D. Cal. Oct. 2, 2009)); *see also Nat'l Council Against Health Care Fraud v. King Bio Pharm.,*
27  *Inc.*, 107 Cal. App. 4th 1336, 1350 (2003).

28

1       A number of federal courts have so held in the food labeling context.[8]  California courts

2   agree: "[W]hen a state law claim, however couched, would effectively require a manufacturer to

3   include additional or different information on a federally approved label, it is preempted."

4   *Kanter v. Warner-Lambert Co.*, 99 Cal. App. 4th 780, 795 (2002).

5       As we will show in Section D, Hershey's labels comply with FDA rules.  Mr. Khasin

6   wants a jury to decide whether this is the case.  But even that would add requirements "not

7   identical" to the FDCA, as Judge Wilken noted recently.  *See Meaunrit v. Pinnacle Foods Grp.,*

8   *LLC*, No. C 09-04555 CW, 2010 WL 1838715, at *7 (N.D. Cal. May 5, 2010) (even though "both

9   federal and state law prohibit false or misleading language in labeling, it does not follow that a

10  jury would evaluate Defendant's labels in the same fashion as the USDA").

11      Either the requirements Plaintiff seeks to impose are "not identical to" FDA requirements,

12  in which case they are expressly preempted, or they are identical, in which case they are barred by

13  21 U.S.C. § 337(a), which, as *Pom Wonderful* holds, prohibits private enforcement.  Either way,

14  Plaintiff's claims cannot proceed.

---

15      [8] *See Peviani v. Hostess Brands, Inc.*, 750 F. Supp. 2d 1111, 1120 (C.D. Cal. 2010)

16  (Marshall, J.) (finding preemption because otherwise plaintiff "would necessarily impose a state-
    law obligation for trans fat disclosure that is not required by federal law"); *Albertson's, Inc. v.*

17  *Kanter*, 129 S. Ct. 896 (2009); *see also Chacanaca v. Quaker Oats Co.*, 752 F. Supp. 2d 1111,
    1121-23 (N.D. Cal. 2010) (Seeborg, J.) (UCL and other state law claims that sought to impose

18  labeling requirements that were not identical to FDA regulations regarding use of the terms "0g
    Trans Fat" and "good source" of calcium and fiber were expressly preempted); *Mills v. Giant of*

19  *Md.*, 441 F. Supp. 2d 104 (D.D.C. 2006) (claim that defendant failed to place a lactose intolerance
    warning on its milk was preempted by FDA regulations); *Red v. The Kroger Co.*, No. 10-01025-

20  DMG-MAN, 2010 U.S. Dist. LEXIS 115238, at *21 (C.D. Cal. Sept. 2, 2010) (Gee, J.) (finding

21  preemption of state law claims alleging failure to disclose partially hydrogenated vegetable oil on
    food labels because plaintiffs "have not identified … a situation in which resolution of Plaintiffs'

22  claims could result in requirements that are 'identical to' FDA regulations"); *In re PepsiCo, Inc.*
    *Bottled Water Mktg. & Sales Practices Litig.*, 588 F. Supp. 2d 527, 537 (S.D.N.Y. 2008) (finding

23  FDA's regulation of labeling requirements for purified water preempted plaintiffs' state law

24  claims); *Shepard v. DineEquity, Inc.*, No. 08-2416-KHV, 2009 U.S. Dist. LEXIS 97245, at *15-
    17 (D. Kan. Sept. 25, 2009) (finding preemption of plaintiff's claims related to nutrition content

25  statements by Applebee's and Weight Watchers); *Kuenzig v. Kraft Foods, Inc.*, No. 11–cv–838–

26  T–24 TGW, 2011 WL 4031141 (M.D. Fla. Sept. 12, 2011) (finding Food and Safety Inspection
    Service's nutrition labeling regulations preempted plaintiff's state law claims in connection with

27  "percent fat free" claims in defendants' product labels).

28

**4.      In the Alternative, the Court Should Abstain or Stay the Case Under the Doctrine of Primary Jurisdiction.**

The Court could also abstain.  In *In re Paxil Litig.*, 218 F.R.D. 242, 248 (C.D. Cal. 2003), plaintiffs sought an injunction against a drug manufacturer's allegedly false advertising of its anti-depressant drug Paxil.  The court declined to certify the class, concluding that the lawsuit was an attempt to "use the court as a forum to challenge and to second-guess the FDA's prior approval of Paxil's safety and efficacy, with the significant claim that a jury must be the final arbiter of Paxil's safety."  This is consistent with California law, by which courts withhold relief if it would entangle them in a complex area that is already subject to oversight by an agency having day-to-day expertise and supervisory responsibilities.  *See Desert Healthcare Dist. v. PacifiCare FHP, Inc.*, 94 Cal. App. 4th 781, 794-96 (2001); *Korens v. R.W. Zukin Corp.*, 212 Cal. App. 3d 1054, 1059 (1989); *Wolfe v. State Farm Fire & Cas. Ins. Co.*, 46 Cal. App. 4th 554, 568 (1996).

