1   Ben F. Pierce Gore (SBN 128515)
    PRATT & ASSOCIATES
2   1871 The Alameda, Suite 425
    San Jose, CA 95126
3   Telephone:  (408) 429-6506
    Fax:  (408) 369-0752
4   pgore@prattattorneys.com

5   *Attorneys for Plaintiff*

6                 UNITED STATES DISTRICT COURT

7               NORTHERN DISTRICT OF CALIFORNIA

8                      SAN JOSE DIVISION

9

10  LEON KHASIN, an individual, on his own          Case No. CV12-01862 EJD
    behalf and on behalf of all others similarly
    situated,
11
                    Plaintiff,                      **PLAINTIFF'S RESPONSE TO**
12                                                  **DEFENDANT'S MOTION FOR**
    v.                                              **PARTIAL SUMMARY JUDGMENT**
13                                                   **[Dkt. No. 68]**
    THE HERSHEY COMPANY,                            Judge: Honorable Edward J. Davila
14                                                  Magistrate: Honorable Paul S. Grewal
                    Defendant.                      Date: (Amended) November 8, 2013
15                                                  Time: 9:00 a.m.
                                                    Room: Courtroom 4, 5th Floor
16                                                  Trial Date: No date set

17

18

19

20

21

22

23

24

25

26

27

28

1

**TABLE OF CONTENTS**

2    TABLE OF AUTHORITIES ........................................................................................ ii

3    ISSUES TO BE DECIDED ......................................................................................... v

4    SUMMARY ................................................................................................................ 1

5    PLAINTIFF WILL NOT PURSUE CERTAIN CLAIMS ........................................... 2

6    ARGUMENT ............................................................................................................... 2

7          A.    LEGAL STANDARD ............................................................................ 2

8          B.    CAN THE COURT RULE ON A DISPOSITIVE MOTION WITHOUT
                 DEFENDANT CONSENTING TO THE PROCESS ............................. 2

9
10         C.    DEFENDANTS ACTS WERE UNLAWFUL REGARDLESS OF
                 INTENT ................................................................................................. 3

11         D.    THERE IS NO REQUIREMENT OF RELIANCE FOR THE ILLEGAL
                 SALE OF FOODS ................................................................................. 4
12
13         E.    ACTUAL RELIANCE EXISTS FOR PLAINTIFF'S SEPARATE UCL
                 FRAUDULENT AND MISLEADING PRONG ................................... 10

14         F.    PLAINTIFF'S DEPOSITION TESTIMONY CONFIRMS AND IS NOT
                 CONTRARY TO THE ALLEGATIONS IN THE AMENDED
15               COMPLAINT ....................................................................................... 10

16         G.    COURT'S HAVE REPEATEDLY HELD PREEMPTION IS NOT
                 APPROPRIATE .................................................................................... 14
17
18    CONCLUSION .......................................................................................................... 21

19

20

21

22

23

24

25

26

27

28

## <u>TABLE OF AUTHORITIES</u>

### CASES

*Adickes v. S. H. Kress & Co.,*
398 U.S. 144, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970) ............................................................. 2

*Aho v. Americredit Fin. Servs.,*
2011 U.S. Dist. LEXIS 80426 (S.D. Cal. 2011) ......................................................................... 8

*Altria Group, Inc. v. Good,*
555 U.S. 70 (2008) ..................................................................................................................... 15

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242, 106 S. Ct. 2505, 91 L. Ed. 2d 202, 4 Fed. R. Serv. 3d 1041 (1986) .................... 2

*Brazil v. Dole Food Co.,*
2013 U.S. Dist. Lexis 42026, *13 (N.D. Cal., March 25, 2013) ................................................ 20

*Buckman Co. v. Plaintiffs' Legal Committee,*
531 U.S. 341 (2001) ................................................................................................................... 18

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.,*
20 Cal.4th 163 (1999) .................................................................................................................. 3

*Chabner v. United Omaha Life Ins. Co.,*
225 F.3d 1042 (9th Cir. 2000) ..................................................................................................... 4

*Chacanaca v. Quaker Oats Co.,*
752 F. Supp 2d 1111 (N.D. Cal. 2010) ...................................................................................... 19

*Chae v. SLM Corp.,*
593 F.3d 936 (9th Cir. 2010) ...................................................................................................... 15

*Finuliar v. BAC Home Loans Servicing, L.P.,*
2011 U.S. Dist. LEXIS 107324 (N.D. Cal. Sep. 21, 2011) .......................................................... 4

*Florida Lime & Avocado Growers v. Paul,*
373 U.S. 132 (1963) .............................................................................................................. 15, 20

*Frezza v. Google Inc.,*
2013 U.S. Dist. LEXIS 57462 (N.D. Cal. Apr. 22, 2013) ............................................................ 8

*Hipolito v. Alliance Receivables Mgmt., Inc.,*
C-05-0842 JCS, 2005 WL 1662137 (N.D. Cal. July 15, 2005) ................................................... 3

*In re Actimmune Marketing Litigation,*
2010 WL 3463491 (N.D. Cal. 2010), *aff'd,* 464 Fed. Appx. 651 (9th Cir. 2011) ...................... 4

*In re Ditropan XL Antitrust Litig.,*
529 F. Supp. 2d 1098, 1106 (N.D. Cal. 2007) ......................................................................... 4, 8

*In re Farm Raised Salmon,*
42 Cal. 4th 1077 (2008) ............................................................................................................. 16

*In re Steroid Hormone Product Cases,*
   181 Cal. App. 4th 145, Cal. Rptr. 3d 329 (2010).........................................5, 7, 10, 13

*In re Tobacco II Cases,*
   46 Cal. 4th 298 (Cal. 2009)...................................................................................... 5

*Kearns v. Ford Motor Co.,*
   567 F.3d 1120 (9th Cir. 2009)................................................................................. 3

*Kosta v. Del Monte Corp.,*
   2013 U.S. Dist. Lexis 70533 (N.D. Cal. 2013) ....................................................... 20

*Lockwood v. Conagra Food, Inc.,*
   597 F. Supp. 2d 1028 (N.D. Cal. 2009) .................................................................. 16

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,*
   475 U.S. 574, 106 S. Ct. 1348, 89 L. Ed. 2d 538, 4 Fed. R. Serv. 3d 368 (1986) ................ 2, 14

*Medtronic, Inc. v. Lohr,*
   518 U.S. 470 (1996) ................................................................................................ 19

*Olivera v. American Home Mortg. Servicing, Inc.,*
   689 F. Supp. 2d 1218 (N.D. Cal. 2010) .............................................................. 4, 8

*Perez v. Nidek,*
   711 F.3d 1109 (9th Cir. 2013)......................................................................15, 18, 20

*Plumley v. Massachusetts,*
   155 U.S. 461 (1894)................................................................................................ 15

*Rand v. Am. Nat'l Ins. Co.,*
   2010 U.S. Dist. LEXIS 82584 (N.D. Cal. June 22, 2010) ........................................ 8

*Ries v. Arizona Beverages USA, LLC,*
   287 F.R.D. 523 (N.D. Cal. 2012).............................................................................. 8

*Rubio v. Capital One Bank,*
   613 F.3d 1195 (9th Cir. 2010)................................................................................. 3

