1  John W. Fowler (Bar No. 037463)
   jfowler@be-law.com
2  BERGESON LLP
   303 Almaden Boulevard, Suite 500
3  San Jose, CA 95110-2712
   Telephone:  (408) 291-6200
4  Facsimile:  (408) 297-6000

5  Steven A. Zalesin (admitted *pro hac vice*)
   sazalesin@pbwt.com
6  Travis J. Tu (admitted *pro hac vice*)
   tjtu@pbwt.com
7  Michelle W. Cohen (admitted *pro hac vice*)
   mcohen@pbwt.com
8  PATTERSON BELKNAP WEBB & TYLER LLP
   1133 Avenue of the Americas
9  New York, New York 10036
   Telephone:  (212) 336-2000
10 Facsimile:  (212) 336-2222

11 Attorneys for Defendant
   THE HERSHEY COMPANY

12

13                    UNITED STATES DISTRICT COURT
                    NORTHERN DISTRICT OF CALIFORNIA

14

15 LEON KHASIN, on Behalf of Himself and        CASE NO.  12-cv-01862 EJD
16 All Others Similarly Situated,
                                                **NOTICE OF MOTION AND MOTION
17              Plaintiff,                       FOR SUMMARY JUDGMENT;
                                                MEMORANDUM OF POINTS AND
                                                AUTHORITIES IN SUPPORT THEREOF**
18      v.
                                                Judge: Honorable Edward J. Davila
19                                              Date: November 7, 2014
   THE HERSHEY COMPANY,                         Time: 9:00am
20                                              Room: Courtroom 4, 5th Floor
                Defendant.                      Trial Date: No date set
21

22

23

24

25

26

27

28

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE THAT on November 7, 2014 at 9:00 a.m. or as soon thereafter as counsel may be heard, in Courtroom 4, 5th Floor of the United States District Court, Northern District of California, San Jose Division, located at 280 South 1st Street, San Jose, CA 95113, before The Honorable Edward J. Davila, Defendant The Hershey Company ("Hershey") will and hereby does move this Court for summary judgment on claims pled in the Amended Class Action and Representative Action Complaint ("AC") of Plaintiff Leon Khasin ("Khasin") [Dkt. No. 27].

Hershey brings this motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 and on the following grounds, which are discussed more fully in the attached Memorandum of Points and Authorities:  The undisputed evidence demonstrates that Hershey's "natural source of flavanol antioxidants" statements are true, they are not misleading, and they do not lead to higher prices for consumers.  Hershey is therefore entitled to summary judgment as a matter of law on Khasin's sole remaining claim under California's Unfair Competition Law.  In addition, because Khasin has no plans to purchase Hershey's products again, he has no standing to seek injunctive relief.

This motion is based on this Notice of Motion, the Memorandum of Points and Authorities attached hereto, the declarations and exhibits submitted herewith, any reply papers submitted in support of this motion, oral argument of counsel, the complete files and records in this matter, and such additional matters as the Court may consider.

1    DATED: July 11, 2014                    PATTERSON BELKNAP WEBB & TYLER LLP

2                                            By: _____ */s/ Steven A. Zalesin*_____
                                                  Steven A. Zalesin (admitted pro hac vice)
3                                                 Travis J. Tu (admitted pro hac vice)
                                                  Michelle W. Cohen (admitted pro hac vice)
4                                                 1133 Avenue of the Americas
                                                  New York, New York 10036
5                                                 Telephone:  (212) 336-2000

6                                                 John W. Fowler (Bar No. 037463)
                                                  BERGESON LLP
7                                                 303 Almaden Boulevard, Suite 500
                                                  San Jose, CA 95110-2712
8                                                 Telephone:  (408) 291-6200
                                                  Facsimile:   (408) 297-6000
9
                                                  *Attorneys for Defendant*
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

STATEMENT OF THE ISSUES TO BE DECIDED .................................................... 1

PRELIMINARY STATEMENT ........................................................................................ 2

BACKGROUND ................................................................................................................ 4

    A.    Khasin's Allegations ................................................................................... 4

    B.    Khasin's Total Failure of Proof ................................................................. 5

ARGUMENT ...................................................................................................................... 7

I.    KHASIN CANNOT PROVE THAT HERSHEY'S LABEL STATEMENTS ARE FALSE OR MISLEADING ...................................................................... 7

    A.    Hershey's Flavanol Antioxidant Statements Are True ........................... 8

    B.    Khasin Has No Evidence that Consumers Are Likely to Be Misled ..... 9

    C.    Hershey Is Entitled to Summary Judgment ........................................... 10

II.    KHASIN CANNOT PROVE AN INJURY ...................................................... 11

    A.    Khasin Was Not Injured by Hershey's Truthful Statements ................. 11

    B.    Khasin Did Not Pay a "Price Premium" ............................................... 12

    C.    Khasin Has No Viable Claim for Injunctive Relief .............................. 16

III.    KHASIN CANNOT PROCEED UNDER THE UCL'S "UNLAWFUL" PRONG ......... 17

    A.    Khasin Is Required to Prove Deception and Injury, Even Under the UCL's "Unlawful" Prong ........................................................................ 17

    B.    Hershey's Statements Are Not Unlawful ............................................... 18

    C.    The First Amendment Protects Hershey's Truthful Statements ........... 21

CONCLUSION ................................................................................................................. 22

NOTICE OF MOTION AND MEMO OF LAW IN
SUPPORT OF DEF. MSJ
CV12-01862 EJD

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*44 Liquormart, Inc. v. Rhode Island*,
   517 U.S. 484 (1996) ............................................................................... 2

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) ............................................................................... 7

*Apple, Inc. v. Samsung Elecs. Co.*,
   No. 11-CV-01846, 2014 U.S. Dist. LEXIS 29721 (N.D. Cal. Mar. 6, 2014) ...................... 16

*Arizona Cartridge Remanufacturers Ass'n v. Lexmark Int'l Inc.*,
   421 F.3d 981 (9th Cir. 2005) .................................................................. 11

*Becker v. Skype Inc.*,
   No. 5:12-CV-06477, 2014 U.S. Dist. LEXIS 17583 (N.D. Cal. Feb. 10, 2014) ................... 17

*Brazil v. Dole Food Co.*,
   No. 12-CV-01831, 2013 U.S. Dist. LEXIS 136921 (N.D. Cal. Sept. 23, 2013) .................. 18

*Carrea v. Dreyer's Grand Ice Cream, Inc.*,
   475 F. App'x 113 (9th Cir. 2012) ............................................................. 20

*Cel-Tech Commc'n, Inc. v. Los Angeles Cellular Telephone Co.*,
   20 Cal. 4th 163 (1999) ......................................................................... 2

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) ............................................................................. 7

*Cent. Hudson Gas & Elec. Corp. v. Public Serv. Comm'n.*,
   447 U.S. 557 (1980) ......................................................................... 21, 22

*CFM Communs., LLC v. Mitts Telecasting Co.*,
   424 F. Supp. 2d 1229 (E.D. Cal. 2005) ....................................................... 19

*Colgan v. Leatherman Tool Grp., Inc.*,
   135 Cal. App. 4th 663 (2006) ................................................................. 13

*Dietary Supplemental Coal., Inc. v. Sullivan*,
   978 F.2d 560 (9th Cir. 1992) ................................................................. 20

*Edenfield v. Fane*,
   507 U.S. 761 (1993) ........................................................................... 21

*Garrison v. Whole Foods Mkt. Grp., Inc.*,
   No. 13-cv-05222, 2014 U.S. Dist. LEXIS 75271 (N.D. Cal. June 2, 2014) ..................... 17

*Gustavson v. Mars, Inc.*,
   No.: 13-CV-04537, 2014 U.S. Dist. LEXIS 80139 (N.D. Cal. June 10, 2014) ................... 20

*Haskell v. Time, Inc.*,
   965 F. Supp. 1398 (E.D. Cal. 1997) .......................................................... 10

*Hinojos v. Koh's Corp.*,
  718 F.3d 1098 (9th Cir. 2013) ........................................................................... 11

*Holistic Candlers & Consumers Ass'n v. FDA*,
  664 F.3d 940 (D.C. Cir. 2012) ........................................................................... 20

*In re Facebook, Inc., PPC Adver. Litig.*,
  282 F.R.D. 446 (N.D. Cal. 2012) ....................................................................... 13

*In re Google AdWords Litig.*,
  No. 08-CV-3369, 2012 U.S. Dist. LEXIS 1216 (N.D. Cal. Jan. 5, 2012) ............. 11

*In re Late Fee and Overlimit Fee Litig.*,
  741 F.3d 1022 (9th Cir. 2014) ........................................................................... 19