Alternatively, the Court could stay the case.  "The primary jurisdiction doctrine allows courts to stay proceedings or to dismiss a complaint without prejudice pending the resolution of an issue within the special competence of an administrative agency."  *Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008).  Here, FDA has "regulatory authority pursuant to a statute that subjects an industry or activity to comprehensive regulatory authority," and resolving the issue "requires expertise or uniformity in administration."  *Syntek Semiconductor Co. v. Microchip Tech., Inc.*, 307 F.3d 775, 780-81 (9th Cir. 2002).  Rather than create a patchwork of court-made labeling law, this Court could abstain and let FDA do its job.

Plaintiff either lacks a private right of action, or his claims are expressly preempted.  In the alternative, the Court could abstain in deference to FDA's regulatory scheme for food labeling or stay the case under the doctrine of primary jurisdiction.  If the Court agrees, it could stop reading here.  The arguments that follow would become moot.

**B.      Plaintiff Has Not Alleged Plausible Legal Injury, Reliance, or Deception.**

**1.      Plaintiff's Claims Are Facially Implausible.**

Even if Plaintiff could survive preemption, his claims would all run aground on implausibility.  A complaint must "contain sufficient factual matter, accepted as true, to 'state a

claim to relief that is plausible on its face.'  A claim has facial plausibility when the plaintiff

pleads factual content that allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678 (citations omitted); *see also Twombly*,

550 U.S. at 545.

First, the law is against him.  In *Mason v. Coca-Cola Co.*, 774 F. Supp. 2d 699 (D.N.J.

2011), plaintiffs alleged that "Diet Coke Plus" was misleading because the word "Plus" implied

the product was "healthy" under FDA regulations.  The *Mason* court begged to differ:

> At its core, the complaint is an attempt to capitalize on an apparent
> and somewhat arcane violation of FDA food labeling regulations.
> But not every regulatory violation amounts to an act of consumer
> fraud*. **It is simply not plausible that consumers would be aware of
> FDA regulations regarding 'nutrient content' and restrictions on
> the enhancement of snack foods.***

*Id.* at 705 n.4 (emphasis added).  Another court similarly dismissed a plaintiff's claim that

violations of FDA's good manufacturing practices caused him injury.  *Polk v. KV Pharm. Co.*,

No. 4:09-CV-00588 SNLJ, 2011 U.S. Dist. LEXIS 144313, at *14-15 (D. Mo. Dec. 15, 2011);

*see also Chavez*, 2011 U.S. Dist. LEXIS 58733, at *13-15 Claiming to be misled based on a

technical regulation that Plaintiff never even alleges he knew about is simply implausible.

Second, Plaintiff has failed to plead a cognizable legal injury.  He claims to have "relied

on Defendant's package labeling" including the antioxidant claims, and would not have bought

the products if he had known that the claims were "legally worthless."  (Compl. ¶¶ 96; 101; 118.)

But "*legally* worthless" is just Mr. Khasin's opinion.  He offers no facts to show that he suffered

cognizable *economic* injury.  This flunks *Iqbal*.  *Cf.* 556 U.S. at 679.

Third, Mr. Khasin has failed to plead plausible reliance.  Let us consider what he is

saying, for example, about having been misled by Hershey's labels stating its products are

"source[s] of" flavanol antioxidants.

To be misled, he (and every class member) would have had to:  (i) be familiar with FDA

regulations regarding use of phrases like "excellent source" and "good source;" (ii) believe that

Hershey's use of the word "source," without more, was the legal equivalent of claiming the

1    products were a "*good* source" or "*excellent* source" of antioxidants; and (iii) conclude from this

2    that the Hershey products contain more antioxidants than they actually do.

3         This argument is illogical.  Anyone so grounded in FDA regulations to appreciate that

4    "good source" and "excellent source" have prescribed meanings would also know that the term

5    "source"—without any modifiers—does not.  Here, Plaintiff fails to allege that even *he* believed

6    the bare term "source" has been defined by FDA or that using the word "source" explicitly or

7    implicitly characterizes the level of antioxidants found in the products.

8         The same broken logic hobbles Mr. Khasin's supposed reliance on statements about

9    antioxidants being "found in" Hershey products and the rest of his vague antioxidant, nutrient

10   content and health claims.  Plaintiff's theory presupposes a class member who, to be deceived,

11   would have had to enter the grocery store armed with extensive knowledge of FDA regulations—

12   for example, that a "good source" claim requires the product to contain between 10-19% of the

13   DRV or RDI for that nutrient per serving (Compl. ¶ 53)—believe that the "found in" phrase on

14   the label is tantamount to an implied "contains" or "good source" claim, and then decide to buy

15   Hershey products based on this mistaken belief.  That is asking a lot of a "reasonable consumer."

16        Plaintiff's allegations about being misled by Hershey's statements about using alkalized or

17   "Dutched" cocoa, which reduces their antioxidant content, are equally implausible.  (Compl. ¶ 4.)