*Samet v. Proctor & Gamble,*
   2013 U.S. Dist. Lexis 86432 (N.D. Cal. 2013) ........................................................ 20

*Stengel v. Medtronic,*
   704 F.3d 1224 (9th Cir. 2013)................................................................................. 14

*Ward v. Westinghouse Canada, Inc.,*
   32 F.3d 1405 (9th Cir. 1994)................................................................................... 2

*Wright v. Schock,*
   742 F.2d 541 (9th Cir.1984)..................................................................................... 2

*Wyeth v. Levine,*
   555 U.S. 565 (2009)................................................................................................ 15

1

**STATUTES**

2   21 U.S.C. § 301 et seq............................................................................................................... 5

3   21 U.S.C. § 343-1 .......................................................................................................... 15, 17

4   Bus. & Prof.Code, § 17203 ................................................................................................. 7

5   CAL. BUS. & PROF. CODE § 17200 ..................................................................................... 3

6   Cal. Health & Saf. Code, §§ 110765 and 110100 ......................................................... 15

7   Cal. Health & Safety Code § 110100 ............................................................................. 16

8   Cal. Health & Safety Code §§ 110660, 110665 and 110670 ....................................... 16

9   California Health & Safety Code § 110725 .................................................................... 12

10  California Health & Safety Code § 110760 .................................................................... 12

11

**REGULATIONS**

12  21 C.F.R. §§ 101.4 and 102.5 .......................................................................................... 12

13  21 C.F.R. §§ 332-34 ........................................................................................................... 18

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2                              **ISSUES TO BE DECIDED**

3

4       1.  Can the Court rule on a dispositive motion prior to ruling on class certification, if the
            defendant has not consented to the process or waived its ability to assert a one way
5           intervention argument?

6       2.  If a food product is misbranded under the California Health and Safety Code § 17100, *et
            seq.*, and thus illegal to sell or possess pursuant to California Health and Safety Code §
7           110760, can a consumer maintain a claim based on their being sold that illegal food
            product within California regardless of the purchaser's reliance on any claim other than
8           the implied claim that the product is legal to sale or purchase?

9       3.  Where the testimony establishes that a Plaintiff would not have purchased a food that was
            illegal to purchase, can Defendant overcome the presumption of reliance that a reasonable
10          purchaser would never knowingly make an unlawful purchase of a food product?

11      4.  Are California state only claims brought by a plaintiff under the Sherman Law that are
            identical to the FDCA preempted
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## SUMMARY

Defendant seeks Partial Summary Judgment to a finding on class certification issues in which it boldly declares  that "California law is clear that 'actual reliance is required' to prevail on" Plaintiff's claims including those based upon California's Unfair Competition Law ("UCL"). (Dkt No. 68, pg. 18).  Not true, as confirmed by the California Supreme Court, The California Appellate Courts, the Ninth Circuit and numerous Courts in this district

Plaintiff suffered injury as a result of the purchase of products that were illegal, worthless, and could not be lawfully possessed or resold.  Under such circumstances, Plaintiff need not have relied on any label to suffer injury as a result of an "unlawful" act or practice.  They were injured by the illegal sale which caused them to part with money in a transaction for an illegal product that no reasonable consumer would agree to enter into had they known the actual circumstances Actual reliance by Plaintiff or the class members on the packaging or labeling that is allegedly unlawful is not a necessary element to prevail under the UCL's unlawful prong.   And numerous cases have so held.   Moreover, while such reliance is not required Courts will presume its existence when the sale of an illegal product is concerned.

Regardless, Plaintiff can show actual reliance upon Defendant's representation that its foods were not illegal to sell, buy or hold.  Mr. Khasin's deposition testimony reveals clearly that he reasonably relied upon Defendant's implicit representation the products he purchased were not misbranded and legal to sell or purchase or possess, and that he would not have knowingly purchased any item if doing so constituted an illegal act.  As shown below, application of the controlling case law shows Mr. Khasin's acts and testimony to be that of a reasonable purchaser with valid claims.

Therefore, Defendant's Motion for Partial Summary Judgment fails.

**PLAINTIFF WILL NOT PURSUE CERTAIN CLAIMS**

Although Plaintiff has shown this Court, *infra,* that he could proceed with all claims and have immediate discovery thereon, he hereby states that he will not seek claims based upon health claims made on the website or non-label advertising.  Plaintiff is concurrently filing a separate Statement of Non-Opposition of these claim issues.

**ARGUMENT**

**A.    LEGAL STANDARD**

"As the moving party, [Hershey] has the burden of showing the absence of a genuine issue as to any material fact, and for these purposes the material it lodged must be viewed in the light most favorable to the opposing party."  *Adickes v. S. H. Kress & Co.,* 398 U.S. 144, 157, 90 S. Ct. 1598, 1608, 26 L. Ed. 2d 142 (1970); see, *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538, 4 Fed. R. Serv. 3d 368 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202, 4 Fed. R. Serv. 3d 1041 (1986).  "[A] motion for summary judgment should not be granted where reasonable minds could draw different conclusions from the evidence presented." *Ward v. Westinghouse Canada, Inc.,* 32 F.3d 1405, 1408 (9th Cir. 1994)(citations omitted).

**B.    CAN THE COURT RULE ON A DISPOSITIVE MOTION WITHOUT DEFENDANT CONSENTING TO THE PROCESS**

As an initial matter, this court must decide if it can rule upon a dispositive motion prior to a hearing and ruling on class certification where a movant is the defendant who has not specifically consented to the process and waived arguments afforded to him under the one-way intervention doctrine. In *Wright v. Schock,*742 F.2d 541, 543 (9th Cir.1984)*,* the "Court of Appeals held that it was not an abuse of discretion for the district court to rule on the defendants' summary judgment motion prior to addressing class certification because the defendants "consented to the chosen procedure." *Id.* at 544. Under such circumstances, the court concluded the defendants had waived "the protection afforded by an early ruling on class certification." *Id.*" *Hipolito v. Alliance Receivables Mgmt., Inc.,* C-05-0842 JCS, 2005 WL 1662137 (N.D. Cal. July

15, 2005)(allowing for ruling on dispositive motion where the Defendant expressly waived all protections.)  Although Defendant has implicitly waived its protections afforded it against one way intervention, when asked specifically about waiver by Plaintiff, Defendant's counsel denied waiver.  In a June 19th email, Defendant stated that they "are not waiving anything." (Barrett Decl. Ex. A).

If Defendant is consenting to the process of dispositive motions before class certification, it needs to expressly say so.  If Defendant is not waiving those protections, Plaintiff objects to Defendant's dispositive motion at this time.  To the extent Defendant is deemed to have made a waiver of the one way intervention rule, Plaintiff anticipate they will file their own partial summary judgment as to liability on certain claims.