*In re Vioxx Class Cases*,
  180 Cal. App. 4th 116 (2009) ............................................................................. 12

*Jones v. Conagra Foods, Inc.*,
  No. 12-CV-01633, 2014 U.S. Dist. LEXIS 81292, *75 (N.D. Cal. June 13, 2014) .............. 14

*Kane v. Chobani, Inc.*,
  No. 12-CV-02425, 2013 U.S. Dist. LEXIS 134385 (N.D. Cal. Sept. 19, 2013) ................... 18

*Kasky v. Nike, Inc.*,
  27 Cal. 4th 939 (2002) ....................................................................................... 21

*Khasin v. Hershey Co.*,
  No. 5:12-CV-01862, 2014 U.S. Dist. LEXIS 62070 (N.D. Cal. May 5, 2014) .............. passim

*Korea Supply Co. v. Lockheed Martin Corp.*,
  29 Cal. 4th 1134 (2003) ..................................................................................... 12

*Kwan Software Eng'g v. Foray Tech.*,
  No. 12-CV-03762, 2014 U.S. Dist. LEXIS 17376 (N.D. Cal. Feb. 11, 2014) ...................... 11

*Kwikset Corp. v. Superior Ct.*,
  51 Cal. 4th 310 (2011) ................................................................... 7, 11,17, 18

*L.A. v. Lyons*,
  461 U.S. 95 (1983) ............................................................................................ 16

*Lavie v. Proctor & Gamble Co.*,
  105 Cal. App. 4th 496 (2003) ............................................................................. 10

*Monsanto Co. v. Geertson Seed Farms*,
  561 U.S. 139 (2010) .......................................................................................... 16

*Nike v. Kasky*,
  539 U.S. 654 (2003) .......................................................................................... 21

*Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*,
  210 F.3d 1099 (9th Cir. 2000) ...................................................................... 7, 14

*Ogden v. Bumble Bee Foods*,
   No.: 5:12-CV-01828, 2014 U.S. Dist. LEXIS 565 (N.D. Cal. Jan. 2, 2014) ..................... 9, 14

*Pearson v. Shalala*,
   130 F. Supp. 2d 105 (D.D.C. 2001) ................................................................... 21, 22

*Pearson v. Shalala*,
   164 F.3d 650 (D.C. Cir. 1999) ................................................................................. 21

*Pearson v. Thompson*,
   141 F. Supp. 2d 105 (D.D.C. 2001) ......................................................................... 21

*People ex rel. Lockyer v. Brar*,
   115 Cal. App. 4th 1315 (2004) ................................................................................. 18

*Perez v. Nidek Co.*,
   711 F.3d 1109 (9th Cir. 2013) ................................................................................. 16

*Ries v. Arizona Beverages*,
   No. 10-01139, 2013 U.S. Dist. LEXIS 46013 (N.D. Cal. Mar. 28, 2013)................. 10, 13, 14

*Rivas v. Rail Delivery Serv.*,
   423 F.3d 1079 (9th Cir. 2005) ................................................................................. 16

*Rubin v. Coors Brewing Co.*,
   514 U.S. 476 (1995) ............................................................................................... 21

*Stanley v. Bayer Healthcare LLC*,
   No. 11cv862, 2012 U.S. Dist. LEXIS 47895 (S.D. Cal. Apr. 3, 2012) ........................... 7

*Summit Tech. v. High-Line Med. Instruments, Co.*,
   933 F. Supp. 918 (C.D. Cal. 1996) ........................................................................... 20

*Swearingen v. Amazon Preservation Partners*,
   No. 13-cv-04402, 2014 U.S. Dist. LEXIS 36830 (N.D. Cal. Mar. 18, 2014)................... 18

*Thompson v. W. States Med. Ctr.*,
   535 U.S. 357 (2002) ........................................................................................... 21, 22

*Trazo v. Nestlé USA, Inc.*,
   No. 5:12-CV-2272, 2013 U.S. Dist. LEXIS 113534 (N.D. Cal. Aug. 9, 2013) .............. 19, 20

*Van Koenig v. Snapple Bev. Corp.*,
   713 F. Supp. 2d 1066 (E.D. Cal. 2010) ..................................................................... 12

*Victor v. R.C. Bigelow, Inc.*,
   No. 13-cv-02976, 2014 U.S. Dist. LEXIS 34550 (N.D. Cal. Mar. 14, 2014)................... 20

*Virginia Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc.*,
   425 U.S. 748 (1976) ............................................................................................... 22

*Wang v. OCZ Tech. Grp., Inc.*,
   276 F.R.D. 618 (N.D. Cal. 2011) ............................................................................. 16

1    *Washington Legal Foundation v. Henney*,
      56 F. Supp. 2d 81 (D.D.C. 1999) ......................................................................... 21

2    *Werdebaugh v. Blue Diamond Growers*,
      No. 12-CV-2724, 2014 U.S. Dist. LEXIS 71575 (N.D. Cal. May 23, 2014) ......................... 16

3

4    *Westinghouse Elec. Corp. v. General Circuit Breaker & Elec. Supply*,
      106 F. 3d 894 (9th Cir. 1997)................................................................................. 16

5    *Williams v. Gerber Prods. Co.*,
      552 F.3d 934 (9th Cir. 2008).................................................................................... 9

6

7    *Wilson v. Frito-Lay N. Am.*,
      961 F. Supp. 2d 1134 (N.D. Cal. 2013) ................................................................... 18

8                           STATUTES

9    Cal. Bus. & Prof. Code § 17200, *et seq*. ...................................................................... 4

10    Cal. Bus. & Prof. Code § 17500, *et seq*. ...................................................................... 4

11    Cal. Civ. Code § 1750, *et seq*.................................................................................... 4

12    Food Drug and Cosmetic Act ("FDCA") .................................................................. 1, 4, 19, 20

13                     OTHER AUTHORITIES

14    21 C.F.R. § 10.85(k) ............................................................................................ 20

15    21 C.F.R. § 101.13 (b)(1) ...................................................................................... 19

16    21 C.F.R. § 101.54(g) .......................................................................................... 19

17    59 Fed. Reg. 378, 384 (1994)................................................................................. 19

18    62 Fed. Reg. 49868 (1997)..................................................................................... 19

19

20

21

22

23

24

25

26

27

28

## STATEMENT OF THE ISSUES TO BE DECIDED

1.      Is The Hershey Company ("Hershey") entitled to summary judgment on Plaintiff Leon Khasin's ("Khasin") remaining UCL claim when he has proffered no evidence that the "natural source of flavanol antioxidants" statements on Hershey's Special Dark chocolate and cocoa products are false or misleading to consumers?

2.      Is Hershey entitled to summary judgment on Khasin's UCL claim given that Khasin suffered no injury as a result of Hershey's truthful "natural source of flavanol antioxidants" statements?

3.      Is Hershey entitled to summary judgment on Khasin's claim for restitution when Khasin has proffered no evidence that he paid a price premium attributable to Hershey's "natural source of flavanol antioxidants" statements?

4.      Is Hershey entitled to summary judgment on Khasin's claim for injunctive relief when Khasin has no evidence of irreparable injury, has no real or concrete plans to purchase Hershey's products in the future, and is incapable of being deceived by Hershey's "natural source of flavanol antioxidants" in light of his current knowledge and purported understanding of the facts?

5.      Is Khasin's UCL claim expressly preempted by the federal Food Drug and Cosmetic Act "(FDCA)" when Hershey's "natural source of flavanol antioxidants" statements are not unlawful under federal law?

6.      Are Hershey's truthful label statements about the flavanol antioxidants naturally found in its dark chocolate and cocoa products protected by the First Amendment?

Defendant The Hershey Company ("Hershey") respectfully submits this memorandum of law in support of its motion for summary judgment dismissing the one claim of Plaintiff Leon Khasin that remains in this case.

## PRELIMINARY STATEMENT

This "false labeling" case is one of many pending in this District, in which a consortium of plaintiffs' lawyers seeks to prove that manufacturers have committed technical violations of U.S. Food and Drug Administration ("FDA") food labeling regulations and, by extension, California law.  This Court has already granted partial summary judgment dismissing all but one of Khasin's claims, on the grounds that he could not prove any reliance or resulting injury as required under California's consumer protection statutes.  *See Khasin v. Hershey Co.*, No. 5:12-CV-01862, 2014 U.S. Dist. LEXIS 62070 (N.D. Cal. May 5, 2014).  All that remains is Khasin's claim under California's Unfair Competition Law ("UCL") that the statement "natural source of flavanol antioxidants" on Hershey's Special Dark chocolate and cocoa products is false and misleading.  Hershey did not include this claim in its prior motion for partial summary judgment, recognizing at the time that the claim raised a potential issue of fact that might require a trial to resolve.