18   That "Dutching" can lower antioxidant content is true.  Indeed, the label says so:  "However,

19   Dutch Processed cocoas are typically *lower* in antioxidant content than Natural cocoas, and as a

20   result, Hershey's Special Dark Cocoa provides fewer antioxidants than Hershey's Natural

21   Unsweetened Cocoa."  (*See* Compl. at p. 30; RJN, Ex. D [italics added].)  This disclaimer appears

22   directly below the statement Mr. Khasin claims was misleading.  (*Id*.)  Only by suspending

23   disbelief—claiming confusion from a label that requires a reader to ignore an immediately

24   adjacent statement—could someone be confused.  That is manifestly unreasonable.  *Cf.*

25   *Hairston v. S. Beach Beverage Co*., No. CV 12-1429-JFW (DTBx), 2012 WL 1893818, at *4

26   (C.D. Cal. May 18, 2012) (refusing to read "a single out-of-context phrase found in one

27   component of [defendant's] label" in such a cramped manner as to render the label misleading).

28

Notice of Motion and Motion to Dismiss Complaint; MPA in Support of Motion
Case no. C12-01722
sf-3159219

12

1  To be actionable, a consumer's belief must be reasonable.  False advertising "focuses on a

2  reasonable consumer who is a member of the target population."  *In re Vioxx Class Cases*, 180

3  Cal. App. 4th 116, 130 (2009).  Plaintiff must show that "members of the public are likely to be

4  deceived."  *Freeman v. Time, Inc*., 68 F.3d 285, 289 (9th Cir. 1995).  That requires more than a

5  mere possibility that the advertisement might conceivably be misunderstood by some few

6  consumers who view it unreasonably.  Rather, a significant portion of the general consuming

7  public or of targeted consumers, acting reasonably in the circumstances, must have been misled.

8  *Lavie v. Procter & Gamble Co*., 105 Cal. App. 4th 496, 508 (2003); *Hill v. Roll Int'l Corp.*,

9  195 Cal. App. 4th 1295, 1304 (2011) ("California courts consistently have looked to the ordinary

10  consumer within the larger population . . . ." (citation and internal quotation marks omitted)).

11  Mr. Khasin's imagined consumer is not a "reasonable consumer."

12  These allegations are similar to *Wright v. General Mills, Inc*., No. 08cv1532 L(NLS),

13  2009 WL 3247148 (S.D. Cal. Sept. 30, 2009) (Lorenz, J.), another "private Surgeon General"

14  case in which plaintiff failed to meet the *Twombly* and *Iqbal* pleading standards.  There, the

15  plaintiff sued General Mills for advertising "Nature Valley" products as "100% Natural" though

16  the products contained high-fructose corn syrup.  It was not enough to plead that "Plaintiff and

17  other members of the Class [] purchase[d], purchase[d] more of, or pa[id] more for, these Nature

18  Valley products."  *Id.*, at *5.  "Factual allegations must provide more than 'labels and

19  conclusions, and a formulaic recitation of the elements of a cause of action will not do' in order to

20  'raise a right to relief above the speculative level.'"  *Id.* (citations omitted); *see also Rosen v.

21  Unilever United States, Inc*., No. C 09-02563 JW, 2010 WL 4807100, at *5 (N.D. Cal. May 3,

22  2010) (Ware, J.) ("Plaintiff's allegation that partially hydrogenated oil is not nutritious is devoid

23  of any allegations of facts to support that allegation.").

24  **2.    Plaintiff Has Not Pled His Case with the Requisite Particularity.**

25  Plaintiff does not meet the stringent pleading requirements of Rule 9(b).  "Averments of

26  fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct

27  charged," *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009), as well as the

28  circumstances indicating fraudulent conduct.  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d, 1097,

1106 (9th Cir. 2003).  The allegations must be "specific enough to give defendants notice of the

particular misconduct . . . so that they can defend against the charge and not just deny that they

have done anything wrong."  *Id.* (internal quotation omitted).  Mr. Khasin flunks this test.

<u>Who</u>:  Facts regarding Plaintiff's understanding and reliance are absent from the

Complaint.  He never states what *he* understood the allegedly misleading claims to mean.  He

simply offers boilerplate language that he purchased the products, read the labels, and relied on

the labeling claims.  (Compl. ¶¶ 92-96.)  And he hides behind statements about "consumers"

generally, instead of alleging this own complaints.  (*See* Compl. ¶ 60 ("The types of

misrepresentations made above would be considered by a reasonable consumer when deciding to

purchase the products.").)

<u>What</u>:  Mr. Khasin fails to allege which specific products are at issue for each type of

claim.  He also fails to link specific advertising claims to the specific sections of the FDCA

and/or Sherman law that he alleges Hershey's has violated.[9]  Instead, he provides a random

sampling of claims from product labels and from Hershey's website (which he does not allege he

ever saw), then makes broad allegations that Hershey products are misbranded under the FDCA.

(*See, e.g.*, Compl. ¶¶ 48, 50, 70, 72, 83-91.)  Plaintiff's failure to plead his claims with specificity

denies Hershey a fair opportunity to defend against his Complaint, as *Vess* requires.

<u>When and Where</u>:  Plaintiff fails to allege when or where he bought the products at issue,

beyond stating generally that he did so sometime "during the four (4) years prior to the filing of

this Complaint."  (Compl. ¶ 16.)  This vague allegation does not meet the heightened pleading

requirements of Rule 9(b).  *See Edmunson v. Procter & Gamble Co.*, No. 10-CV-2256-IEG

(NLS), 2011 U.S. Dist. LEXIS 53221, at *16-17 (S.D. Cal. May 17, 2011) (dismissing plaintiff's

UCL and CLRA claims for failure to comport with Rule 9(b) where plaintiff failed to allege

"when during the class period, where, how many, or how many times" plaintiff purchased the

products at issue).