## C.    DEFENDANTS ACTS WERE UNLAWFUL REGARDLESS OF INTENT

Cal. Bus. & Prof. Code § 17200 provides for three separate causes of action for "unlawful, unfair _or_ fraudulent business act[s]" (emphasis added).  Mr. Khasin's claim for the sale of illegal products, in part, premised on unlawful conduct that is not fraudulent in nature. "A business act or practice may violate the UCL if it is either 'unlawful,' 'unfair,' or 'fraudulent.' Each of these three adjectives captures 'a separate and distinct theory of liability.'" *Rubio v. Capital One Bank,* 613 F.3d 1195, 1203 (9th Cir. 2010) (quoting *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir. 2009) (quoting CAL. BUS. & PROF. CODE § 17200). *See, Medrazo v. Honda of North Hollywood*, 205 Cal.App.4th 1 (Cal. App. 2 Dist. 2012) (Claims under the "unlawful" prong and under the "fraudulent" prong are distinct causes of action, with distinct elements.).[1]   An unlawful business practice is "anything that can properly be called a business practice and that at the same time is forbidden by law*." Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co*., 20 Cal.4th 163, 180 (1999). The unlawful prong incorporates other laws and treats violations of those laws as unlawful business practices independently actionable under state law. *Chabner v. United Omaha Life*

---

[1] Similarly, "[a] claim under the "unlawful" prong that is based on unlawful, but not fraudulent, conduct is only subject to Rule 8 notice pleading. *Sanders v. Choice Mfg. Co., Inc.*, 2011 WL 6002639, at *9 (N.D. Cal. 2011); *In re WellPoint, Inc.*, 865 F. Supp. 2d 1002, 1048 (C.D. Cal. 2011).

1   *Ins. Co.*, 225 F.3d 1042, 1048 (9th Cir. 2000). "[V]irtually any law or regulation—federal or

2   state, statutory or common law—can serve as a predicate for a [Section] 17200 'unlawful'

3   violation." *Paulus v. Bob Lynch Ford, Inc.*, 139 Cal. App. 4th 659, 681 (2006) (internal

4   citations and quotations omitted). "To state a cause of action based on an unlawful business

5   act or practice under the UCL, a plaintiff must allege facts sufficient to show a violation of

6   some underlying law." *Finuliar v. BAC Home Loans Servicing, L.P.*, No. C-11-02629 JCS,

7   2011 U.S. Dist. LEXIS 107324 at *23 (N.D. Cal. Sep. 21, 2011).

8   ### D.   THERE IS NO REQUIREMENT OF RELIANCE FOR THE ILLEGAL SALE OF FOODS

9

10          A violation of the FDCA or Sherman Law does not require intent, where the violation is

    nothing more than the sale of illegal products, other than the fact that Plaintiffs believed the

11  products to be legal, no allegation of reliance is required. *See Olivera v. American Home Mortg.*

12  *Servicing, Inc.*, 689 F. Supp. 2d 1218, 1224 (N.D. Cal. 2010) ("for claims based on the 'unfair' or

13  'unlawful' prong of the UCL claim . . . plaintiff need not allege reliance on misrepresentations").

14  Where an "unlawful" act is not fraudulent in nature and not based on misrepresentations, reliance

15  is not an element of a claim under the "unlawful" prong. *See In re Ditropan XL Antitrust Litig.*,

16  529 F. Supp. 2d 1098, 1106 (N.D. Cal. 2007) (reliance not an element of claim under "unlawful"

17  prong).   In this respect, the present case is distinct from *Actimmune* in which the plaintiffs did not

18  purchase an illegal product.  Rather the violation in *Actimmune* of the FDCA and Sherman Law

19  involved unlawful intentional marketing of legal drugs for off-label uses.  That claim necessarily

20  was based on misrepresentations (*i.e.*, the marketing at issue) upon which reliance was necessary

21  to show an injury. *In re Actimmune Marketing Litigation*, 2010 WL 3463491, at *10 (N.D. Cal.

22  2010), *aff'd*, 464 Fed. Appx. 651 (9th Cir. 2011).   Here, the unlawful act and the injury occurred

23  when Defendant sold and Plaintiff purchased products that were illegal to sell or possess and are

24  thus worthless and potentially expose purchasers to legal risk even if the risk of prosecution of a

25  consumer is slight.   That unlawful act and injury (being deprived of money as a result of an

26  illegal sale and exposed to legal risk) occurred regardless of whether Plaintiff relied on any labels,

27  and regardless of Defendant's intent.  Under these circumstances, other than that the product was

28

1    legal, no misrepresentations or reliance thereon is required to state a claim under the "unlawful"

2    prong.

3         Defendant's products are "unlawful" under the UCL because they are misbranded in

4    violation of California's Sherman Law which adopts, incorporates, and is, in all relevant aspects,

5    identical to the federal Food Drug & Cosmetic Act, 21 U.S.C. § 301 et seq. ("FDCA").  So in

6    order to prevail on their UCL "unlawful" claim, Plaintiff must show two things: (1) he has

7    suffered injury in fact and (2) he lost money or property as a result of the unfair competition.  *In*

8    *re Steroid Hormone Prod. Cases*, 181 Cal. App. 4th 145, 154, 104 Cal. Rptr. 3d 329, 336 (2010)

9    quoting (Bus. & Prof.Code, § 17204).  That's it.  Id. ("[W]hile a named plaintiff in a UCL class

10   action now must show that he or she suffered injury in fact and lost money or property as a result

11   of the unfair competition, once the named plaintiff meets that burden, no further individualized

12   proof of injury or causation is required to impose restitution liability against the defendant in

13   favor of absent class members").

14        California courts have specifically found that actual reliance by Plaintiff or the class

15   members on the packaging or labeling that is allegedly unlawful is not a necessary element to

16   prevail under the UCL's unlawful prong.  In *In re Tobacco II Cases*, 46 Cal. 4th 298, 325, fn17

17   (Cal. 2009), explained that while actual reliance is required in a UCL action "based on a fraud

18   theory involving false advertising and misrepresentations to consumers," the "UCL defines

19   'unfair competition' as 'includ[ing] any unlawful, unfair or fraudulent business act or practice …

20   ' (§ 17200)" and "[t]here are doubtless many types of unfair business practices in which the

21   concept of reliance, as discussed here, has no application."  One such "unfair business practice,"

22   which does not require a showing of reliance, is where a defendant sells a product that is unlawful

23   to sell because some aspect of the product does not comply with state law.  *See e.g., Medrazo*,

24   205 Cal. App. 4th 1 (2012); *In re Steroid Hormone Product Cases*, 181 Cal. App. 4th 145, 104

25   Cal. Rptr. 3d 329 (2010) (discussed below).

26        In *Medrazo*, the plaintiff purchased a motorcycle for her boyfriend that did not have a

27   "hanger tag" that showed various information including the manufacturer's suggested retail price

28   and any dealer-added costs in violation of California's Vehicle Code.  The plaintiff admitted that

1   she never saw the hanger tag, so she could not have "relied" upon it in deciding whether or not to

2   purchase the product.  And the dealer-added charges were set out in the sales contract which the

3   plaintiff admittedly read and signed.  Based on this evidence, the trial court granted the

4   defendant's motion for directed verdict finding on her UCL claim because neither she nor other

5   class members actually relied upon or were misled by the nondisclosure of those charges on a

6   hanger tag attached to the motorcycle." *Id.* at 11.