As it turns out, however, Khasin has utterly failed to marshal any evidence that Hershey's "natural source of flavanol antioxidants" statements are false or misleading to consumers, and Hershey is now entitled to summary judgment on this claim as well.  Khasin took extensive discovery of Hershey with respect to this claim, culling through tens of thousands of company documents and conducting multiple days' worth of depositions of Hershey witnesses.  This effort bore no fruit for Khasin:  the evidence from Hershey's files unequivocally showed that the disputed statements are neither false nor misleading—they are true.

Pursuant to the Court's Scheduling Order, Hershey then provided Khasin with reports from multiple expert witnesses that demonstrate, inter alia, that (1) the Hershey products at issue are, in fact, natural sources of flavanol antioxidants; (2) flavanol antioxidants are associated with a wide range of positive effects on nutrition and health; (3) consumers are no more likely to buy Hershey's dark chocolate and cocoa products—and no more willing to pay a higher price for them—based upon the inclusion of flavanol antioxidant statements on the product label; and (4) in fact, Hershey has never

1  charged one penny more for its products as a result of the addition of such a labeling statement.

2  Khasin's response to this comprehensive showing was to ignore it.  The Court-ordered deadline for

3  expert rebuttal came and went, and Khasin did not provide a single rebuttal report in support of his

4  claims.

5  As a result of Khasin's complete failure of proof, there is no live issue to be tried.  The evidence

6  is uncontroverted that Hershey's "natural source of flavanol antioxidants" statements are true, they are

7  not misleading, and they do not lead to higher prices for consumers.  Hershey is therefore entitled to

8  summary judgment as to the one remnant of Khasin's case that remains.

9  Khasin will no doubt argue that he is somehow exempt from the rules of evidence, and can

10  prevail simply by showing that FDA regulations do not authorize Hershey's statements.  According to

11  Khasin, this purported regulatory "violation" entitles him to relief under the "unlawful" prong of

12  California's UCL.  But as numerous courts—including this Court in its prior summary judgment ruling

13  in this case—have held, a UCL plaintiff cannot recover merely by pointing to a technical violation of

14  FDA labeling requirements.  Rather, Khasin must prove that he was actually deceived by the disputed

15  labels, and was injured as a result.  Khasin cannot meet this burden.  The "natural source of flavanol

16  antioxidants" statements are indisputably true, and they caused Khasin no injury.  Khasin's UCL claim

17  is therefore defective as a matter of law.

18  The same is true of Khasin's demand for injunctive relief.  By his own admission, Khasin has no

19  plans to purchase Hershey's dark chocolate or cocoa products again.  He thus has no standing to seek an

20  injunction against Hershey's labels.  And even if Khasin could overcome these insurmountable barriers

21  and could show that Hershey's statements violate FDA regulations and the UCL (which he cannot), his

22  claims would still be barred.  Hershey's truthful labeling statements are protected commercial speech,

23  and the First Amendment squarely precludes the imposition of liability for the conduct Khasin attacks

24  here:  providing consumers with the true facts about Hershey products.  Hershey is entitled to summary

25  judgment dismissing what is left of Khasin's case, once and for all, with prejudice.

26

27

28

**BACKGROUND**

**A.      Khasin's Allegations**

Khasin commenced this action on April 23, 2012, and filed an amended complaint on July 23, 2012 ("AC" or Amended Complaint).  The Amended Complaint alleged that Hershey's website, advertising and product labels contain statements that purportedly violate the federal Food Drug and Cosmetic Act ("FDCA") and provisions of California law that incorporate the FDCA and FDA's implementing regulations by reference into the law of the state.  Specifically, Khasin asserted claims under California's UCL, *see* Cal. Bus. & Prof. Code § 17200, *et seq.*, False Advertising Law ("FAL"), *see* Cal. Bus. & Prof. Code § 17500, *et seq.*, the Consumer Legal Remedies Act ("CLRA"), *see* Cal. Civ. Code § 1750, *et seq.*, and for unjust enrichment.

On May 5, 2014, the Court granted summary judgment to Hershey on all but one of Khasin's claims.  *See Khasin v. Hershey Co.*, 2014 U.S. Dist. LEXIS 62070 (N.D. Cal. May 5, 2014).  Based upon Khasin's sworn admissions at deposition, the Court determined that Khasin did not rely upon— indeed, for the most part, he had never even been exposed to—the vast majority of the labeling and advertising statements he had challenged.  *See Khasin*, 2014 U.S. Dist. LEXIS 62070 at *12.  The only claim that survived dismissal is the one on which Hershey did not seek summary judgment—Khasin's UCL claim concerning the "natural source of flavanol antioxidants" statements, which appear in small type as part of a "seal" on the labels of certain Hershey dark chocolate and cocoa products:



Khasin contends that Hershey's statements violate the UCL because the phrase "natural source" is purportedly a "nutrient content claim" that, according to FDA regulations, cannot be used to describe antioxidants such as flavanols for which FDA has not yet established a Recommended Daily Intake ("RDI").  (AC ¶¶ 4, 53-58, 65, 66).  He further alleges that Hershey charges a "price premium" for products that include a flavanol antioxidants statement.  Khasin seeks restitution under the UCL to

recover the amount of the "premium" he supposedly paid.  (AC ¶¶ 178, 222.)  He also seeks injunctive relief.  (AC ¶ 222.)

**B.    Khasin's Total Failure of Proof**

In August 2013—after Khasin admitted under oath that he had not relied upon the vast majority of the labeling and advertising statements he had challenged—the parties agreed to focus discovery exclusively on the issue of Hershey's "natural source of flavanol antioxidants" statements.  (Dkt. No. 92.)  Though directed to this one subject, the ensuing discovery was extensive, and covered almost every aspect of Hershey's dark chocolate and cocoa businesses over a period of nine years.  Hershey produced more than 140,000 documents (nearly 750,000 pages) collected from the hard-copy and electronic files of more than 20 current and former employees, and from several shared document repositories.  (Tu Decl. at ¶ 4.)[1]  Hershey also produced five fact witnesses for deposition—some in their individual capacities, some as corporate representatives, and some as to both.  (Tu Decl. at ¶¶ 5-10.)  Fact discovery closed on December 20, 2013.  (Tu Decl. at ¶ 10.)

On January 10, 2014, the deadline set by the Court's Amended Scheduling Order, Hershey served Khasin with three expert reports.  (Tu Decl. at ¶ 11.)  Dr. Frank M. Sacks, a professor at both the Harvard Medical School and Harvard School of Public Health, reviewed the abundant scientific literature concerning the flavanol antioxidant statements on Hershey's dark chocolate and cocoa labels, and determined that the statements are true and provide meaningful information to consumers.  (Sacks Decl., Ex. A.)[2]  Dr. David Stewart, an authority on consumer surveys who has previously served as an expert witness for the Federal Trade Commission, described the results of a study he had designed and executed that showed that the statements have no effect on the purchase motivation or price sensitivity of California consumers.  (Stewart Decl., Ex. A.)[3]  And Dr. Gregory Bell, a respected economist, showed that the prices that Hershey charges for its dark chocolate and cocoa products are unaffected by

---

[1] Copies of all cited correspondence and transcripts are attached to the accompanying declaration of Travis J. Tu, Esq. (hereinafter "Tu Decl.").

[2] A copy of Dr. Sacks's report is attached to the accompanying declaration of Frank M. Sacks, M.D. (hereinafter "Sacks Decl.").

[3] A copy of Dr. Stewart's report is attached to the accompanying declaration of David Stewart, Ph.D. (hereinafter "Stewart Decl.").

the presence or absence of a flavanol antioxidant statement on the product labels.  (Bell Decl., Ex. A.)[4]

For his part, Khasin served three expert reports directed primarily to the issue of class certification, not the merits.  Dr. Oral Capps, Jr. listed myriad approaches that *could* be used to calculate restitution in a UCL case such as this, but did not actually perform any such calculation.  (Bell Decl., Ex. B.)  Dr. Julie Caswell opined—without the benefit of a consumer survey or other research—that Hershey's flavanol antioxidant statements are material to all consumers' purchasing decisions.  (Stewart Decl., Ex. B.)  The only expert for Khasin who directly addressed the merits was Dr. F. Edward Scarborough, who offered the inadmissible *legal* opinion that the statements are "nutrient content claims" within the meaning of FDA regulations.  None of Khasin's expert reports so much as touched upon the core allegation that lies at the heart of his complaint:  the claim that the "natural source of flavanol antioxidants" statements are false or misleading to consumers.  Moreover, despite his attempt to lay the groundwork for class certification through his expert reports, Khasin never actually moved to certify a class.  Consequently, this case remains a suit by Khasin solely in his individual capacity.