---

[9] For instance, Plaintiff fails to identify which of Hershey's claims he believes suggest the
products are "unapproved 'new drugs'" in violation of 21 U.S.C. § 321(g)(1)(B).  (Compl. ¶ 91.)

How:  Plaintiff also fails to allege how he relied on the labeling claims.  For example, he argues the products are misleading because they fail to comply with FDA regulations, but he never asserts that he relied on the belief that the products conformed to FDA regulations.  In fact, nothing in the Complaint even alleges Plaintiff was aware FDA regulates product labels or that he was familiar with the relevant regulations such that he would expect Hershey's label claims to conform to them.  *See Kelley v. Mortg. Elec. Registration Sys.*, 642 F. Supp. 2d 1048, 1056 (N.D. Cal. 2009) (Illston, J.) (complaint must show why plaintiffs' reliance on the statements was reasonable).

The Complaint fails to allege plausible injury, reliance, or deception.

**C.      Plaintiff Cannot Satisfy Article III's "Case or Controversy" Requirement.**

**1.      The Court Should Strike All Claims Regarding Statements Plaintiff Did Not See.**

You can't be deceived by something you never saw.  The Court should strike the averments regarding Hershey's website.

This is a case about product labels, yet the Complaint is peppered with references to representations and advertisements beyond just labels, including statements taken from Hershey's website and its "Code of Ethical Business Conduct."  (*See* Compl. ¶¶ 5, 11, 13-15, 51, 54.)[10]  It is implausible to assume that a reasonable consumer consults a food manufacturer's code of conduct before buying its cocoa and chocolate products.  (*Cf.* Compl. ¶ 5.)  More importantly, Plaintiff never alleges that *he* saw and read Hershey's website or Code of Ethical Business Conduct pre-purchase; as such, those statements are irrelevant and non-actionable.  *See Dvora v. Gen. Mills, Inc.*, No. CV 11-1074-GW(PLAx), 2011 WL 1897349, at *8 (C.D. Cal. May 16, 2011) (Wu, J.) (no claim over website statements that plaintiff never read); *In re Ferrero Litig.*, 794 F. Supp. 2d 1107, 1112 (S.D. Cal. 2011) (Huff, J.) (same); *Johns v. Bayer Corp.*, No. 09-1935, 2010 U.S.

---

[10] For example, Plaintiff's allegations that Hershey impermissibly stated "Hershey products have 'more' antioxidants than other foods" (Compl. ¶¶ 51, 54) are based on statements made on Hershey's website (Compl. ¶¶ 13, 54).

For a list of all of the *non*-label averments in the Complaint, *see* Notice of Motion, p. iii.

1  Dist. LEXIS 10926, at *13 (S.D. Cal. Feb. 9, 2010) (Sabraw, J.) (plaintiff cannot pursue claims

2  based on false advertisements on which he did not rely).  The Court should strike averments about

3  statements other than those on which he relied.

### 2.    This is a No-Injury Case that Fails the Test of Article III.

5  To have Article III standing, a plaintiff must plead and prove (1) "injury in fact,"

6  (2) causation, and (3) redressability.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

7  "Injury in fact" requires damage to "a legally protected interest which is (a) concrete and particu-

8  larized, and (b) actual or imminent, not conjectural or hypothetical."  *Id*.  Plaintiff cannot satisfy

9  these requirements, thus all of his claims fail.

10  Plaintiff's alleged injury is a legal construct:  the products are "legally worthless." (*See*

11  Compl. ¶ 118.)  This is not real harm; it is his lawyer's musings.  Imagine suing an airline and

12  demanding a refund because of non-compliant maintenance reports the airline filed with the FAA,

13  or suing a restaurant because of a non-compliant licensing application filed with the city health

14  department.  In each case, the consumer got fair value.  There was nothing wrong with the flight

15  or the meal apart from the regulatory infraction.

16  So too here.  Plaintiff paid for and received chocolate and cocoa.  The goods were not

17  tainted, spoiled, or contaminated.  He got exactly what he was promised.  Even if there were

18  technical noncompliance with FDA rules—a myth we debunk in the next section—it caused no

19  cognizable legal harm.  Nor could it.  As a matter of law, FDA decides what appears on product

20  labels, not Mr. Khasin.  His claim of harm is not legal *injury*; it is legal gymnastics.

21  Finally, there is a timing disconnect.  Few consumers would have known of these FDA

22  requirements prior to purchase.  These are things a lawyer might discover after hours of research.

23  But that is counsel's knowledge, not the consumer's, and cannot be presumed to be implanted

24  *post hoc* into the mind of a "reasonable consumer" prior to purchase.