7   　　　But the appellate court reversed, finding that "[t]he [trial] court's analysis fails to take into

8   account the different prongs of the UCL." *Medrazo*, 205 Cal. App. 4th at 11.  The court noted

9   that the UCL outlaws as unfair competition "any unlawful, unfair or fraudulent business act or

10  practice and unfair, deceptive, untrue or misleading advertising," and that "[b]ecause the statute is

11  framed in the disjunctive, a business practice need only meet one of the three criteria to be

12  considered unfair competition. *Id*. at 11-12. While the plaintiff had alleged that the defendant's

13  conduct qualified under all of those different prongs, citing *Tobacco II*, the court recognized that

14  "an actual reliance requirement does not apply to UCL actions that are not based upon a fraud

15  theory." *Id.* at 12.

16  　　　In analyzing whether the plaintiff had presented sufficient evidence of standing under the

17  UCL's "unlawful prong," the court looked to only two issues:  (1) whether she had established

18  she "has suffered injury in fact" and (2) whether she "has lost money or property as a result of the

19  unfair competition." *Id.*  The court found that the plaintiff had suffered an injury in fact because

20  "[s]he presented evidence that there was no hanger tag showing the dealer-added charges attached

21  to the motorcycle that she and her boyfriend were interested in purchasing, and that she was not

22  informed of the dealer-added charges or the total price of the motorcycle until she was presented

23  with the sales contract." *Id.* at 13.  The court found that "[t]his evidence is sufficient to establish

24  that she suffered a concrete, particularized, and actual invasion of an interest legally protected by

25  section 11712.5 and section 24014, i.e., the disclosure—*before a decision to purchase a specific*

26  *motorcycle is made* —of the MSRP and any dealer-added charges for all new motorcycles offered

27  for sale. *Id*. (emphasis in original).

28  　　　The court also found that the plaintiff had established an economic injury caused by the

1    defendant's alleged unfair competition:  she had purchased a product that the defendant

2    "allegedly was **not legally allowed to sell** (or at least was not allowed to sell at the price for

3    which it was sold) because it failed to disclose the dealer-added charges on a hanger tag attached

4    to the motorcycle."  *Id.*

5          Remanding the case for a retrial, the appellate court noted that the only issue was whether

6    the defendant's sale of the motorcycle without the hanger tags violated the UCL – if the UCL was

7    violated the plaintiffs were entitled to restitution.  *Id.* at 13-14 ("If, on retrial, the court determines

8    that HNH's sale of motorcycles without hanger tags (or without tags that disclosed dealer-added

9    charges) violated the UCL, class members will be entitled to restitution of any money 'which may

10   have been acquired [by HNH] by means of such unfair competition' (Bus. & Prof. Code, §

11   17203) – i.e., the dealer-added charges that were not disclosed on hanger tags").  ").  Reliance by

12   the plaintiff or the class on the presence or absence of the hanger tags was not relevant

13   whatsoever.

14         That point was driven home in *In re Steroid Hormone Product Cases*, 181 Cal. App. 4th

15   145, 104 Cal. Rptr. 3d 329 (Cal. App. 2d Dist. 2010), where the plaintiff brought a class action

16   after he had purchased nutritional supplements from GNC that contained a controlled substance (a

17   steroid known as androstenediol).  California law prohibited the sale of that steroid without a

18   prescription.  The plaintiff brought several claims including one under the UCL's unlawful prong.

19         The trial court refused to certify the class because it found that individualized issues like

20   reliance or whether the legality of the sale was material to the purchaser predominated, but the

21   appellate court found that reasoning was erroneous.  *Id.* at 155 (noting that the trial court

22   incorrectly believed that while "[b]efore November 2004, 'relief under the UCL, including

23   restitution, [was] available without proof of individual deception, reliance and injury,' " "after

24   Proposition 64, the class may obtain restitution only upon a showing of reliance and causation."

25   Instead, the appellate court found the "two predominate issues (other than [the plaintiff]'s

26   individual standing)" were (1) whether GNC's sale of androstenediol products was unlawful; and

27   if so, (2) the amount of money GNC "may have ... acquired by means of" those sales that must be

28   restored to the class."  *Id.*

1   The court emphasized that Proposition 64 had not changed the UCL except as to the class

2   representative's standing requirements. *Id.* ("As Tobacco II made clear, Proposition 64 did not

3   change the substantive law governing UCL claims, other than the standing requirements for the

4   named plaintiffs, and "before Proposition 64, 'California courts have repeatedly held that relief

5   under the UCL is available without individualized proof of deception, reliance and injury'"").

6   Thus, "where the UCL claim is based upon the unlawful prong of the UCL" there is "no issue

7   regarding reliance." *Id.*

8   Numerous other cases have similarly held that reliance by either the plaintiff or the class is

9   not relevant under the UCL's unlawful prong.  *See e.g., Frezza v. Google Inc.*, 2013 U.S. Dist.

10  LEXIS 57462 (N.D. Cal. Apr. 22, 2013) ("Also similar to North Carolina's law, no reliance is

11  required to prove violations of the UCL based on "unlawful" or "unfair" conduct."); *Olivera*, 689

12  F. Supp. 2d 1218 ("For claims based on the "unfair" or "unlawful" prong of the UCL claim,

13  courts have held that the plaintiff need not allege reliance on misrepresentations, and may allege

14  'causation more generally.'""); *Rand v. Am. Nat'l Ins. Co.*, 2010 U.S. Dist. LEXIS 82584 (N.D.

15  Cal. June 22, 2010) ("Moreover, reliance is only required under the fraud prong of the UCL, and

16  is not an element under the "unfair" or "unlawful" prongs of that statute); *In re Ditropan XL*

17  *Antitrust Litig.*, 529 F. Supp. 2d 1098, 2007 U.S. Dist. LEXIS 38068 (N.D. Cal., May 11, 2007)

18  ("Plaintiffs Need Not Allege Reliance….However, where, as here, plaintiffs allege that they were

19  harmed by other types of misconduct actionable under the UCL the Court finds no basis for

20  requiring reliance on misrepresentations."); *Aho v. Americredit Fin. Servs.*, 277 F.R.D. 609, 623

21  (S.D. Cal. 2011) ("The claim at issue here, that Defendant has engaged in unlawful conduct under

22  the UCL, does not require reliance"); Stern, § 5.166, BUS. & PROF. C. § 17200 PRACTICE

23  (The Rutter Group 2012) ("[t]here are a number of theories that have been litigated and rejected

24  as defenses to claims alleging 'unlawful' business practices . . . . Lack of Deception No Defense:

25  That no one was actually deceived by the practice is not a defense to a section 17200 "unlawful"

26  business practice claim"); *Ries v. Arizona Beverages USA, LLC*, 287 F.R.D. 523, 537-38 (N.D.

27  Cal. 2012) (stating liability is imposed and relief available under the unlawful prong "without

28  individualized proof of deception, reliance, and injury.").