On April 11, 2014, the Court-ordered deadline for service of rebuttal expert reports (Dkt. No. 126), Khasin failed to identify any rebuttal experts, to submit any rebuttal reports, or to counter in any way the opinions of Hershey's experts.  (Tu Decl., Ex. B.)[5]  Moreover, when offered potential deposition dates for Hershey's experts, Khasin demurred.  In an email dated May 2, 2014, Khasin's counsel informed Hershey that "I am not deposing your experts."  (Tu Decl., Ex. C.)

As a result of Khasin's failure to rebut Hershey's showing, the core facts that bear upon his attack on Hershey's "natural source of flavanol antioxidant" statements are no longer in dispute.  The statements are true.  They do not mislead consumers.  They do not lead to higher prices.  In other words, the disputed statements cannot—and do not—harm consumers, including Mr. Khasin.  Hershey is therefore entitled to summary judgment on Khasin's one remaining UCL claim, and dismissal of this action in its entirety.

---

[4] A copy of Dr. Bell's report is attached to the accompanying declaration of Gregory K. Bell, Ph.D. (hereinafter "Bell Decl.").

[5] Hershey served two rebuttal reports: Dr. Bell rebutted the reports of both Dr. Capps and Dr. Caswell, and Dr. Stewart also rebutted Dr. Caswell's report.  (Tu Decl. at ¶ 11; Bell Decl., Ex. C; Stewart Decl., Ex. C.)

**ARGUMENT**

Summary judgment is appropriate unless the non-moving party can point to "specific facts" in the record "showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 252 (1986). Rather, if the non-moving party fails to offer "concrete evidence from which a reasonable juror could return a verdict in [its] favor," summary judgment should be granted. *Id.at 256; see also Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc*., 210 F.3d 1099, 1106 (9th Cir. 2000) (same).

As this Court has already determined, Khasin's case is grounded in allegations that Hershey's product labels are false and misleading. *See Khasin v. Hershey Co*., No. 5:12-CV-01862, 2014 U.S. Dist. LEXIS 62070, *11 (N.D. Cal. May 5, 2014) (Davila, J.). To prevail, Khasin must therefore prove that: (1) Hershey's flavanol antioxidant statements are "false or misleading" to reasonable consumers, *see Stanley v. Bayer Healthcare LLC*, No. 11cv862, 2012 U.S. Dist. LEXIS 47895, *8-9 (S.D. Cal. Apr. 3, 2012); and (2) he suffered "economic injury" as a result, s*ee Kwikset Corp. v. Superior Ct*., 51 Cal. 4th 310, 323 (2011).

Despite ample opportunity, Khasin has adduced no evidence from which a court or jury could find in his favor on either element. The record firmly establishes that Hershey's dark chocolate and cocoa products are, in fact, "natural source(s) of flavanol antioxidants." Khasin has failed to come forward with any evidence that the statements are false, or that consumers are likely to be misled by them. Hershey is entitled to summary judgment as a matter of law.

## I.   KHASIN CANNOT PROVE THAT HERSHEY'S LABEL STATEMENTS ARE FALSE OR MISLEADING

The one claim that remains in this case fails for one basic reason: Hershey's "natural source of flavanol antioxidants" statements are true. It is an unassailable scientific fact that flavanol antioxidants are naturally present in dark chocolate and cocoa, and these compounds are associated with a wide range of nutritional benefits. Khasin has come forward with no evidence to the contrary. Nor has he proffered any proof that there is anything deceptive or misleading about Hershey's statements. Summary judgment should be granted for this reason alone.

### A.     Hershey's Flavanol Antioxidant Statements Are True

Khasin has never seriously disputed that Hershey's dark chocolate and cocoa products are natural sources of flavanol antioxidants.  Khasin confirmed this under oath:

> Q:     Do you think that the statements regarding antioxidant[s] . . . on the dark chocolate products are false?
>
> A:     No, I do not.

(Tu Decl., Ex. A (hereinafter "Khasin Dep. Tr.") at 202:4-10); *see also id.* at 213:11-14 (same with respect to cocoa).

Notwithstanding Khasin's admissions, Hershey proffered the testimony of an expert witness, Dr. Frank Sacks, that establishes without a doubt that Hershey's flavanol antioxidant statements are true and provide meaningful information to consumers.  Dr. Sacks's credentials are beyond reproach.  He is a Professor of Cardiovascular Disease Prevention at the Harvard School of Public Health, a Professor of Medicine at Harvard Medical School, and a Senior Physician at Brigham and Women's Hospital.  A leading authority on the relationship between nutrition and health, Dr. Sacks has published more than 200 relevant articles in peer-reviewed journals.  He recently served as an expert witness for the Federal Trade Commission in a landmark case involving advertising of beverages and dietary supplements. [6] (Sacks Decl., Ex. A at ¶¶ 7, 16, 24.)

Dr. Sacks conducted an extensive review of the published literature on cocoa and dark chocolate.  On the basis of this vast body of scientific research, Dr. Sacks concluded that (1) Hershey's "natural source of flavanol antioxidants" statements "are accurate"; (2) the "amounts of flavanols in [Hershey's] products are meaningful, especially if one compares them to [the] flavanol content in other common foods"; and (3) these flavanols have "demonstrated anti-oxidant effects."  (*Id.* at ¶¶ 26-27.)  In other words, Dr. Sacks determined that the challenged label statements are unequivocally true. [7]

---

[6] As noted above, Hershey timely provided Khasin with reports from three experts, including Dr. Sacks, during the course of discovery.  In connection with this motion, Hershey is submitting declarations from its experts that attach these reports and attest to their accuracy.  The report of Hershey's expert economist, Dr. Gregory Bell, contains highly confidential trade secret information and is being submitted under seal.

[7] The Amended Complaint alleged that the processing steps used to manufacturer Hershey's dark chocolate and cocoa theoretically may "eliminat[e]" their flavanol content.  (AC ¶ 66.)  Khasin produced no product testing to support this allegation.  By contrast, Hershey provided Khasin with internal testing of its dark chocolate and cocoa products.  These tests, which are summarized in the accompanying declaration of Dr. Mark Payne, demonstrate that Hershey's dark chocolate and cocoa products, as

Labels for Hershey's products do not claim that flavanol antioxidants are "healthy" or associated with any particular health benefits. However, to the extent that a consumer might infer such benefits, Dr. Sacks demonstrated that those messages are true as well. As Dr. Sacks explained, flavanols "participate in many biological processes that protect" the body against "damage that can be caused by excessive oxidation," and this makes them especially "healthful or good" to have in the diet. (*Id.* at ¶¶ 48, 57.) In fact, there is now a substantial body of scientific evidence—including more than 900 published articles—that shows that flavanols are associated with "a wide range of putative health benefits," including improvement or reduced risk in terms of endothelial function, blood pressure, cholesterol and lipid risk factors, platelet function, blood clotting, coronary heart disease, stroke, insulin resistance, and cognition. (*Id.* at ¶¶ 64, 67-84.)

Khasin proffered no rebuttal to Dr. Sacks's opinions. As detailed above, Hershey served Dr. Sacks's report on January 10, 2014, the deadline set by the Court for disclosure of affirmative expert reports. (Tu Decl. at ¶ 11). Khasin identified no rebuttal expert to Dr. Sacks and served no rebuttal expert reports. (Tu Decl., Ex. B.) Hershey then offered to make Dr. Sacks available for deposition, but Khasin declined that opportunity. (Tu Decl., Ex. C.) Accordingly, it is undisputed that (1) the "natural source of flavanol antioxidants" statements are true; and (2) to the extent that consumers understand these statements to mean that flavanols are beneficial, that message is true as well.

## B. Khasin Has No Evidence that Consumers Are Likely to Be Misled

Under California law, a literally truthful statement can nonetheless violate the UCL if it is likely to mislead consumers. *See Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008). Whether a statement is likely to mislead, however, is not determined by the plaintiff's personal reaction. Rather, it is judged by the "reasonable consumer" test. *See Ogden v. Bumble Bee Foods*, No.: 5:12-CV-01828, 2014 U.S. Dist. LEXIS 565, *38-39 (N.D. Cal. Jan. 2, 2014) (the "reasonable consumer" test is a distinct requirement, separate from the individual plaintiff's reliance).

---

formulated and sold to the public, retain flavanol antioxidants. *See* Declaration of Mark Payne. Moreover, based upon his independent review of Hershey's testing, Dr. Sacks opined that Hershey's products deliver flavanols in amounts fully "consistent with the [scientific] literature on flavanol content of cocoa and dark chocolate" generally. (Sacks Decl., Ex. A at ¶¶ 38-39.)