25  In *In re Fruit Juice Products Marketing and Sales Practices Litigation*, No. 11-MD-

26  02231-MAP, 2011 U.S. Dist. LEXIS 147588, at *12 (D. Mass. Dec. 21, 2011), plaintiffs alleged

27  that the presence of trace amounts of lead rendered fruit juices unsuitable for their intended

28  purpose.  The MDL court found the alleged injury inadequate:

1
2
3

> Because Plaintiffs are unable to show that <u>any</u> actual harm resulted from consumption of the fruit juice products, their allegation of "economic" injury lacks substance.  The fact is that Plaintiffs paid for fruit juice, and they received fruit juice, which they consumed without suffering harm.

4

5 *Id.* (emphasis added); *see also Frye v. L'Oreal USA, Inc.*, 583 F. Supp. 2d 954, 958 (N.D. Ill.

6 2008) (presence of lead in lipstick had no observable economic consequences as would satisfy

7 Article III); *Gomez v. Wells Fargo Bank, N.A.*, 676 F.3d 655, 662 (8th Cir. 2012) (no standing

8 because plaintiffs cannot allege lost money or property where plaintiffs paid market rates for

9 appraisal services and received such services).

10      If anything, this case is even more compelling for a no-injury finding.  In *Frye*, the

11 product allegedly contained a known toxin.  Here, Mr. Khasin makes no such allegation.

12 Antioxidants exist naturally in cacao and have widely recognized health benefits.[11]  Numerous

13 courts agree that claims like Mr. Khasin's fail the test of Article III.[12]

14      [11] *See, e.g.*, Nurk, et al., *Intake of Flavonoid-Rich Wine, Tea, and Chocolate by Elderly
15 Men and Women is Associated with Better Cognitive Test Performance*, 139 J. Nutr. 120, 120-27
(2009) (RJN, Ex. F); Dick Taubert, Renate Roesen, & Edgar Schömig, *Effect of Cocoa and Tea
16 Intake on Blood Pressure: A Meta-analysis*, 167 Arch. Intern. Med. 626, 626-34 (2007) (RJN,
Ex. G).  Additionally, in 2010 the Dietary Guidelines Advisory Committee, part of the U.S.
17 Department of Agriculture, issued a report stating that "Moderate evidence suggests that modest
consumption of dark chocolate or cocoa is associated with health benefits in the form of reduced
18 CVD risk."  *Report of the Dietary Guidelines Advisory Committee on the Dietary Guidelines for
Americans, Appendix E-1 ("Major Conclusions")*, at E1-16 (2010), *available at*
19 http://www.cnpp.usda.gov/dgas2010-dgacreport.htm (last visited June 21, 2012) (RJN, Ex. H).

20      [12] *See Rivera v. Wyeth-Ayerst Labs.,* 283 F.3d 315 (5th Cir. 2002) (allegations of
21 economic loss relating to use of recalled drug they would not have purchased but for a failure to
disclose); *Birdsong v. Apple, Inc.*, 590 F.3d 955, 961 (9th Cir. 2009) ("plaintiffs have failed to
22 allege a cognizable defect under any of their asserted claims … the alleged loss in value does not
constitute a distinct and palpable injury"); *Briehl v. GMC*, 172 F.3d 623, 628 (8th Cir. 1999)
23 (dismissing non-injury claims for economic damages associated with purchase of product and
24 stating: "[w]here, as in this case, a product performs satisfactorily and never exhibits an alleged
defect, no cause of action lies."); *Weaver v. Chrysler Corp.*, 172 F.R.D. 96, 99 (S.D.N.Y. 1997)
25 (dismissing no-injury claims under common law fraud, breach of warranty, and negligent
misrepresentation); *Williams v. Purdue Pharma Co.*, 297 F. Supp. 2d 171, 176-78 (D.D.C. 2003)
26 (dismissing claims of purchasers of a pain reliever who allegedly overpaid because the drug had
27 been advertised as providing 12-hour pain relief with little risk of addiction, where the plaintiffs
failed to allege *they* had not experienced 12-hour pain relief or had become addicted).

28

Notice of Motion and Motion to Dismiss Complaint; MPA in Support of Motion
Case no. C12-01722
sf-3159219

17

1        *Degelmann v. Advanced Medical Optics Inc.*, 659 F.3d 835, 841 (2011) does not

2 undermine this conclusion.  In that case, a contact lens solution was recalled after FDA reported

3 an increase of a serious eye infection in users.  *Id.* at 838.  The plaintiffs alleged that they had

4 "paid more" for the solution due to their reliance on affirmative representations that it was an

5 effective disinfectant when, in fact, its users were seven times more likely to suffer a particular

6 type of eye infection.  *Id.* at 838, 840.  The Ninth Circuit found that this stated a legal injury.  *Id.*

7 at 840.  Here, by contrast, Plaintiff does not allege a product defect.  The Complaint also fails to

8 plead facts showing that any regulatory noncompliance had economic consequences to Plaintiff.

9        Plaintiff's Complaint should be dismissed for failure to satisfy Article III.

10      **D.**      **Plaintiff Cannot Show that the Labels Violate FDA Regulations or Policy.**

11        Plaintiff's claims all fail because he cannot show that Hershey's label statements violate

12 FDA regulations or policy.[13]  In fact, these statements are truthful, and constitute commercial

13 speech protected by the First Amendment.  Thus, any restrictions on the statements require a

14 showing that "the government's interest … is substantial, the restrictions directly advance the

15 government's asserted interest, and the restrictions are no more extensive than necessary to serve

16 that interest."  *Posadas de Puerto Rico Assocs. v. Tourism Co.*, 478 U.S. 328, 340 (1986); *see*

17 *also Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 952 (2002).