1   What *Medrazo*, *In re Steroid Hormone Prod. Cases* and these cases cited above make

2   clear is that if the defendant's product is sold in violation of some state law, and thereby violates

3   the UCL's unlawful prong, neither the plaintiff nor any members of the class need establish actual

4   reliance.  The reason is simple: because the product is illegal, it should never have been sold to

5   the plaintiff in the first place.  That is the unlawful act that creates the defendant's liability under

6   the UCL. Whether the plaintiff relied upon the alleged unlawful aspect of the product is not

7   relevant, especially since the UCL's intended focus in on the defendant's conduct.  *See Stearns v.*

8   *Ticketmaster Corp.*, 655 F.3d 1013, 1020 (9th Cir. 2011) (explaining that a California state law

9   claim under the UCL focuses on "defendant's conduct," rather than any reliance by plaintiff or

10  individualized proof of deception or injury). To require actual reliance would be reading into the

11  UCL an additional requirement that the neither the California legislature nor the people via

12  Proposition 64 intended to include.[2]

13      In this case, the complained-of products are "illegal."  Defendant has misbranded its

14  product rendering the product illegal for Defendant to sell or Plaintiffs to possess under state law.

15  *See* California Health & Safety Code § 110760 (unlawful for any person to manufacture, sell,

16  deliver, hold, or offer for sale any food that is misbranded); 110765 (unlawful for any person to

17  misbrand any food); 110770 (unlawful for any person to receive in commerce any food that is

18  misbranded or to deliver or proffer for delivery any such food); 110398 (unlawful for any person

19  to advertise any food, drug, device, or cosmetic that is adulterated or misbranded).  It is this

20  illegal nature of the product that provides the basis for Plaintiff's UCL unlawful-prong claims.[3]

21

22  [2] A showing of actual reliance under the UCL is reserved for those cases where the product is not
    illegal to sell or possess.  *See e.g.*, *Kwikset v. Superior Court,* 51 Cal. 4th 310 (2011).  In
    *Kwikset*, the plaintiff alleged the defendant falsely marketed and sold locks labeled as "made in
23  the USA" that in fact contained foreign-made parts and involved foreign manufacture.  *Id.* at 317.
    There was nothing about the locks that violated any state law other than the fact that they falsely
24  stated where they were made.  In short, the plaintiff's case stemmed from the defendant's lie
    about where it made the locksets.  Based upon the reasoning of *Tobacco II* noted above, the Court
25  found that since the predicate of the case was unlawful UCL claims was misrepresentation and
    deception, reliance was an element of the Plaintiff's claim.  Id.  Like it did in *Tobacco II*, the
26  *Kwikset* court "express[ed] no views concerning the proper construction of the cause requirement
    in other types of cases" that were not based upon fraud, misrepresentation or deception.  *Id* at
27  326, n.9.
    [3] *Durell* and *In re Actimune* cases that were predicated on misrepresentations and deceptions by
28  the defendant do not govern nor apply to Plaintiff's unlawful prong claims, which (as noted
    above) are predicated on Defendant's sale of illegal products.

E.    **ACTUAL RELIANCE EXISTS FOR PLAINTIFF'S SEPARATE UCL FRAUDULENT AND MISLEADING PRONG**

Summary Judgment is also inappropriate because sufficient reliance is present even as to Plaintiff's other, non-unlawful prong UCL claims.  While a plaintiff must show that the misrepresentation was an immediate cause of the injury-producing conduct, the plaintiff need not demonstrate it was the only cause. *In re Tobacco II Cases*, 46 Cal. 4th 298, 326-28, 207 P.3d 20, 39-41 (2009).  A presumption, or at least an inference, of reliance arises wherever there is a showing that a misrepresentation was material. *Id*.  A misrepresentation is judged to be "material" if "a reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question" and as such materiality is generally a question of fact unless the "fact misrepresented is so obviously unimportant that the jury could not reasonably find that a reasonable man would have been influenced by it." *Id*.

In the context of the purchase of an illegal product, reliance is easily proven.  Consumers rely on sellers to not sell them illegal products. And, as logic would suggest, it is *presumed* that a reasonable person would not knowingly purchase an illegal product.  *In re Steroid Hormone Prod. Cases*, 181 Cal. App. 4th 145, 157, 104 Cal. Rptr. 3d 329, 339 (2010) ("[t]the question that must be answered in this case is whether a reasonable person would find it important when determining whether to purchase a product that it is unlawful to sell or possess that product. It requires no stretch to conclude that the proper answer is 'yes'—we assume that a reasonable person would not knowingly commit a criminal act").   In such a situation, class wide reliance will be presumed because the misrepresentation or omission is material. *Id.* at 159-160 (As we explained, there is no impediment to establishing reliance on a classwide basis for the CLRA claim in this case because it can be established by showing that the alleged misrepresentation— that the androstenediol products were legal—was material.).

F.    **PLAINTIFF'S DEPOSITION TESTIMONY CONFIRMS AND IS NOT CONTRARY TO THE ALLEGATIONS IN THE AMENDED COMPLAINT**

Defendant's state that Mr. Khasin's testimony regarding separate statements on the labels "doom[] his claims[,]" (Dkt. 68, pg. 11).   This argument ignores the gravamen of the Amended Complaint which is there are separately two types of claims being asserted: unlawful *or*

fraudulent.  For instance, the complaint alleges that "[t]hese practices are not only illegal **but** they

mislead consumers[ . . .]." (AC ¶ 11)(emphasis added).

The testimony of Mr. Khasin fits right into the simple logic shown in *In re Steroid*

*Hormone Prod. Cases* and establishes unequivocally that although Defendant tries desperately to

portray Plaintiff as not concerned about the illegality of the labels on the products he purchased,

nothing is further from the truth.  Plaintiff understood and testified during cross and direct

examination that he was concerned with the unlawfulness/illegality of the products as a whole.

> [Examination by Counsel for Hershey, T.J. Tu:]
>
> 19    Q    Did you make a conscious choice not to buy
>
> 20    Hershey's Cocoa and Ovaltine instead?
>
> 21    A    Yes.
>
> 22    Q    Why?
>
> 23    MR. GORE:  Objection; asked and answered
>
> 24    several times.
>
> 25    You may answer.
>
> 1    THE WITNESS:  **I feel that Hershey's is lying**    207
>
> 2    **to me, and I don't want to purchase any products that**
>
> 3  **are illegal to buy**.
>
> [Dep. Tr. 206:19-207:3](emphasis added).

Mr. Khasin clearly confirmed the same understanding of unlawfulness of the labels when

he testified upon examination by his counsel:

> 16    Q    BY MR. GORE:  Mr. Khasin, when you purchased
>
> 17    the Hershey products that you talked about today, did
>
> 18    you believe at the time you made the purchases that the
>
> 19    labels on those products were in compliance with the
>
> 20    law?

21   A   Yes, I did.

22   Q   Would you ever intentionally purchase a

23   product that would be illegal to buy or to hold?

24   **No, I would not.**  [. . .]

9   Q   Does that include the Hershey products that

10   you reference in your amended complaint?

11   MR. TU:  Objection to form.

12   Q   BY MR. GORE:  You can answer.

13   A   Yes.

(Khasin Dep. Tr. 274:16-275:13) (emphasis added)[4].