NOTICE OF MOTION AND MEMO OF LAW IN
SUPPORT OF DEF. MSJ
CV12-01862 EJD

"Under the reasonable consumer standard, [a] plaintiff is required to show not simply that the defendants' [statements] could mislead the public, but that they were likely to mislead the public." *Haskell v. Time, Inc*., 965 F. Supp. 1398, 1406-07 (E.D. Cal. 1997). This "implies more than a mere possibility that the [statement] might conceivably be misunderstood by some few consumers." *Lavie v. Proctor & Gamble Co*., 105 Cal. App. 4th 496, 508 (2003). Rather, it must be "probable that a significant portion of the consuming public . . . could be misled." *Id*. Thus, to prevail, a plaintiff must prove "by extrinsic evidence, such as consumer survey evidence, that the challenged statements tend to mislead consumers." *Ries v. Arizona Beverages*, No. 10-01139, 2013 U.S. Dist. LEXIS 46013, *20 (N.D. Cal. Mar. 28, 2013); *see Haskell*, 965 F. Supp. at 1407 ("anecdotal evidence alone is insufficient to prove that the public is likely to be misled").

Khasin submitted no evidence that Hershey's "natural source of flavanol antioxidants" statements are likely to mislead reasonable consumers. The Amended Complaint alleges that health-conscious consumers could misinterpret Hershey's labeling. (*See, e.g.*, AC ¶ 236.) But Khasin proffered no consumer survey or other evidence to support those allegations. Indeed, Khasin failed to prove that any consumer, let alone a significant portion of consumers, has been misled.

### C.   Hershey Is Entitled to Summary Judgment

Khasin's complete failure of proof on the central issue of whether the flavanol antioxidant statements are false or misleading makes this case indistinguishable from *Ries v. Arizona Beverages*, 2013 U.S. Dist. LEXIS at *20. In *Ries*, the consumer plaintiffs alleged that "All Natural" statements on labels for Arizona Iced Tea were false and misleading in violation of California's UCL. *Id*. Like Khasin, the *Ries* plaintiffs were afforded extensive discovery, but failed to develop evidence in support of their claims. Moreover, the defendant proffered an expert who demonstrated that the disputed "All Natural" statements were true, which the plaintiffs failed to rebut. *Id*. at *13-14.

Judge Seeborg held that the plaintiffs' claims were unfit to be tried. As the Court explained, "[i]n the face of a motion for summary judgment, rhetoric is no substitute for evidence." *Id*. at *15. Rather, to get to trial, a UCL plaintiff must have evidence that the defendant's statements are false or "extrinsic evidence, such as a consumer survey," that proves that deception is likely. *Id*. at *20. Because there was no such evidence, the Court granted summary judgment on the plaintiffs' UCL claim.

*Id*. at \*24. The outcome can be no different here, and Hershey is entitled to summary judgment as a matter of law. *See Arizona Cartridge Remanufacturers Ass'n v. Lexmark Int'l Inc.*, 421 F.3d 981, 988 (9th Cir. 2005) (affirming summary judgment where plaintiff failed to prove advertising was false or misleading); *Kwan Software Eng'g v. Foray Tech.*, No. 12-CV-03762, 2014 U.S. Dist. LEXIS 17376, \*17, \*27 (N.D. Cal. Feb. 11, 2014) (same).

## II.   KHASIN CANNOT PROVE AN INJURY

Hershey is also entitled to summary judgment because Khasin has no evidence that he was injured as a result of the challenged statements. Without proof of injury, Khasin cannot maintain his UCL claim or carry his burden of proof on his claims for restitution or injunctive relief.

### A.   Khasin Was Not Injured by Hershey's Truthful Statements

A UCL plaintiff must prove that he "lost money or property" as a result of the defendant's allegedly deceptive acts. *Kwikset*, 51 Cal. 4th at \*322. "The plain import of this" requirement is that a plaintiff "must demonstrate some form of economic injury." *Id*. at \*323. Khasin has suffered no such economic injury here because, as demonstrated above, the statements he challenges are true and are not misleading. As a matter of law and of common sense, such truthful statements cannot cause any cognizable injury.

The Ninth Circuit has explained that where, as here, a UCL claim is premised on allegedly false or misleading statements, the proof required to demonstrate economic injury and deception "are coextensive." *Hinojos v. Koh's Corp*., 718 F.3d 1098, 1104 n.5 (9th Cir. 2013). That is, the economic injury in such cases is the purchase of a product based on deception. *Kwikset*, 51 Cal. 4th at 326-27; *see also In re Google AdWords Litig*., No. 08-CV-3369, 2012 U.S. Dist. LEXIS 1216, \*30 (N.D. Cal. Jan. 5, 2012) (Davila, J.) ("The requirement of concrete injury is satisfied" when UCL plaintiffs "suffer an economic loss caused by the defendant, namely the purchase of defendant's product containing misrepresentations.").

Since Khasin was not deceived into buying Hershey's products, he was not injured by his purchases. In fact, Khasin acknowledged at deposition that, if the statements he challenges are true (a fact that is no longer in dispute), consumers actually benefit from this information:

Q:     Assuming that Hershey's Special Dark Chocolate Bars do contain flavanols and antioxidants, is that information that you, as a consumer, would want to know?

A:     Yes.

(Khasin Dep. Tr. at 173:18-22.)  An expert witness proffered by Khasin, Dr. Julie Caswell, gave similar testimony.[8]  Asked whether consumers are harmed by label statements that are true and not misleading, Dr. Caswell admitted they are not:

Q:     If the statements on Hershey's products about the flavanol antioxidants are not false and not misleading, then you would agree consumers are not harmed by them; correct?

A:     . . . Yes.  So if information is being presented to consumers that is both true and not misleading, then they are not harmed by that information.

(Tu Decl., Ex. D (hereinafter "Caswell Dep. Tr.")] at 169:19-171:9.)

In short, because Hershey's flavanol antioxidant statements are truthful, Khasin was not economically injured by his purchases—even if the statements played some role in his purchasing decision.  Without an economic injury, Khasin cannot maintain his UCL claim.

## B.     Khasin Did Not Pay a "Price Premium"

Khasin may argue that, even if he was not actually deceived by Hershey's statements, he was injured by them because they enabled Hershey to drive up the price of its dark chocolate and cocoa products.  But as with his claims of falsity and deception, Khasin has altogether failed to proffer any evidence in support of this theory.  In fact, the claim is baseless.  Hershey charges the same for its products irrespective of whether they bear a flavanol antioxidant statement or not.

It is well-established that a UCL plaintiff cannot recover "all money paid" for the defendant's products.[9]  *Van Koenig v. Snapple Bev. Corp.*, 713 F. Supp. 2d 1066, 1079 (E.D. Cal. 2010).  Monetary relief is limited to restitution, which is the "difference between what the plaintiff paid and the value of what the plaintiff received."  *In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 131 (2009).  A plaintiff

---

[8] Dr. Caswell is a professor at the University of Massachusetts Amherst who studies "agricultural economics."  As noted above, Dr. Caswell submitted a report in which she opined that Hershey's flavanol antioxidant labeling is material to consumers' purchasing decisions.  But Dr. Caswell offered no opinion on whether Hershey's labels are false or likely to mislead.

[9] The available remedies under the UCL are limited to restitution and injunctive relief.  *See Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1144 (2003).   "Plaintiffs may not receive damages, much less treble damages, or attorneys fees."  *Cel-Tech Commc'n, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal. 4th 163, 179 (1999).

1    thus must prove by "substantial evidence" that the products he purchased were objectively worth less

2    than what he paid.  *Colgan v. Leatherman Tool Grp., Inc*., 135 Cal. App. 4th 663, 700 (2006); *see also*

3    *In re Facebook, Inc., PPC Adver. Litig*., 282 F.R.D. 446, 461 (N.D. Cal. 2012) ("plaintiffs must be able

4    to prove . . . the difference" between what was "paid and the value of what the plaintiffs received"); *Ries*

5    at *23 (N.D. Cal. 2012) (restitution "must be based in evidence establishing the difference" between the

6    value of defendant's product with the disputed claims and "the value of a comparable [product] not

7    marketed or sold at a premium due to such claims.").

8         Khasin proffered no such evidence.  The closest he came was an expert report from Dr. Oral

9    Capps, a professor at Texas A&M University who has submitted nearly identical reports in more than a

10   dozen cases filed by Khasin's counsel. [10]  Dr. Capps stated that there are myriad ways in which he could

11   calculate damages or restitution in this case, but he did not actually employ any such method or perform

12   a damages calculation. [11]  (Bell Decl., Ex. B at ¶¶ 8-23.)