18      **1.**      **The NAD Has Found Hershey's Antioxidant Claims Substantiated.**

19        Plaintiff contends that Hershey "lacks adequate scientific evidence" that the antioxidants

20 in its products have actual health benefits.  (Compl. ¶ 54.)  As noted in footnote 7, above, a "prior

21 substantiation" claim is not privately actionable.  But even if it were, Mr. Khasin still loses.

22        In 2007, the National Advertising Division ("NAD") of the Better Business Bureau

23 investigated whether Hershey had adequate substantiation for certain advertising claims Hershey

24 made regarding Hershey's Special Dark chocolate, including statements that it "has MORE

25 flavanol antioxidants than a glass of red wine" and "a higher capacity of antioxidants than two

---

26        [13] Hershey is not required in this motion to affirmatively prove that it complies with FDA

27 regulations.  Rather, it is Plaintiff's burden to show that Hershey does *not*.  *See Iqbal*, 556 U.S. at 678.  Mr. Khasin has not met this burden.

28

cups of green tea." *See The Hershey Company*, NAD Case No. 4700 (July 13, 2007), p. 1 (RJN, Ex. I).  After reviewing the substantial scientific evidence that Hershey provided, the NAD determined that Hershey "has a reasonable basis for making the express antioxidant claims in its advertisements."  *Id.*, at p. 6.  NAD decisions may inform a court's own decision on advertising claims.  *See Russian Std. Vodka (USA), Inc. v. Allied Domecq Spirits & Wine USA, Inc.*, 523 F. Supp. 2d 376, 384 (S.D.N.Y. 2007).

> ### 2. Hershey's Nutrient and Antioxidant Statements Are Not Nutrient Content Claims.

Plaintiff alleges that Hershey makes unauthorized "nutrient content" and "antioxidant nutrient content" claims on its Special Dark Chocolate Bars, Special Dark Kisses, Cocoa and Special Dark Cocoa products.  (Compl. at p. 1:22-26.)  Mr. Khasin complains, for example, that the products say "Cocoa is a Natural Source of Flavanol Antioxidants," and "The natural antioxidants found in teas and certain fruits like berries and grapes can also be found in Hershey Kisses Special Dark Chocolates," and that this is unlawful.  (*Id.* ¶¶ 3, 54.)

Let's take a closer look.  The FDCA defines a "nutrient content claim" as a "claim that expressly or implicitly characterizes the level of a nutrient of the type required to be in nutrition labeling under 101.9 or under 101.36 . . . ."  21 C.F.R. § 101.13(b).  Statements that antioxidants are "found in" Hershey products or that the products are a "source of" certain antioxidants do nothing to characterize the *level* of antioxidants found in the products.  As such, they are not "nutrient content claims" within the purview of 21 C.F.R. §§ 101.13 and 101.54.[14]

Plaintiff's allegations that Hershey makes unlawful nutrient content claims and unlawful antioxidant nutrient content claims all fail for this reason.  Moreover, because the statements on Hershey's product labels cannot be considered nutrient content claims, Plaintiff's allegations that Hershey fails to disclose "unhealthy" ingredients in the manner required when a label makes nutrient content claims also fail.

---

[14] Unlike the warning letters that Plaintiff cites in his Complaint (Compl. ¶ 57), Hershey's labels do not state that the products are a "rich source" of or "packed with" antioxidants.

1    Mr. Khasin's argument is also bad grammar.  The labels state that the products are a

2    "natural source of flavanol antioxidants."  This phrase can only mean one thing: that flavanol

3    antioxidants occur naturally in cocoa and chocolate products.  That is true.  Flavanol antioxidants

4    are compounds produced by nature and are "found in" cacao, from which cocoa and chocolate are

5    derived.  (*See* RJN, Ex. F.)  Mr. Khasin might as well sue a dairy farmer for claiming milk is a

6    "natural source" of calcium or a coffee roaster for saying "coffee is a natural source of caffeine."

7    Plaintiff does not allege that Hershey's cocoa and chocolate products are *not* natural

8    sources of flavanol antioxidants, nor could he.  This is fatal, as Judge Matz found with respect to

9    a similar label statement:   "'With Garden Vegetables' is a truthful statement and therefore not

10   actionable under California's reasonable consumer standard."  *Henderson v. Gruma Corp.*,

11   No. CV 10-04173 AHM (AJWx), 2011 WL 1362188, at *10 (C.D. Cal. Apr. 11, 2011).[15]

12   The Hershey products' label claims are truthful and not misleading.  To entertain the relief

13   Mr. Khasin seeks would prevent companies from providing consumers with basic, valuable,

14   information.  That would run afoul of the First Amendment, which protects free speech.