Similarly, Plaintiff has alleged and shown by testimony that "[Hershey] failed to disclose the presence of the polyglycerol polyricinoleic acid by its common or usual name, as required by California Health & Safety Code § 110725 and 21 C.F.R. §§ 101.4 and 102.5 [, and a] reasonable consumer would expect that when a manufacturer lists the ingredients on its products, the product's ingredients are given their common or usual name as required by law."  (Am. Comp. at ¶¶ 162-163).  Because Defendant uses PGPR instead of its common chemical name the subject products are misbranded and are thus unlawful for any person to "manufacture, sell, deliver, hold, or offer for sale."[5]  California Health & Safety Code § 110760.[6]  As with the other unlawful products in the Amended Complaint sold by Hershey, Mr. Khasin clearly expressed that it was his purchase of "illegal" products containing PGPR sold by the Defendants that was at the crux of his complaint:

---

[4] Plaintiff states specifically that he would not have purchased Defendants' chocolate bars or kisses, dark chocolate bars or kisses, cocoa or mints if he had known at the time of purchase that they were illegal to buy.  *See*, Khasin Dep. at 274-276 attached as Exhibit B to the Declaration of Richard R. Barrett filed herewith.

[5] In its Amended Response to Request for Admissions, Defendant admits that PGPR is included in its chocolates. (Barrett Decl. Ex C). Defendant, however, has produced no documents for any claims of plaintiffs, so Plaintiffs hands are bound with respect to full investigation.

[6] Defendant products are also unlawful pursuant to the following sections of California's Sherman Law: Sec. 110765: It is unlawful for any person to misbrand any food; Sec. 110770: It is unlawful for any person to receive in commerce any food that is misbranded or to deliver or proffer for delivery any such food and Sec. 110398: It is unlawful for any person to advertise any food, drug, device, or cosmetic that is adulterated or misbranded.

13   Q   Why should PGPR be spelled out in its full

14   scientific name?

15   MR. GORE:  Objection; calls for a legal

16   conclusion, calls for an expert opinion, speculation.

17   You may answer.

18   THE WITNESS:  I think because legally it has

19   to spell out the whole product name.

(Dep. Tr. 137:13-19).  Mr. Khasin confirmed further:

14   Q   At the time you made your purchases of

15   Hershey's products, if you had known that those products

16   were illegally, unlawfully labeled with the ingredient

17   PGPR, would you have purchased them anyway?

18   MR. TU:  Objection; calls for speculation.

19   Objection to the form of the question.

20   Q   BY MR. GORE:  You may answer.

21   **A   No, I would not have bought an illegal**

22   **product.**

(Dep. Tr. at 276:14-22) (emphasis added).

Here, Plaintiff was entitled to and did rely on Defendant not to sell him illegal products, i.e., products that are misbranded per state law.  Plaintiff relied on the fact that the products of Defendant could be legally, sold and possessed. And it is presumed that Plaintiff would not knowingly purchase illegally misbranded products (a point which he confirmed at his deposition). So the fact that Plaintiff did not fully read the illegal label is no more relevant than the plaintiff in *Medrazo* who did not read the hanger tag or the plaintiff in *In re Steroid Hormone Product Cases* who unwittingly purchased steroids without a prescription.  The sale of the illegal product is what perfects the claim of Mr. Khasin (and the class) under the UCL.

This is especially true in this case where Plaintiff's claims would be preempted if not for them being based upon violations of state law which mirror federal law (this is discussed more

1  fully *infra*).  Plaintiff agrees that he may not argue that Defendant's label is misleading or

2  fraudulent unless he can point to a specific state law that supports his claims.  But by being able

3  to do so, the claim necessarily exists not only under a general "fraud theory" but because the state

4  law says it is illegal.

5        As both *Medrazo* and *In re Steroid Hormone Prod. Cases* demonstrate, it does not matter

6  what the plaintiff did or did not know about the product before purchasing it.  Or why the plaintiff

7  purchased it or why the product was illegal.  All that the plaintiff needs to show in order to

8  establish a claim under the UCL's unlawful prong is standing to bring the claim,[7]  that the product

9  was unlawful under the UCL, and the amount of restitution.

10 **G.    COURT'S HAVE REPEATEDLY HELD PREEMPTION IS NOT APPROPRIATE**

11       Hershey prays, without new support, for Plaintiff's claims to be dismissed on implied

12 preemption grounds. This Court has already rejected that argument in this case. *Khasin v. The*

13 *Hershey Co.*, 5:12-cv-01862-EJD, 2012 U.S. Dist. LEXIS 161300, *10-16 (N.D. Cal., Nov. 9,

14 2012, Judge Davila). The law of this case that Plaintiff's claims are not impliedly preempted

15 remains well-founded and should be sustained. Plaintiff's claims remain based on California law,

16 and the *Perez* case is inapposite to the facts here, as other Court's in this district have routinely

17 held.

18       "Parties seeking to invalidate a state law based on preemption 'bear the considerable

19 burden of overcoming the starting presumption that Congress does not intend to supplant state

20 law.'" *Stengel v. Medtronic*, 704 F.3d 1224, 1227-28 (9th Cir. 2013).  Federal preemption only

21 occurs when: 1) Congress enacts a statute that explicitly preempts state law; 2) state law actually

22 conflicts with federal law; and 3) federal law occupies a legislative field to such an extent that it

23 is reasonable to conclude that Congress left no room for state regulation in that field. *Chae v.*

24

25 [7] When Plaintiff purchased a misbranded product there is causation and injury even absent
   reliance on the misrepresentation/omission that misbranded the product. This injury arises from
26 the unlawful sale of an illegal product that is a crime to sell and crime to possess. Plaintiff has
   been deprived of money in an illegal sale and given a worthless illegal product in return. In
27 addition, due to the law's prohibition of possession of such a product, as noted above, Plaintiff
   has been unwittingly placed by Defendant's conduct in a legal position that no reasonable
28 consumer would agree to be placed. *In re Steroid Hormone Prod. Cases*, 181 Cal. App. 4th at 157
   (finding that "a reasonable person would not knowingly commit a criminal act.").

PLAINTIFF'S RESPONSE TO MOTION FOR PARTIAL SUMMARY JUDGMENT                              14
CASE NO. 12-CV-01862 EJD-PSG

1    *SLM Corp.*, 593 F.3d 936, 941 (9th Cir. 2010).

2         There is a strong presumption against preemption generally (*Wyeth v. Levine*, 555 U.S.

3    565 n.3 (2009)), and that presumption is enhanced in regulation of health and safety, particularly

4    concerning laws regulating the proper marketing of food since those are historically the states'

5    powers. *See Florida Lime & Avocado Growers v. Paul*, 373 U.S. 132, 144 (1963) ("States have

6    always possessed a legitimate interest in 'the protection of [their] people against fraud and

7    deception in the sale of food products' at retail markets within their borders.")(*citing Plumley v.*

8    *Massachusetts*, 155 U.S. 461, 472 (1894)). Those historic powers of the States are not superseded

9    by Federal Act unless that was the "clear and manifest purpose" of Congress. *Altria Group, Inc.*

10   *v. Good*, 555 U.S. 70, 77 (2008).

11        Defendant cannot overcome those strong presumptions against preemption, nor provide

12   any evidence to support any of the three required preemption conditions. Defendant includes no

13   discussion of how its (incorrect) argument that reliance is required for "unlawful" CLA claims

14   somehow invokes implied preemption. Rather, Defendant's renewed motion is apparently

15   intended to simply make a preemption claim based on *Perez v. Nidek*, 711 F.3d 1109 (9th Cir.

16   2013). *Perez* is inapposite to the Sherman Law claims Plaintiff presents.