13        In particular, Dr. Capps noted that he would need to collect information "concerning the prices

14   of the products under question versus those from similar products without" flavanol antioxidant

15   statements on their labels.  (Bell Decl., Ex. B at ¶ 14.)  Dr. Capps did not actually do this work.  But

16   "[t]o illustrate" how it might be done, Dr. Capps noted that a bar of Trader Joe's dark chocolate costs

17   less per ounce than a bar of Hershey's dark chocolate, and that Ovaltine drink mix costs less than

18   Hershey's cocoa.  (*Id*. at ¶¶ 14.)  Assuming without any analysis or proof that those price differences

19   could be attributed to Hershey's flavanol antioxidant statements, Dr. Capps opined that calculating

20   restitution "is relatively easy." [12]   (*Id*. at ¶¶ 15.)

21

22   [10] A copy of Dr. Capps's report is attached as Exhibit B to the Bell Declaration.

23   [11] Hershey's expert economist, Dr. Gregory Bell, submitted a rebuttal to Dr. Capps's report in which he
     pointed out that it is difficult to meaningfully critique Dr. Capps's work because Dr. Capps did not
24   perform any actual analysis or endorse a particular method of calculation.  A copy of Dr. Bell's rebuttal
     report is attached as Exhibit C to the Bell Declaration.

25   [12] As Hershey's expert, Dr. Bell, explained in his rebuttal report, it is ridiculous to assume that the price
     differentials noted by Dr. Capps are attributable to the flavanol antioxidant statements.  Trader Joe's is a
26   discount grocer, so it is no surprise that its store brand chocolate bars are priced lower than Hershey's
     name brand products sold in retail stores.  Ovaltine, meanwhile, is completely different from Hershey's
27   cocoa:  Ovaltine is a fortified malt-based drink mix targeted to parents with small children, whereas
     Hershey's cocoa is a natural product most often used for cooking and baking.  (Bell Decl., Ex. D at ¶¶ 7-
28   8.)

Multiple courts in this District have now recognized that Dr. Capps's opinions are speculative and entitled to no weight.  For example, in *Ogden v. Bumble Bee*, Judge Koh disposed of the plaintiff's claim for restitution on summary judgment because Dr. Capps's theoretical opinion about how he might one day calculate damages "is not evidence."  *Ogden*, 2014 U.S. Dist. LEXIS at *53.  Similarly, in *Jones v. Conagra Foods, Inc*., Judge Breyer found that Dr. Capps's entire "approach" is "deeply flawed."  No. 12-CV-01633, 2014 U.S. Dist. LEXIS 81292, *75 (N.D. Cal. June 13, 2014).  As Judge Breyer explained, the mere fact that Dr. Capps identified products that costs less than the defendants' allegedly mislabeled products does not prove an entitlement to restitution because a court cannot "assume that the entire price difference between" two products "is attributable to the alleged misstatements."  *Id*. at *76.

Dr. Capps has not proven that Hershey's dark chocolate and cocoa products are actually worth less than what Khasin paid.  He has only speculated as to how this might be done.  Fact and expert discovery, however, are now closed.  Because Khasin has no evidence that he overpaid for Hershey's products, his claim for restitution cannot survive.  *See Ogden*, 2014 U.S. Dist. LEXIS at *54 (granting summary judgment in "the absence of substantial evidence to support an award of restitution"); *Ries*, 2014 U.S. Dist. LEXIS at *23-24 (same).

Moreover, even though Khasin bears the burden of proof on this issue, Hershey proffered two experts, Dr. Gregory Bell and Dr. David Stewart, who affirmatively disproved Khasin's allegation that he paid a price premium attributable to Hershey's statements.  Dr. Bell demonstrated that the "natural source of flavanol antioxidants" statements have no impact on the prices of Hershey products, and Dr. Stewart proved that these statements have no impact on consumers' subjective impressions of the products' value.  Khasin did not rebut this showing, further underscoring Hershey's entitlement to summary judgment.  *See Nissan Fire & Marine Ins. Cos., Inc*., 210 F.3d at 1106 (summary judgment is especially appropriate when the defendant has evidence "negating" an element of the plaintiff's claim).

Dr. Bell is a Harvard-trained economist with more than 20 years of experience in business economics.  (Bell Decl., Ex. A at ¶¶ 1-2.)  As Dr. Bell explains in his report, for a variety of reasons unique to the U.S. market for chocolate and confectionary products, Hershey's products are typically "line priced" with competitors' products, meaning that all products of a similar size are priced the same.

1   (*Id.* at ¶ 22.)  This explains why the prices for candy at store check-out counters are very often the same

2   across the entire shelf.  It also means that statements on a particular product label are unlikely to impact

3   the product's price.  (*Id.* at ¶ 7a.)

4         To test this hypothesis, Dr. Bell analyzed historical sales data to compare (1) the actual prices of

5   Hershey's dark chocolate and cocoa products before the flavanol antioxidant statements were added to

6   the products' labels versus the prices of the same products after the statements were added; and (2) the

7   prices of these products versus competing products that were never labeled with flavanol antioxidant

8   statements.  (*Id.* at ¶¶ 16-22.)  Dr. Bell concluded that this "empirical evidence shows there is no price

9   premium attributable" to Hershey's flavanol antioxidant labeling.  (*Id.* at ¶ 6d.)  In fact, products

10   "labeled with the [disputed] statements were priced equally . . . to similar products without" those

11   statements.  (*Id.* at ¶¶ 6d, 7.)

12         In addition, Hershey proffered a consumer survey conducted by Dr. Stewart, a Professor of

13   Marketing and Law at Loyola Marymount University and a former survey expert for the Federal Trade

14   Commission.  (Stewart Decl., Ex. A at ¶¶ 7, 12.)  Dr. Stewart surveyed 400 California consumers with

15   an interest in purchasing dark chocolate.  (*Id.* at ¶ 21.)  Half the respondents were shown the actual

16   Hershey's dark chocolate label, while the others were shown a version of the label with the "natural

17   source of flavanol antioxidants" statements removed.  Both groups were then questioned about their

18   interest in purchasing the product and their perception of its price.  Comparing the responses of the two

19   groups in this controlled experiment, Dr. Stewart found that Hershey's flavanol antioxidant statements

20   have "no impact on California consumers' interest in purchasing" the products or their "perceptions of

21   the [p]roducts' prices."  (*Id.* at ¶¶ 34, 42-45.)

22         Khasin did not rebut the opinions of Dr. Bell or Dr. Stewart.  Though he received both of their

23   affirmative expert reports by the January 10, 2014 deadline, Khasin identified no rebuttal experts and

24   served no rebuttal reports (and later declined Hershey's invitation to depose these experts).

25   Accordingly, the record is undisputed that there is no "price premium" attributable to the challenged

26   statements.  Khasin's claim for restitution therefore fails.

27

28

### C.      Khasin Has No Viable Claim for Injunctive Relief

Not only does Khasin have no proof of economic injury and no claim for restitution—he has no entitlement to injunctive relief.  An injunction is a remedy of last resort.  *See Westinghouse Elec. Corp. v. General Circuit Breaker & Elec. Supply*, 106 F. 3d 894, 903 (9th Cir. 1997); *Apple, Inc. v. Samsung Elecs. Co.*, No. 11-CV-01846, 2014 U.S. Dist. LEXIS 29721, *68 (N.D. Cal. Mar. 6, 2014) (an injunction is a "drastic and extraordinary remedy") (*quoting Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139 (2010)).  To justify such relief, a plaintiff must prove that an injunction is necessary to prevent "irreparable injury."  As demonstrated above, Khasin did not suffer any injury as a result of purchasing Hershey's truthfully labeled products.  He thus has no claim for injunctive relief.  *See Rivas v. Rail Delivery Serv.*, 423 F.3d 1079, 1082 (9th Cir. 2005) (plaintiffs not entitled to an injunction where "the regulatory violations for which they sought injunctive relief caused them no injury").

Moreover, an injunction is a prospective remedy.  Even if Khasin had been "injured" by his past purchases (and he was not), he is entitled to injunctive relief only if he can show that he faces a "real or immediate threat . . . that he will again be wronged in a similar way."  *L.A. v. Lyons*, 461 U.S. 95, 111 (1983).  Khasin cannot make this showing.