15

16

17

18   _____

      [15] The statement, "a natural source of antioxidants" is also true for another reason.   It
19   simply identifies the functional effect of the flavanols in the food:  As a preservative.  FDA
      regulations define antioxidants as substances that "preserve food by retarding deterioration,
20   rancidity, or discoloration due to oxidation."  21 C.F.R. § 170.3(o)(2).  The flavanols found
      naturally in cocoa and chocolate function as natural preservatives and prevent the product from
21   oxidizing.  The natural antioxidant activity of the cocoa is particularly valuable in chocolate
      because it prevents the fats, which are prone to oxidation, from oxidizing and becoming rancid.
22   This is perfectly proper as a labeling matter.  FDA ingredient regulations require chemical
      preservatives to be identified by their functional effect in the ingredient statement.  21 C.F.R.
23   § 101.22(j) (a chemical preservatives shall include a "separate description of its functional, e.g.,
      'preservative,' 'to retard spoilage,', 'a mold inhibitor,' 'to help protect flavor,' or 'to promote
24   color retention.'").  The flavanols in cocoa fall outside the definition of chemical preservative and
      are not subject to this labeling convention.  21 C.F.R. § 101.22(a)(5) (defining chemical
25   preservative as "any chemical that, when added to food, tends to prevent or retard deterioration
      thereof, but does not include common salt, sugars, vinegars, spices, or oils extracted from spices,
26   substances added to food by direct exposure thereof to wood smoke, or chemicals applied for the
      insecticidal or herbicidal properties").
27

28

### 3. Health Claims

The "health" claims referenced in the Complaint appear only on Hershey's website, which Plaintiff never alleges he visited. (Compl. ¶¶ 11-15.) Since Plaintiff does not allege that he ever saw the website, these claims are not actionable and should be stricken.

### E. Plaintiff's Claims All Fail for Other, Claim-Specific Reasons.

#### 1. Plaintiff's UCL, CLRA, and FAL Claims Fail to State a Claim.

If Mr. Khasin is able to bypass all of these infirmities, he runs into other hurdles.

First, Plaintiff lacks standing to assert a claim under the UCL and the FAL. He has not alleged facts showing that he "suffered an injury in fact" and "lost money or property" as a result of the unfair competition. As noted above, he suffered no cognizable economic injury. His claim is indistinguishable from the plaintiff's in *Birdsong v. Apple*, 590 F.3d 955, 960 (9th Cir. 2009), in which the mere purchase of an iPod that might subject a user to a risk of hearing loss was not enough. *See also In re Ferrero Litig.*, 794 F. Supp. 2d at 1112 (plaintiffs lacked standing because they did not rely on the allegedly misleading statements); *Whitson v. Bumbo*, No. C 07-05597 MHP, 2009 U.S. Dist. LEXIS 32282, at *18 (N.D. Cal. Apr. 15, 2009) (Patel, J.) (dismissing UCL claim because plaintiff alleged no injury). He similarly lacks standing under the CLRA because he has not sufficiently alleged that he has suffered any damage. *See Meyer v. Sprint Spectrum, L.P.*, 45 Cal. 4th 634, 641 (2009) (dismissing claim for failure to allege "damage" under the CLRA). For the same reasons that Plaintiff's allegations of economic injury fail under Article III, they also fail under these statutes.

Second, Plaintiff has failed to plead actual reliance and causation. *Cf. In re Tobacco II Cases*, 46 Cal. 4th 298, 326 (2009) (the "as a result of" requirement "imposes an actual reliance requirement on plaintiffs prosecuting a private enforcement action under the UCL's fraud prong.") Plaintiff offers only a generic, legal conclusion. (Compl. ¶ 96.)

Third, Plaintiff's claims under the unlawful and unfairness prongs fail because they cannot be based on alleged FDCA violations. FDA maintains exclusive enforcement authority and there is no private right of action. *See* 21 U.S.C. § 337(a); *Perez v. Nidek Co.*, 657 F. Supp. 2d 1156, 1166 (S.D. Cal. 2009) (Moskowitz, J.); *Pom Wonderful*, 679 F.3d at 1177-78.

2.      **Plaintiff's Breach of Warranty Claims Should Be Dismissed.**

Plaintiff has not stated a claim under the Song-Beverly Act, Cal. Civ. Code § 1790 *et seq.* or the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.* (MMWA).

First, Plaintiff's MMWA claim must be dismissed for lack of subject-matter jurisdiction. A class action under Magnuson-Moss cannot be brought in federal court if, among other things, "the amount in controversy of any individual claim is less than the sum or value of $25." 15 U.S.C. § 2310(d)(3)(A),(C). These limits were "enacted by Congress to prevent 'trivial or insignificant' class actions from being brought in the federal courts." *Oswald v. GMC (In re GMC Engine Interchange Litig.)*, 594 F.2d 1106, 1114 n.2 (7th Cir. 1979).  Moreover, the MMWA only applies to products that cost more than five dollars.  15 U.S.C. § 2302(e).  Mr. Khasin fails to allege that he meets the $25 statutory minimum or that the products cost more than $5.

Second, the MMWA is "expressly 'inapplicable to any written warranty the making or content of which is otherwise governed by Federal law.'"  *Hairston*, 2012 WL 1893818, at *5; *see also Kanter v. Warner-Lambert Co.*, 99 Cal. App. 4th 780, 797 (2002) (MMWA inapplicable because the FDCA and implementing regulations governed the labeling at issue).