17        Plaintiff only brings claims under the Sherman Law, and he does not present any claim

18   under statutes differing from the requirements of the FDCA and NLEA. The Sherman Law uses

19   language "identical to" the FDCA, and incorporates "[a]ll food labeling regulations and

20   amendments to those regulations adopted pursuant to the [FDCA]" as "the food regulations of

21   [California]. *In re Farm Raised Salmon Cases*, 42 Cal. 4th 1077, 1086 (2008) (citing Cal. Health

22   & Saf. Code, §§ 110765 and 110100).

23        Concerning the first preemption prong, Congress did not (through the FDCA or NELA)

24   explicitly preempt state law. Congress only preempts (through the FDCA) state requirements that

25   differ from the federal requirements. See 21 U.S.C. § 343-1. The Sherman Law does not differ, as

26   is discussed concerning the second prong. *See also In re Farm Raised Salmon*, 42 Cal. 4th 1077,

27   1090 (2008) (providing "section 343-1 clearly and unmistakably evince[s] Congress's intent to

28   authorize states to establish laws that are 'identical to' federal law…; [t]hat is precisely what

California did in enacting the Sherman Law.") As to the second prong, the Sherman Law under which Plaintiff asserts claims is identical to the federal law. The Sherman Law expressly adopted the federal labeling requirements as its own, stating "[a]ll food labeling requirements and any amendments to those regulations adopted pursuant to the federal act…shall be the food regulations of this state." Cal. Health & Safety Code § 110100.  *See also* Cal. Health & Safety Code §§ 110660, 110665 and 110670 prohibiting misbranded food. As such, both the first and second preemption prongs are inapplicable, here, because the FDCA only expressly preempts contrary state statutes, and the Sherman Law simply incorporates that federal law as California's. Concerning the third preemption prong, it is unreasonable to conclude that Congress intended no room for state regulation. Expressly to the contrary, Congress (through the NLEA) "amended the FDCA to include an express preemption provision that allows state regulations that are identical to the federal law." *Lockwood v. Conagra Food, Inc*., 597 F. Supp. 2d 1028, 1032 (N.D. Cal. 2009) (holding no preemption to be applicable to consumers' claims related to state food labeling requirements). The third element is likewise, thus, inapplicable given that allowance; California, through the Sherman Law, adopted mirroring legislation Congress allowed.

Notably absent from Defendant's brief is any discussion of the seminal case of *In re Farm Raised Salmon Cases*. There, the California Supreme Court considered, and refuted, the defendant's assertion that actions under the Sherman Law were preempted. The California Supreme Court held that "allow[ing] states to enforce federal requirements in federal court, but not discussing who would be allowed to enforce the identical state requirements…suggest[s] that Congress did not intend to alter the status quo, i.e., states may choose to permit their residents to file unfair competition or other claims based on the violation of state laws. *In re Farm Raised Salmon Cases*, 42 Cal. 4th at 1090 (see also Id. at 1090 stating "[w]hile Congress clearly stated its intent to allow states to establish their own identical laws, it said absolutely nothing about proscribing the range of available remedies states might choose to provide for the violation of those laws, such as private actions.").

The *In re Farm Raised Salmon* Court detailed that laws regulating "the proper marketing of food, including the prevention of deceptive sales practices, are …within states' historic police

1    powers. Id. at 1088. That Court held that Congress made a "conscious choice" not to preclude

2    private actions based on state laws authorized by 21 U.S.C. § 343-1, including the Sherman Law.

3    Id. at 1098-99. Congress, in passing the NLEA, allowed states to establish its own range of

4    remedies and private rights of actions. Id. at 1090. The *In re Farm Raised Salmon* Court held that

5    private citizens could maintain suits under the Sherman Law. Id.

6        As such, the *In re Farm Raised Salmon* Court considered and rejected preemption issues

7    including: 1) whether the FDCA would expressly preempt state law like the Sherman Law; 2)

8    whether the Sherman Law conflicts with the federal statute; and 3) whether federal law occupied

9    this regulatory field in such a manner that it is unreasonable to conclude it left any room for state

10   regulation through the Sherman Law. *In re Farm Raised Salmon*, 42 Cal. 4th at 1089-1099.

11   Defendant here presents no new argument demonstrating the application of the three preemption

12   elements to this cause of action, nor of any law abrogating *In re Farm Raised Salmon*'s teachings.

13   Is preemption argument is, thus, unfounded and must be denied. It fails to meet the high burden

14   on any of those three preemption prongs.

15       Further, the text of the NLEA makes clear that Congress did not intend to preclude private

16   enforcement actions. Section 6 (c)(1) provides that the preemptive impact of the NLEA "sweep(s)

17   no further than the plain language of the statute itself." Pub. L. No. 101-535, § 6 (c)(1) (Nov. 8,

18   1990), 104 Stat. 2364, amended Aug. 17, 1991, Pub. L. 102-108, § 2 (b), 105 Stat. 549. Here, the

19   Sherman Law extends no further than the federal statutes and regulations; accordingly, there is no

20   preemptive impact. The *In re Farm Raised Salmon* Court likewise addressed this issue and held

21   that "[n]o court, particularly after the passage of the NLEA, has ever held that states may not

22   provide a private remedy for the violation of state laws imposing requirements identical to those

23   imposed by federal law." *In re Farm Raised Salmon*, 42 Cal. 4th at 1096. The California Supreme

24   Court held that Congress made the conscious choice to not preclude private actions to enforce

25   state laws identical to the FDCA. Id. at 1098-99.

26       Defendant cannot meet its high burden of showing federal preemption over Plaintiff's

27   claims. Defendant argues that Plaintiff's claims are preempted under *Perez v. Nidek Co., Ltd*., 711

28   F.3d 1109 (9th Cir. 2013) and *Buckman Co. v. Plaintiffs' Legal Committee*, 531 U.S. 341 (2001).

1   Defendant's argument has been addressed and rejected by the *In re Farm Raised Salmon* Court,

2   this Court in the instant action,  other California Courts, and Defendant's arguments and

3   referenced cases are otherwise inapposite to the matters at issue in this action. Defendant's

4   motion must be denied.[8]

5       First, Defendant's reliance on the implied preemption holding of *Perez*, which relied on

6   *Buckman*, is misplaced. The claim at issue in *Perez* distinguishes these points. The claim at issue

7   in *Perez* was plaintiff's claim for "fraud [by omission] on the FDA," which is penalized under 21

8   C.F.R. §§ 332-34 with the FDA the enforcer of those sections. Both *Buckman* and *Perez* had

9   those "fraud-on-the-FDA" claims. *Perez*, 711 F.3d at 1119. Those are not the claims presented

10  here.

11      Here, Plaintiff brings claims under the California Sherman Law. Plaintiff's claims do not

12  bring claims under the FDCA. Plaintiff's claims exist because California's legislature chose to

13  implement the Sherman Law providing citizens private rights of actions to enforce violations of

14  that law. Plaintiff here brings claims for Defendant's violations of the FAL, the CLRA, the

15  UCL's fraud prong, the UCL's unfair prong and the UCL's unlawful prong predicated on

16  violations of the Sherman Law, FAL and CLRA. Those claims are not FDCA claims.