As a threshold matter, Khasin does not have concrete plans to purchase Hershey's dark chocolate and cocoa products in the future.  *See Perez v. Nidek Co.*, 711 F.3d 1109, 1114 (9th Cir. 2013) (no injunction because plaintiff "d[id] not allege that he intend[ed] to have further hyperopic surgery" using defendant's device); *Werdebaugh v. Blue Diamond Growers*, No. 12-CV-2724, 2014 U.S. Dist. LEXIS 71575, at *30-33 (N.D. Cal. May 23, 2014) (no standing to seek injunction where plaintiff "has not alleged, let alone provided evidentiary proof, that he intends or desires to purchase [the product] in the future"); *Wang v. OCZ Tech. Grp., Inc.*, 276 F.R.D. 618, 626-27 (N.D. Cal. 2011) (same).  To the contrary, Khasin has avoided Hershey's products since first consulting with his counsel about this lawsuit:

> Q:      [S]ince meeting with Mr. Gore and retaining him in connection with this case, have you ever eaten a Hershey bar?
>
> A:      No, I have not.
>
> Q:      Why not?

A:      Well, the Hershey packages are, you know, misleading.  They are illegal to sell; they are lying to the consumer, to the public.

(Khasin Dep. Tr. 61:10-17).  Because Khasin has already stopped buying Hershey's products, he has no basis on which to seek an injunction against their current labeling.

Moreover, Khasin is now fully aware of the facts and the various ways in which Hershey's dark chocolate and cocoa labels are allegedly mislabeled.  Numerous courts—including this Court—have recognized that a plaintiff who purportedly knows the "truth" cannot pursue injunctive relief, because he no longer "stands to be fooled again in the future."  *Becker v. Skype Inc.*, No. 5:12-CV-06477, 2014 U.S. Dist. LEXIS 17583, *10 (N.D. Cal. Feb. 10, 2014) (Davila, J.); *see also Garrison v. Whole Foods Mkt. Grp., Inc.*, No. 13-cv-05222, 2014 U.S. Dist. LEXIS 75271, at *19-21 (N.D. Cal. June 2, 2014) ("The named plaintiffs in this case allege that had they known the Whole Foods products they purchased contained SAPP, they would not have purchased them.  Now they know.  There is therefore no danger that they will be misled in the future").

## III.   KHASIN CANNOT PROCEED UNDER THE UCL'S "UNLAWFUL" PRONG

From the outset of this case, Khasin has argued—and will likely argue again—that he is somehow exempt from the requirements that apply to other UCL plaintiffs because he has invoked the statute's "unlawful" prong.  This tired argument cannot save Khasin's case from summary judgment, for several reasons.  First, numerous courts, including this Court, have held that a plaintiff suing over alleged misrepresentations on product labels is required to prove deception and injury, even under the UCL's "unlawful" prong.  Second, Hershey's flavanol antioxidant statements are not "unlawful" under federal law, and Khasin is preempted from attempting to use state law to establish otherwise.  Third, even if Khasin's claims were not preempted and his interpretation of FDA regulations was correct, the First Amendment prohibits the imposition of liability based on Hershey's truthful statements about its products.

### A.      Khasin Is Required to Prove Deception and Injury, Even Under the UCL's "Unlawful" Prong

The California Supreme Court has made clear that the elements of a UCL claim are determined by the nature of the plaintiff's allegations, not the "prong" under which the plaintiff elects to bring suit.  *Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 327 n.9 (2011).  Khasin alleges that Hershey's product

1  labels are false and misleading.  *See Khasin*, 2014 U.S. Dist. LEXIS 62070, *10-11.  Thus, even under

2  the "unlawful" prong, Khasin has the burden to prove deception and injury.  *Id.*  For all of the reasons

3  stated above, Khasin cannot meet that burden.

4       Khasin's attempt to proceed under the UCL's "unlawful" prong without proof of injury or

5  deception is a throwback to the days before Proposition 64—the ballot initiative in which California

6  citizens voted cases of this type out of existence.  *See People ex rel. Lockyer v. Brar*, 115 Cal. App. 4th

7  1315, 1317 (2004) (explaining that Proposition 64 was intended to stop attorneys from looking for

8  "ridiculously minor violations of some regulation or law" and then finding a "consumer" to serve as a

9  "front").  Allowing Khasin to proceed to trial without proof that he or anyone else was deceived or

10  injured would gut Proposition 64's reforms.  *See Kane v. Chobani, Inc.*, No. 12-CV-02425, 2013 U.S.

11  Dist. LEXIS 134385, *33 (N.D. Cal. Sept. 19, 2013) ("plaintiffs' 'illegal product' theory would

12  eviscerate the enhanced standing requirements imposed by Proposition 64 and the California Supreme

13  Court's decision in *Kwikset*"); *Brazil v. Dole Food Co.*, No. 12-CV-01831, 2013 U.S. Dist. LEXIS

14  136921, *30-31 (N.D. Cal. Sept. 23, 2013) (same).

15       If the past is any indication, Khasin will attempt to bootstrap a finding of deception and injury by

16  insisting that he "relied" on an implicit representation that Hershey's products are properly labeled, and

17  was "injured" because the products are actually "unlawful" and "legally worthless."  Khasin advanced

18  the same argument in opposition to Hershey's previous motion for partial summary judgment, and the

19  Court rejected it.  *See Khasin*, 2014 U.S. Dist. LEXIS 62070, *10-11.  Other courts have been similarly

20  unmoved.  *See Swearingen v. Amazon Preservation Partners*, No. 13-cv-04402, 2014 U.S. Dist. LEXIS

21  36830 (N.D. Cal. Mar. 18, 2014) (plaintiff is required to prove deception; allegation that plaintiff would

22  not have purchased had she known product is "unlawful" is insufficient); *Wilson v. Frito-Lay N. Am.*,

23  961 F. Supp. 2d 1134, 1145 (N.D. Cal. 2013) (plaintiff is required to prove injury; an allegation that the

24  product is "legally worthless" is insufficient).

25  **B.      Hershey's Statements Are Not Unlawful**

26       Given Khasin's failure of proof on elements essential to his claim, the Court need not reach the

27  question of whether Hershey's flavanol antioxidant statements are "unlawful."  But in fact, Hershey's

28  labels do not violate FDA regulations or any "parallel" provisions of California law.  *See In re Late Fee*

NOTICE OF MOTION AND MEMO OF LAW IN
SUPPORT OF DEF. MSJ
CV12-01862 EJD

1   *and Overlimit Fee Litig.*, 741 F.3d 1022, 1027 (9th Cir. 2014) ("there is no derivative liability under the

2   [UCL]" when the defendant has not violated another law).

3          According to Khasin,[13] Hershey's "natural source of flavanol antioxidants" statements qualify as

4   "nutrient content claims" under the FDCA, and violate FDA regulations that impose specific

5   requirements for nutrient content claims that characterize the level of nutrients in a food. *See, e.g.,* 21

6   C.F.R. § 101.54(g) (nutrient content claims may not be made unless an RDI has been established).

7   Hershey's statements, however, do not characterize the level of flavanol antioxidants in its products, and

8   the regulations that Khasin cites do not apply.

9          FDA recognizes that not every statement about a nutrient "characterizes" the level of that

10  nutrient present in a food. For example, FDA expressly permits statements such as "X mg of lycopene"

11  and "2 mg of fluoride," even though these nutrients have no RDI.[14] FDA does not view such statements

12  as "characterizing the level" of a nutrient. Rather, FDA has promulgated regulations that delineate those

13  terms that FDA believes "characterize" a nutrient's level. For example, "good source," "excellent

14  source" and "fine source" are all terms that FDA has defined as "characterizing" claims. *See* 21 C.F.R.

15  § 101.13 (b)(1).

16         FDA has never said that a "natural source" claim characterizes the level of a nutrient. For

17  precisely this reason, Judge Grewal dismissed an identical claim against Hershey's competitor Nestle

18  that challenged the statement "natural source of flavanol antioxidants" on Nestle dark chocolate. *See*

19  *Trazo v. Nestlé USA, Inc.*, No. 5:12-CV-2272, 2013 U.S. Dist. LEXIS 113534, at *31 (N.D. Cal. Aug. 9,

---

20  [13] As noted above, Khasin proffered an expert report from a chemist, Dr. Edward Scarborough, that
21  parrots Khasin's erroneous reading of FDA regulations. Interpreting and applying the requirements of
    federal law, however, is the Court's responsibility alone. It is not a proper subject for expert testimony.
22  *See CFM Communs., LLC v. Mitts Telecasting Co.*, 424 F. Supp. 2d 1229, 1233-34 (E.D. Cal. 2005)
    ("Though expert testimony is appropriate where 'scientific, technical, or other specialized knowledge
23  will assist the trier of fact,' expert testimony consisting of legal conclusions is generally inappropriate. . .
24  . The meaning of federal regulations is a question of law, not a question of fact.").