Third, Plaintiff has failed to allege any facts that support a finding that Hershey's label statements amount to a "written warranty."  The MMWA defines "written warranty" as:

> (A) any written affirmation of fact or written promise made in connection with the sale of a consumer product by a supplier to a buyer which relates to the nature of the material or workmanship and *affirms or promises that such material or workmanship is defect free or will meet a specified level of performance over a specified period of time*, or
>
> (B) any undertaking in writing in connection with the sale by a supplier of a consumer product to *refund, repair, replace, or take other remedial action* with respect to such product in the event that such product fails to meet the specifications set forth in the under-taking.

15 U.S.C. § 2301(6) (emphasis added).  What Mr. Khasin challenges are product descriptions, not a promise of a defect-free product or a level of performance over a specific time period.  *Cf., Hairston*, 2012 WL 1893818 at *6 (rejecting warranty claims because "all natural with vitamins" label claim and names of various flavors were product descriptions rather than promises);

1   *Skelton v. GM Corp.*, 660 F.2d 311, 316 n.7 (7th Cir. 1981) (product information disclosure

2   without a specified time period is not a written warranty); *In re Sears, Roebuck & Co. Tools*

3   *Mktg. & Sales Practices Litig.*, No. MDL-1703, 2012 WL 1015806, at *3 (N.D. Ill. 2012) ("Made

4   in the USA" is not a written warranty).

5          Plaintiff's Song-Beverly claim similarly fails. <u>First</u>, Song-Beverly does not apply to

6   consumables. The statute provides a cause of action only for "[a]ny buyer of *consumer goods*

7   who is damaged by a failure to comply with . . . an implied or express warranty . . . ." Cal. Civ.

8   Code § 1794(a) (emphasis added). "Consumer goods" are "any new product or part thereof . . .

9   *except for . . . consumables*." *Id.*, § 1791(a) (emphasis added). Exempt consumables include

10  "any product that is intended for consumption by individuals . . . and that usually is consumed or

11  expended in the course of consumption or use." *Id.*, § 1791(d). Hershey's chocolate and cocoa

12  products are plainly products "intended for consumption" that are "consumed or expended in the

13  course of consumption." Plaintiff's Complaint admits as much, defining Hershey's products as

14  "consumables." (Compl. ¶ 176.)

15         <u>Second</u>, even if Hershey's products were "consumer goods," Plaintiff has failed to state a

16  claim because the products' labels do not create "express warranties." The Beverly-Song Act

17  defines "express warranty" as "a written statement arising out of a sale to the consumer of a

18  consumer good pursuant to which the manufacturer, distributor, or retailer undertakes to preserve

19  or maintain the utility or performance." Cal. Civ. Code § 1791.2(a)(1). Hershey's label

20  statements do not come close. The warranty claims fail.

21         **3.      "Unjust Enrichment" is Not a Cause of Action in California.**

22         Unjust enrichment is not a cause of action, but a general principle underlying various legal

23  theories and remedies that is synonymous with restitution. *See Myers-Armstrong v. Actavis*

24  *Totowa, LLC*, 382 F. App'x 545, 548 (9th Cir. 2010); *Johns*, 2010 WL 476688, at *6 ("unjust

25  enrichment . . . is not an independent cause of action"); *Smith v. Ebay Corp.*, No. C 10-03825

26  JSW, 2012 U.S. Dist. LEXIS 1211, at *27-29 (N.D. Cal. Jan. 5, 2012) (White, J.) (finding unjust

27  enrichment does not constitute a "stand-alone cause of action" under California law); *Minims*

28

1   *Apothecary, LLC v. InformedRx, Inc.*, No. C 11-6612 PJH, 2012 U.S. Dist. LEXIS 41162, at \*2

2   (N.D. Cal. Mar. 26, 2012) (Hamilton, J.) (same).

3        Further, "a claim for restitution is inconsistent and incompatible with a related claim for

4   breach of contract or a claim in tort."  *Rosal v. First Fed. Bank of Cal.*, 671 F. Supp. 2d 1111,

5   1133 (N.D. Cal. 2009); *see also In re Apple & A T & T iPad Unlimited Data Plan Litig.*, 802 F.

6   Supp. 2d 1070, 1077 (N.D. Cal. 2011) ("[P]laintiffs can not [sic] assert unjust enrichment claims

7   that are merely duplicative of statutory or tort claims.").

8   **V.    CONCLUSION**

9        For the foregoing reasons, Hershey respectfully requests that the Court dismiss the

10  Complaint with prejudice or, in the alternative, grant the motion to strike.

11  Dated:  June 28, 2012                              WILLIAM L. STERN
                                                       WILLIAM F. TARANTINO
12                                                     CLAUDIA M. VETESI
                                                       MORRISON & FOERSTER LLP
13

14                                                     By:  /s/ William L. Stern
                                                       _____
15                                                            William L. Stern

16                                                     Attorneys for Defendant
                                                       THE HERSHEY COMPANY

17

18

19

20

21

22

23

24

25

26

27

28