17      In fact, the converse of Defendant's argument is true. Plaintiff's claims are not preempted

18  *because* the Sherman Law is identical to the FDCA. Such is the real question presented by

19  Defendant's implied preemption argument, being whether a claim presented by a plaintiff under

20  the Sherman Law, identical to the FDCA is preempted?  It simply is not.

21      The *In re Farm Raised Salmon* Court resolved this issue. Stating the Sherman Law

22  "imposes obligations identical to those imposed by the FDCA, as it must under section 343-1,

23  does not substantively transform plaintiffs' action into one seeking to enforce federal law." That

24  Court, rejecting defendant's argument that preemption applies, held that states are allowed to

25  allow private remedies under those identical state statutes. *In re Farm Raised Salmon*, 42 Cal. 4th

26  at 1095-96 (citing *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 495 (1996). That Court held implied

27

28  _____

[8] Further, as mentioned *supra*, Defendant's implied preemption argument has already been
rejected in this cause of action.

1   preemption arguments unconvincing, and held that private rights of actions under the Sherman

2   Law are allowed. *Id*. at 1089-99. Through that holding, the *In re Farm Raised Salmon* Court

3   likewise addressed, and rejected, an argument identical to Hershey's that claims under the

4   Sherman Law are preempted as an attempt "through the backdoor of state law" around the

5   FDCA." *Id*. (holding that private rights of action are allowed under the Sherman Law); see also

6   Hershey's MSJ, *d.e. 68* at p. 23 lines 1-4).

7        The *In re Farm Raised Salmon* holding follows the well-settled Supreme Court precedent

8   rejecting preemption claims where the state statute is identical (or substantially identical) to the

9   federal one. *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 496-97 (1996) Only if the Sherman Law was

10  different from the FDCA would there be a preemption argument; since Plaintiff's claims are

11  based on state laws mirroring the FDCA, Plaintiff's claims are not preempted. *Chacanaca v.*

12  *Quaker Oats Co*., 752 F. Supp 2d 1111, 1118 (N.D. Cal. 2010).

13       Further, the preemption position Defendant poses is illogical. For example, should this

14  Court rule that a private citizen cannot sue to enforce the Sherman Law, California's decision to

15  incorporate the FDCA through the Sherman Law and allow private citizens to enforce the

16  Sherman Law would be wholly abrogated. Such would render the Sherman Law a nullity.

17       That unconscionable, illogical result is akin to the unfathomable result Justice Breyer

18  considered, and dismissed in *Lohr*. There, discussing a similar argument from that defendant that

19  state laws mirroring those of the federal Medical Device Amendment were preempted, Justice

20  Breyer reasoned that:

21       Under [defendant's] view of the statute, Congress effectively precluded state
         courts from affording state consumers any protection from injuries resulting from
22       a defective medical device. Moreover, because there is no explicit private cause of
         action …in the MDA,  Congress would have barred most, if not all, relief from
23       person's injured by defective medical devices. [Defendant's] construction of §
         360k would therefore have the perverse effect of granting complete immunity
24       from design defect liability to an entire industry that, in the judgment of Congress,
         needed more stringent regulation."
25
    *Lohr*, 518 U.S. at 487. Following that reasoning, Justice Breyer concurred in the majority's
26
    rejection of the defendant's implied preemption argument. Id.
27
         Similarly, were Defendant here granted the preemption it seeks, since there exists no
28

1    private right of action under the FDCA, the enactment by Congress of the FDCA would have

2    granted immunity to food manufacturers everywhere. That was not intended. Rather, the FDCA

3    expressly allowed states to adopt mirroring legislation without any prohibition against private

4    rights of action. California's legislature provided those rights to its consumers. That legislation

5    need be given that effect, particularly in this field of food marketing regulation traditionally left to

6    the states. *See Florida Lime & Avocado Growers*, 373 U.S. at 144.  This Court in this very case

7    and other Courts in this Judicial District have routinely rejected identical implied preemption

8    arguments concerning the Sherman Law akin to those presented here, including those presented

9    arguing implied preemption of under *Perez v. Nidek. See Khasin v. The Hershey Co.*, 2012 U.S.

10    Dist. Lexis 161300, *10-20 (rejecting defendant's argument that Sherman Law claims are barred

11    because of a private action bar within the FDCA); *see also Brazil v. Dole Food Co.*, Case No. 12-

12    cv-01831-LHK, 2013 U.S. Dist. Lexis 42026, *13-26 (N.D. Cal., March 25, 2013, Opinion Judge

13    Koh) (rejecting defendant's claims that *Perez/Buckman*'s teachings required preemption and

14    rejecting defendant's arguments that private rights of action under the Sherman Law are

15    preempted); *see also Samet v. Proctor & Gamble*, 5:12-cv-01891-PSG, 2013 U.S. Dist. Lexis

16    86432, *19-27 (N.D. Cal. June 18, 2013, Opinion Judge Grewal); *see also Kosta v. Del Monte

17    Corp.*, 12-cv-01722-YGR, 2013 U.S. Dist. Lexis 70533, *17-26 (N.D. Cal., May 15, 2013,

18    Opinion Judge Rogers) (rejecting defendant's assertion that plaintiff's claims were preempted

19    because no private right of action exists under the FDCA).

20       Plaintiff seeks remedies under the Sherman Law, UCL, FLA and CLRA for Defendant's

21    violation of those state statutes. Plaintiff's claim under the UCL continues, irrespective of

22    reliance, or not. Defendant presents no argument as to why lack of reliance would somehow

23    modify the well-settled law (and this Court's prior ruling) that implied preemption is inapplicable

24    to Sherman Law claims.  It simply does not. Well-settled law provides California consumers the

25    right to seek relief and to redress harms under those California statutes, with preemption being no

26    obstacle. *See In re Farm Raised Salmon*, 42 Cal. 4th 1077. Defendant's reliance on *Perez* and

27    *Buckman* preemption is inapposite to the facts and claims presented. Hershey's implied

28    preemption motion must be rejected.

1

**<u>CONCLUSION</u>**

2

     For the foregoing reasons, this Court should deny Defendant's Motion for Partial

3

Summary Judgment.

4

5

     Dated this 19th day of July, 2013.

6

7

                             Respectfully submitted:

8

9

                            /s/  *Richard R. Barrett*
Richard R. Barrett (*admitted pro hac vice*)

10

LAW OFFICES OF RICHARD R. BARRETT, PLLC

11

2086 Old Taylor Road, Suite 1011
Oxford, MS 38655

12

Telephone: (662) 380-5018
Fax: (866) 430-5459

13

rrb@rrblawfirm.net

14

Ben F. Pierce Gore (SBN 128515)
PRATT & ASSOCIATES

15

1871 The Alameda, Suite 425
San Jose, CA 95126

16

Telephone:  (408) 429-6506
Fax:  (408) 369-0752

17

pgore@prattattorneys.com

18

19

20

21

22

23

24

25

26

27

28

1

**CERTIFICATE OF SERVICE**

2

I hereby certify that a true and correct copy of the forgoing was filed and served

3

via the Court's ECF filing system this 19th day of July, 2013.

4

5
          /s/  *Richard R. Barrett*

6
          Richard R. Barrett

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28