    [14] Food Labeling; Nutrient Content Claims: Definition for "High Potency" and Definition of
25  "Antioxidant" for Use in Nutrient Content Claims for Dietary Supplements and Conventional Foods, 62
    Fed. Reg. 49868 (1997) (a statement characterizing the level of lycopene is unauthorized because
26  lycopene does not have an RDI, but a "statement such as 'x mg of lycopene per serving' is permitted");
    *see also* Food Labeling; Requirements for Nutrient Content Claims for Dietary Supplements of
27  Vitamins, Minerals, Herbs and Other Similar Nutritional Substances, 59 Fed. Reg. 378, 384 (1994)
    ("[W]hile there is no RDI for fluoride," a manufacturer may declare the amount of the nutrient present
28  (e.g., 2 mg fluoride) on any panel outside of the Nutrition Facts box.).

2013).  As Judge Grewal explained, "these statements do not 'characterize the level' of antioxidants, and thus are not nutrient content claims as defined in [FDA regulations]."  *Id.*  Simply put, "natural," unlike "'good,' 'excellent,' and 'fine,' does not modify the word 'source' to indicate the level of the ingredient."  *Id.*

Judge Grewal's reasoning in *Trazo* was correct.  Identifying dark chocolate or cocoa as a "natural source of flavanol antioxidants" does not convey that these nutrients are present at a specific level.  The statement simply informs consumers that flavanol antioxidants are naturally present.  *Trazo* at *31.  Khasin confirmed as much at deposition:

> Q:  Based on the statement, "Natural source of flavanol antioxidants," do you have any personal expectation about the amount of flavanol antioxidants in the product?
>
> A:  I do not.

(Khasin Dep. Tr. 174:4-13.)

Because "natural source of flavanol antioxidants" does not characterize the level of flavanols in Hershey's products, it is not subject to the FDCA requirements that Khasin touts.[15]  Khasin is expressly preempted from asking this Court to deem unlawful under state law a food labeling statement that the FDCA permits.  *See Trazo* at *19; *see also Carrea v. Dreyer's Grand Ice Cream, Inc.*, 475 F. App'x 113, 115 (9th Cir. 2012) (recognizing that the NLEA bars state-law claims that would impose requirements that differ from federal law).

---

[15] Other courts in this District have denied motions to dismiss UCL claims challenging "natural source of flavanol antioxidants" statements on dark chocolate, cocoa and tea.  *See Gustavson v. Mars*, *Inc.*, No.: 13-CV-04537, 2014 U.S. Dist. LEXIS 80139, *22-23 (N.D. Cal. June 10, 2014) (Koh, J.); *Victor v. R.C. Bigelow, Inc.*, No. 13-cv-02976, 2014 U.S. Dist. LEXIS 34550, *51 (N.D. Cal. Mar. 14, 2014) (Orrick, J.).   Those decisions were predicated, however, on a warning letter sent by one of FDA's regional offices in 2011 to a company called Jonathan Sprouts objecting to the claim "Phytoestrogen source" on labels for clover sprouts.  FDA warning letters do not have the force of law and are not official interpretations of FDA requirements.  *See* 21 C.F.R. § 10.85(k) (warning letters are "informal" and "advisory").  Nor do they necessarily reflect the FDA's official position.  *See Holistic Candlers & Consumers Ass'n v. FDA*, 664 F.3d 940, 944-45 (D.C. Cir. 2012) (warning letters "plainly do not mark the consummation of FDA's decision making"); *Dietary Supplemental Coal., Inc. v. Sullivan*, 978 F.2d 560, 563 (9th Cir. 1992) (same); *Summit Tech. v. High-Line Med. Instruments, Co.*, 933 F. Supp. 918, 934 n.9 (C.D. Cal. 1996) (warning letters cannot be used to show that a party "is acting illegally.").

### C.      The First Amendment Protects Hershey's Truthful Statements

Khasin's attempt to use state law to silence Hershey's truthful and non-misleading statements not only misconstrues FDA regulations, it raises significant First Amendment concerns. Hershey has a Constitutional right to provide consumers with accurate information about its products. Khasin's effort to preclude Hershey from doing so cannot succeed.

Product labels are companies' primary means of communicating with their customers, and the U.S. Supreme Court has repeatedly held that they are protected by the First Amendment. *See Rubin v. Coors Brewing Co*., 514 U.S. 476 (1995) ("Government should not be able to suppress … truthful speech merely because it happens to appear on the label of a product for sale") (Stevens, J., concurring); *Edenfield v. Fane*, 507 U.S. 761, 767 (1993) ("even a communication that does no more than propose a commercial transaction is entitled to the coverage of the First Amendment."). Government can bar statements that are false or misleading. *See Cent. Hudson Gas & Elec. Corp. v. Public Serv. Comm'n*., 447 U.S. 557 (1980) (protected speech "must concern lawful activity and not be misleading"). But the First Amendment shields companies from liability for conveying truthful information about their products. *See Kasky v. Nike, Inc*., 27 Cal. 4th 939, 952 (2002) ("the First Amendment imposes restraints on lawsuits seeking damages" for protected speech).

This bedrock principle—that companies have the right to tell the truth—applies even when the complaining party is FDA itself. *See Pearson v. Shalala*, 164 F.3d 650 (D.C. Cir. 1999) (declaring that FDA had violated the First Amendment by suppressing truthful statements on product labels); *Washington Legal Foundation v. Henney*, 56 F. Supp. 2d 81 (D.D.C. 1999), *rev'd and remanded*, 202 F.3d 331 (2000); *Pearson v. Shalala*, 130 F. Supp. 2d 105 (D.D.C. 2001); *Pearson v. Thompson*, 141 F. Supp. 2d 105 (D.D.C. 2001); *Thompson v. W. States Med. Ctr*., 535 U.S. 357 (2002).[16]  The U.S. Supreme Court has thus held that truthful commercial speech cannot be prohibited by regulation unless (1) there is a "substantial" government interest in prohibiting the speech; (2) the regulation "directly

---

[16] The fact that Khasin is a private party attempting to stand in FDA's shoes only magnifies these First Amendment concerns. Unlike FDA, Khasin has no duty to act in the public interest; he has taken no oath to protect and defend the Constitution; and he has no incentive, let alone obligation, to see that FDA regulations are enforced in manner that respects the rights of regulated entities. *cf. Nike v. Kasky*, 539 U.S. 654, 679 (2003) (Breyer, J., dissenting) ("a private 'false advertising' action . . . by one who has suffered no injury, threatens to impose a serious burden upon speech").

advances" the government's interest; and (3) the regulation is not "more extensive than necessary." *Cent. Hudson*, 447 U.S. at 566.

There is no substantial government interest that would justify the ban on truthful speech that Khasin advocates here. On the contrary, the "First Amendment directs [courts] to be especially skeptical" of efforts "to keep people in the dark[.]" *Id.*; *see also 44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484, 503 (1996) (bans on "truthful, nonmisleading commercial speech . . . usually rest solely on the offensive assumption that the public will respond irrationally to the truth.").

Khasin may argue that Hershey's "natural source of flavanol antioxidants" statements should be prohibited because consumers may not otherwise appreciate that Hershey's products are treats that are best enjoyed in moderation. The First Amendment forbids such a "highly paternalistic approach." *Virginia Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc*., 425 U.S. 748, 770 (1976). Rather, the Constitution presumes that "people will perceive their own best interests if only they are well enough informed, and that the best means to that end is to open the channels of communication rather than to close them." *Id.* Put differently, the First Amendment rejects "the notion that the Government has an interest in preventing the dissemination of truthful commercial information in order to prevent members of the public from making bad decisions[.]" *Thompson v. W. States Med. Ctr.*, 535 U.S. at 373; *Pearson v. Shalala*, 130 F. Supp. 2d at 119 (consumer harm "cannot compare to the harm resulting from the unlawful suppression of speech.").

### CONCLUSION

Hershey's "natural source of flavanol antioxidants" statements are true, are not misleading, and have caused no injury to Khasin or anyone else. Accordingly, the statements are not "unlawful," and Khasin's effort to punish and prohibit Hershey from making them runs afoul of First Amendment. Hershey's motion for summary judgment should be granted.

1   Dated: July 11, 2014

2                                   By:        /s/ Steven A. Zalesin
3                                        Steven A. Zalesin (admitted pro hac vice)
                                         Travis J. Tu (admitted pro hac vice)
4                                        Michelle W. Cohen (admitted pro hac vice)

5                                   PATTERSON BELKNAP WEBB & TYLER LLP
                                    1133 Avenue of the Americas
6                                   New York, New York 10036
                                    Telephone:  (212) 336-2000
7

8                                   John W. Fowler (Bar No. 037463)
                                    BERGESON LLP
9                                   303 Almaden Boulevard, Suite 500
                                    San Jose, CA 95110-2712
10                                  Telephone:  (408) 291-6200
                                    Facsimile:   (408) 297-6000
11

12                                  Attorneys for Defendant The Hershey Company

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28