1  John W. Fowler (Bar No. 037463)
   jfowler@be-law.com
2  BERGESON LLP
   2033 Gateway Place, Suite 300
3  San Jose, CA 95110
   Telephone:  (408) 291-6200
4  Facsimile:  (408) 297-6000

5  Steven A. Zalesin (admitted *pro hac vice*)
   sazalesin@pbwt.com
6  Travis J. Tu (admitted *pro hac vice*)
   tjtu@pbwt.com
7  Michelle W. Cohen (admitted *pro hac vice*)
   mcohen@pbwt.com
8  PATTERSON BELKNAP WEBB & TYLER LLP
   1133 Avenue of the Americas
9  New York, New York 10036
   Telephone:  (212) 336-2000
10 Facsimile:  (212) 336-2222

11 Attorneys for Defendant
   THE HERSHEY COMPANY
12
                      UNITED STATES DISTRICT COURT
13                    NORTHERN DISTRICT OF CALIFORNIA

14

15 | LEON KHASIN, on Behalf of Himself and    | CASE NO.  12-cv-01862-EJD
16 | All Others Similarly Situated,            |
   |                                            | **MEMORANDUM OF POINTS AND**
17 |                        Plaintiff,          | **AUTHORITIES IN OPPOSITION TO**
   |                                            | **PLAINTIFF'S MOTION FOR CLASS**
18 |                                            | **CERTIFICATION**
   |        v.                                  |
19 |                                            | Judge: Honorable Edward J. Davila
   |                                            | Date: November 7, 2014
20 | THE HERSHEY COMPANY,                       | Time: 9:00 a.m.
   |                                            | Room: Courtroom 4, 5th Floor
21 |                        Defendant.          | Trial Date: No date set

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................ 1

BACKGROUND .................................................................................................................... 2

    A.    Khasin's Remaining UCL Claim ............................................................. 2

    B.    Khasin's Failure of Proof ........................................................................ 3

    C.    Khasin's Admissions and the Genesis of this Lawsuit ........................... 5

    D.    Khasin's Belated Motion for Class Certification ................................... 6

ARGUMENT ......................................................................................................................... 7

I.    KHASIN HAS NOT PROVEN THAT THE CLASS IS ASCERTAINABLE ............................. 7

II.    KHASIN HAS NOT PROVEN THAT COMMON QUESTIONS EXIST, OR THAT CLASS ISSUES PREDOMINATE OVER INDIVIDUAL ONES ................................... 10

    A.    Legal Standards Governing UCL Claims ............................................. 10

        1.    The Court Has Already Rejected Khasin's Interpretation of the UCL ............... 10

        2.    The Actual Elements of a UCL Claim ..................................... 12

    B.    Reliance, Deception and Injury Are Not Common Questions ............... 12

        1.    Reliance ....................................................................... 12

        2.    Deception .................................................................... 15

        3.    Injury ........................................................................... 16

            a.    Full Refund .......................................................... 16

            b.    Nominal Damages ............................................... 18

    C.    *Tobacco II* Is Distinguishable ............................................................ 18

III.    KHASIN IS NOT TYPICAL OF THE CLASS ..................................................... 20

IV.    KHASIN AND HIS COUNSEL ARE NOT ADEQUATE CLASS REPRESENTATIVES ........ 20

    A.    Conflicts Of Interest ........................................................................... 21

    B.    Vigorous Prosecution .......................................................................... 22

V.    KHASIN LACKS STANDING TO REPRESENT A RULE 23(b)(2) CLASS ..................... 23

CONCLUSION .................................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Algarin v. Maybelline, LLC,*
  300 F.R.D. 444 (S.D. Cal. 2014) ...................................................................................14, 20

*Am. Express Co. v. Italian Colors Rest.,*
  133 S. Ct. 2304 (2013) ..............................................................................................................7

*Astiana v. Kashi,*
  297 F.R.D. 493 (S.D. Cal 2013) ............................................................................................19

*Balarezo v. Nth Connect Telecom, Inc.,*
  No. 07-cv-05243, 2011 U.S. Dist. LEXIS 40648 (N.D. Cal. Apr. 4, 2011) ...........................23

*Barnes v. Am. Tobacco Co.,*
  161 F.3d 127 (3d Cir. 1998) ...................................................................................................23

*Becker v. Skype Inc.,*
  No. 12-cv-06477, 2014 U.S. Dist. LEXIS 17583 (N.D. Cal. Feb. 10, 2014) ...................24, 25

*Berger v. Compaq Computer Corp.,*
  257 F.3d 475 (5th Cir. 2001) ..................................................................................................21

*Berger v. Home Depot USA, Inc.,*
  741 F.3d 1061 (9th Cir. 2014) ................................................................................................10

*Bishop v. 7-Eleven, Inc.,*
  No. 12-cv-02621, 2014 U.S. Dist. LEXIS 56010 (N.D. Cal. Apr. 21, 2014) .........................11

*Bodner v. Oreck Direct, LLC,*
  No. 06-cv-4756, 2007 U.S. Dist. LEXIS 30408 (N.D. Cal. Apr. 25, 2007) .....................21, 23

*Bruton v. Gerber Prods. Co.,*
  2014 U.S. Dist. LEXIS 86581 (N.D. Cal. June 23, 2014) ...............................................7, 8, 9

*Campion v. Old Repub. Home Prot. Co.,*
  272 F.R.D. 517 (S.D. Cal. 2011) ............................................................................................18

*Carrera v. Bayer Corp.,*
  727 F.3d 300 (3d Cir. 2013) .....................................................................................................8

*City of Los Angeles v. Lyons,*
  461 U.S. 95 (1983) ..................................................................................................................24

*Clancy v. Bromley Tea Co.,*
  No. 12-cv-03003, 2014 U.S. Dist. LEXIS 102917 (N.D. Cal. July 28, 2014) .........................8

*Cohen v. DirecTV, Inc.,*
  178 Cal. App. 4th 966 (2009) .................................................................................................19

*Colgan v. Leatherman Tool Grp, Inc.,*
  135 Cal. App. 4th 663 (2006) .................................................................................................12

*Comcast Corp. v. Behrend,*
    133 S. Ct. 1426 (2013) ................................................................................................ passim

*Connelly v. Hilton Grand Vacations Co.,*
    294 F.R.D. 574 (S.D. Cal. 2013) .............................................................................. 23

*Creative Montessori Learning Ctrs. v. Ashford Gear LLC,*
    662 F.3d 913 (7th Cir. 2011) .................................................................................... 21

*Daubert v. Merrell Dow Pharms.,*
    509 U.S. 579 (1993) .................................................................................................. 14

*Davis-Miller v. Auto. Club of S. Cal.,*
    201 Cal. App. 4th 106 (2011) .................................................................................. 19

*Day v. AT&T Corp.,*
    63 Cal. App. 4th 325 (1998) .................................................................................... 18

*De Keczer v. Tetley USA, Inc.,*
    No. 12-cv-02409, 2014 U.S. Dist. LEXIS 121465 (N.D. Cal. Aug. 28, 2014) ...... 11

*Garrison v. Whole Foods Mkt. Grp., Inc.,*
    No. 13-cv-05222, 2014 U.S. Dist. LEXIS 75271 (N.D. Cal. June 2, 2014) ........... 24

*Gitson v. Trader Joe's Co.,*
    No. 13-cv-01333, 2014 U.S. Dist. LEXIS 33936 (N.D. Cal. Mar. 14, 2014) ........ 11, 17

*Hanlon v. Chrysler Corp.,*
    150 F.3d 1011 (9th Cir. 1998) .................................................................................. 20

*Hanon v. Dataproducts Corp.,*
    976 F.2d 497 (9th Cir. 1992) .................................................................................... 20

*In re Google AdWords Litig.,*
    No. 08-cv-3369, 2012 U.S. Dist. LEXIS 1216 (N.D. Cal. Jan. 5, 2012) ................ 7

*In re Initial Pub. Offering Sec. Litig.,*
    471 F.3d 24 (2d Cir. 2006) ........................................................................................ 7

*In re Phenylpropanolamine (PPA) Prod. Liab. Litig.,*
    214 F.R.D. 614 (W.D. Wash. 2003) ......................................................................... 8

*In re POM Wonderful, LLC Mktg & Sales Practices Litig.,*
    No. 10-cv-02199, 2014 U.S. Dist. LEXIS 40415 (C.D. Cal. Mar. 25, 2014) .......... 8, 16, 17

*In re Quarterdeck Office Sys. Sec. Litig.,*
    No. 92-cv-3970, 1993 U.S. Dist. LEXIS 19806 (C.D. Cal. Sept. 30, 1993) ........... 22

*In re St. Jude Med., Inc.,*
    425 F.3d 1116 (8th Cir. 2005) .................................................................................. 23

*In re Steroid Hormone Product Cases,*
    181 Cal. App. 4th 145 (2010) .................................................................................. 11

*In re Tobacco II Cases,*
    46 Cal. 4th 298 (2009) ...................................................................................... 13, 18, 19

*Jones v. ConAgra*,
    No. 12-cv-01633, 2014 U.S. Dist. LEXIS 81292 (N.D. Cal. June 13, 2014)................. passim

*Kane v. Chobani, Inc.*,
    No. 12-cv-02425, 2013 U.S. Dist. LEXIS 134385 (N.D. Cal. Sept. 19, 2013) ................11, 17

*Khasin v. Hershey Co.*,
    No. 12-cv-01862, 2014 U.S. Dist. LEXIS 62070 (N.D. Cal. May 5, 2014)................... passim

*Korea Supply Co. v. Lockheed Martin Corp.*,
    29 Cal. 4th 1134 (2003) ...........................................................................................18

*Kottaras v. Whole Foods Mkt., Inc.*,
    281 F.R.D. 16 (D.D.C. 2012)......................................................................................4

*Kwikset Corp. v. Superior Court*,
    51 Cal. 4th 310 (2011) ..............................................................................12, 15, 17

*Lanovaz v. Twinings N. Am., Inc.*,
    No. 12-cv-026460, 2014 U.S. Dist. LEXIS 57535 (N.D. Cal. Apr. 24, 2014) ...................4, 16

*Lavie v. Proctor & Gamble Co.*,
    105 Cal. App. 4th 496 (2003) ......................................................................................12

*Leyva v. Medline Indus.*,
    716 F.3d 510 (9th Cir. 2013) ........................................................................................16

*Lierboe v. State Farm Mut. Auto Ins. Co.*,
    350 F.3d 1018 (9th Cir. 2003) ......................................................................................24

*Marlo v. U.P.S.*,
    251 F.R.D. 476 (C.D. Cal. 2008), *aff'd*, 639 F.3d 942 (9th Cir. 2011) ..................................10

*Maxwell v. Unilever United States, Inc.*,
    No. 12-cv-01736, 2014 U.S. Dist. LEXIS 121462 (N.D. Cal. Aug. 28, 2014) ......................11

*Maywalt v. Parker & Parsley Petrol. Co.*,
    67 F.3d 1072 (2d Cir. 1995)...................................................................................21, 22

*Mazza v. Am. Honda Motor Co.*,
    666 F.3d 581 (9th Cir. 2012) ......................................................................12, 13, 19

*Moheb v. Nutramax Labs., Inc.*,
    No. 12-cv-3633, 2012 U.S. Dist. LEXIS 167330 (C.D. Cal. Sept. 4, 2012) .........................21

*Ogden v. Bumble Bee Foods, LLC*,
    No. 12-cv-01828, 2014 U.S. Dist. LEXIS 565 (N.D. Cal. Jan. 2, 2014)..................................4

*Oshana v. Coca-Cola Co.*,
    472 F.3d 506 (7th Cir. 2006) ........................................................................................20

*Pagan v. Abbott Labs., Inc.*,
    287 F.R.D. 139 (E.D.N.Y. 2012) ...................................................................................8

*Park v. Welch Foods, Inc.*,
    No. 12-cv-06449, 2014 U.S. Dist. LEXIS 37796 (N.D. Cal. Mar. 21, 2014) .........................12

*Radcliffe v. Experian Info. Solutions*,
    715 F.3d 1157 (9th Cir. 2013) ..............................................................................21

*Ramirez v. United Rentals, Inc.*,
    No. 10-cv-04374, 2013 U.S. Dist. LEXIS 82951 (N.D. Cal. Jun. 12, 2013)...........................7

*Rattray v. Woodbury Cnty.*,
    614 F.3d 831 (8th Cir. 2010) ................................................................................23

*Red v. Kraft Foods, Inc.*,
    No. 10-cv-1028, 2012 U.S. Dist. LEXIS 186948 (C.D. Cal. Apr. 12, 2012) ..........................8

*Ries v. Ariz. Bevs. USA, LLC*,
    No. 10-cv-01139, 2013 U.S. Dist. LEXIS 46013 (N.D. Cal. Mar. 28, 2013) ........................16

*Rodriguez v. West Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) ................................................................................22

*Sanchez v. Wal-Mart Stores, Inc.*,
    No. 06-cv-02573, 2009 U.S. Dist. LEXIS 48428 (E.D. Cal. May 28, 2009) ........................21

*Sethavanish v. ZonePerfect Nutrition Co.*,
    No. 12-cv-2907, 2014 U.S. Dist. LEXIS 18600 (N.D. Cal. Feb. 13, 2014) ...........................8

*Stilson v. Reader's Digest Ass'n*,
    28 Cal. App. 3d 270 (1972) .................................................................................18

*Sweet v. Pfizer*,
    232 F.R.D. 360 (C.D. Cal. 2005) ............................................................................24

*Thomas v. Costco Wholesale Corp.*,
    No. 12-cv-02908, 2014 U.S. Dist. LEXIS 46405 (N.D. Cal. Mar. 31, 2014) ...........11, 12, 15

*Thorogood v. Sears, Roebuck & Co.*,
    627 F.3d 289 (7th Cir. 2010) ................................................................................20

*True v. ConAgra Foods, Inc.*,
    No. 07-cv-00770, 2011 U.S. Dist. LEXIS 6770 (W.D. Mo. Jan. 4, 2011) ..............................8

*Tucker v. Pac. Bell Mobile Servs.*,
    208 Cal. App. 4th 201 (2012) ......................................................................12, 14, 19

*United States v. Marolf*,
    173 F.3d 1213 (9th Cir. 1999) ..............................................................................18

*Wal-Mart Stores, Inc. v. Dukes*,
    131 S. Ct. 2541 (2011)........................................................................................7, 10

*Werdebaugh v. Blue Diamond Growers*,
    No. 12-cv-2724, 2014 U.S. Dist. LEXIS 71575 (N.D. Cal. May 23, 2014)..........................24

*Wiener v. Dannon Co.*,
    255 F.R.D. 658 (C.D. Cal. 2009) .....................................................................13, 14

*Williams v. Gerber Prods. Co.*,
    552 F.3d 934 (9th Cir. 2008) ................................................................................15

1

*Wilson v. Frito-Lay N. Am.*,
   961 F. Supp. 2d 1134 (N.D. Cal. 2013) ...........................................................11, 17

2

*Zylstra v. Safeway Stores, Inc.*,
   578 F.2d 102 (5th Cir. 1978) .........................................................................................22

3

4

## OTHER AUTHORITIES

5

Fed. R. Civ. P. Rule 11(b)....................................................................................................23

6

Fed. R. Civ. P. Rule 12(f) ...................................................................................................12

7

Fed. R. Civ. P. Rule 23 .............................................................................................. passim

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MEMORANDUM OF LAW IN OPPOSITION TO
PLAINTIFF'S MOTION FOR CLASS CERTIFICATION
CV12-01862 EJD

Defendant The Hershey Company ("Hershey") respectfully submits this memorandum in opposition to the Motion for Class Certification ("Mot.") filed by Plaintiff Leon Khasin ("Khasin").

## PRELIMINARY STATEMENT

This Court previously entered summary judgment in favor of Hershey on all but one of Khasin's claims. *See Khasin v. Hershey Co.*, No. 12-cv-01862, 2014 U.S. Dist. LEXIS 62070 (N.D. Cal. May 5, 2014). All that remains is Khasin's claim under California's Unfair Competition Law ("UCL") that the statement "natural source of flavanol antioxidants" that has appeared on certain Hershey's Special Dark chocolate and cocoa products is false and misleading. Khasin took extensive discovery of Hershey with respect to this claim, but those efforts bore no fruit: Khasin failed to adduce any evidence that Hershey's flavanol antioxidant statements are untrue or deceptive, or that consumers paid more for Hershey's products as a result of these statements.

Discovery officially closed in May 2014. In light of Khasin's total failure of proof, Hershey filed a motion for summary judgment on July 11, 2014 as to Khasin's remaining UCL claim. That motion, which is fully briefed and submitted to the Court, demonstrates that Khasin has no chance of success at trial because (1) Hershey's "natural source of flavanol antioxidant" statements are true; (2) Khasin was not misled and proffered no evidence that reasonable consumers are likely to be misled; (3) Hershey's flavanol antioxidant statements do not influence consumers' purchasing decisions or the prices that consumers pay; and (4) Khasin lacks standing to pursue injunctive relief. Khasin opposed Hershey's motion for summary judgment not with evidence from which the Court might find in his favor, but with legal arguments. Specifically, Khasin argued that he is exempt from the traditional burdens of proof in UCL cases because he has invoked the statute's "unlawful" prong, even though courts in this District—including this Court—have rejected that interpretation of California law.

With his case dangling by a thread, Khasin now seeks to certify a class of "All persons in the State of California who, from April 13, 2008, until notice purchased Hershey Special Dark Chocolate or Cocoa or Hershey Cocoa product [*sic*] with the claim 'natural source of flavanol antioxidants' on the label." (Mot. at ii.) But as with his liability case, Khasin has failed entirely to marshal the proof needed to show that he is entitled to certification under Rule 23. In particular:

- **The class is not ascertainable.**  A class cannot be certified unless its members can be reliably ascertained.  Khasin fails to even address this requirement in his motion.  Putative class members lack receipts, and cannot be expected to reliably recall which dark chocolate or cocoa products they purchased, let alone whether those products bore the disputed statement on their labels.

- **Reliance and deception cannot be determined on a class-wide basis.**  This Court has held in this case that reliance and deception are necessary elements of a UCL claim, even under the statute's "unlawful" prong.  Khasin failed to prove that consumers relied upon or were misled by Hershey's flavanol antioxidant statements in making their purchases.  Indeed, a survey proves that the statements have no impact on consumers' interest in purchasing Hershey's products or their subjective impressions of the products' value.

- **Khasin has no valid damage model.**  A class cannot be certified without a damages model that isolates the losses attributable to the alleged misconduct.  Khasin has provided no such model, and failed to rebut the empirical showing of Hershey's economic expert that there is no "price premium" attributable to Hershey's flavanol antioxidant statements.

- **Khasin's claims are atypical, and he and his counsel are inadequate representatives.**  Khasin admitted at deposition that, contrary to the allegations in his complaint, he believes that Hershey's flavanol antioxidant statements are true and provide consumers with valuable information.  In addition, the circumstances that led to Khasin's involvement in this action, as well as the manner in which the case has been litigated, demonstrate that neither Khasin nor his counsel can adequately represent the interests of absent class members.

- **Khasin lacks standing to pursue injunctive relief.**  Khasin testified that he does not intend to purchase Hershey's products as long as they are labeled with flavanol antioxidant statements.  Khasin is therefore at no risk of future harm, and lacks standing to pursue an injunction or represent a Rule 23(b)(2) injunctive-relief class.

For these and other reasons set forth below, Khasin's motion for class certification must be denied.

## BACKGROUND

### A.    Khasin's Remaining UCL Claim

Khasin commenced this action on April 23, 2012, and filed an amended complaint on July 23, 2012 ("AC").  The AC alleged that Hershey's website, advertising and product labels contain various statements that violate the federal Food, Drug, and Cosmetic Act ("FDCA"), U.S. Food and Drug Administration ("FDA") regulations, and provisions of California law that incorporate those requirements by reference.  The litany of claims disputed in the AC included statements that Hershey has made for its milk chocolate, mints, dark chocolate and cocoa.

On May 5, 2014, the Court granted summary judgment to Hershey on all but one of Khasin's claims.  Based upon Khasin's admissions at deposition, the Court determined that Khasin did not rely upon—indeed, for the most part, he had never even been exposed to—the vast majority of the labeling and advertising statements he had challenged.  *See Khasin*, 2014 U.S. Dist. LEXIS 62070 at *12.  The only claim that survived dismissal is the one on which Hershey did not seek summary judgment: Khasin's UCL claim concerning the "natural source of flavanol antioxidants" statement, which appears

1  in small type as part of a "seal" on the labels of certain Hershey's dark chocolate and cocoa products:



9      Hershey did not include Khasin's UCL claim about the flavanol antioxidant statement in its

10  original motion for partial summary judgment because, at that time, Hershey recognized that there was a

11  potential factual dispute over whether Hershey's dark chocolate and cocoa products retain the flavanol

12  antioxidants naturally found in the cocoa bean.  As it turned out, however, Khasin failed to marshal any

13  evidence that Hershey's flavanol antioxidants statement is false, or that Hershey's dark chocolate and

14  cocoa products do not contain meaningful amounts of flavanol antioxidants.

15      Khasin nevertheless maintains that Hershey is precluded by FDA regulations and California law

16  from providing consumers with truthful information about the flavanol antioxidants found in dark

17  chocolate and cocoa.  According to Khasin, the phrase "natural source" in Hershey's seal "characterizes

18  the level" of flavanols in the product, and triggers FDA's heightened requirements for nutrient content

19  claims.  Khasin alleges that Hershey's flavanol antioxidant statement does not meet these requirements

20  because (1) there is no Recommended Daily Intake ("RDI") for flavanols; (2) Hershey's products

21  purportedly have "disqualifying" levels of fat and sodium; and (3) Hershey's labels supposedly do not

22  identify the type of antioxidants in the product with sufficient particularity.  (Mot. at 1.)

23  **B.      Khasin's Failure of Proof**

24      Khasin took extensive discovery into almost every facet of Hershey's dark chocolate and cocoa

25  business.  Khasin's document requests required Hershey to produce more than 750,000 pages of

26  documents.  Khasin also deposed five Hershey fact witnesses.  (Declaration of Travis J. Tu ("Tu Decl."),

27  at ¶¶ 4-10.)  This effort was in vain.  Khasin's motion for class certification cites *no evidence* from

28  Hershey's documents or witnesses in support of Khasin's arguments that a class should be certified.

Khasin's inability to bolster his case through fact discovery carried over into expert discovery.

Hershey served three expert reports:

- Dr. Frank M. Sacks, a professor at both the Harvard Medical School and Harvard School of Public Health, reviewed the scientific literature concerning flavanol antioxidants and determined that the statement on Hershey's labels is true and provides meaningful information to consumers. (*See* Sacks Report, Ex. B to Tu Decl. (Ex. A to Sacks Decl.).)

- Dr. David Stewart, an authority on consumer research who has previously served as an expert for the Federal Trade Commission, described a survey he designed and executed. The survey shows that Hershey's flavanol antioxidant statement is not material to the purchasing decisions of California consumers. (*See* Stewart Report, Ex. D to Tu Decl. (Ex. A to Stewart Decl.).)

- Dr. Gregory Bell, a respected economist, conducted an exhaustive comparison of prices for Hershey's products with the flavanol antioxidant statement on their labels versus the prices of the same (and similar) products without such statements. This analysis demonstrated that the flavanol antioxidant statement has no impact on the prices consumers pay. (*See* Bell Report, Ex. C to Tu Decl. (Ex. A to Bell Decl.).)

Khasin made no attempt to rebut Hershey's experts. When Hershey offered to make the experts available for deposition at Hershey's expense, Khasin's counsel declined. (Tu Decl. ¶ 14.)

For his part, Khasin served three reports. Dr. Oral Capps, who has acted as a damages expert in numerous food labeling cases brought by Khasin's counsel, listed myriad approaches that *could* be used to calculate restitution in a UCL case, but did not actually perform any calculation. Dr. Capps has been roundly criticized by courts, in this District and elsewhere, for his cookie-cutter approach to calculating damages.[1] No doubt for this reason, Khasin chose not to submit Dr. Capps's report in connection with this motion. As a result, Khasin failed to identify any means by which restitution could be calculated or apportioned, on a class-wide basis or otherwise.

Dr. F. Edward Scarborough offered the inadmissible *legal* opinion that Hershey's flavanol antioxidant statement is a nutrient content claim within the meaning of FDA regulations. Khasin did not submit Dr. Scarborough's report in support of his motion for class certification either.

---

[1] *See Jones v. ConAgra*, No. 12-cv-01633, 2014 U.S. Dist. LEXIS 81292, at *72-78 (N.D. Cal. June 13, 2014) (Dr. Capps's entire approach is "deeply flawed"); *Lanovaz v. Twinings N. Am., Inc.*, No. 12-cv-026460, 2014 U.S. Dist. LEXIS 57535, at *22 (N.D. Cal. Apr. 24, 2014) ("Dr. Capps has no way of linking the price difference, if any, to the antioxidant label or controlling for other reasons why 'comparable' products may have different prices."); *Ogden v. Bumble Bee Foods, LLC*, No. 12-cv-01828, 2014 U.S. Dist. LEXIS 565, at *52 (N.D. Cal. Jan. 2, 2014) (Dr. Capps's report "does not provide sufficient evidence to support [plaintiff's] claim for restitution"); *Kottaras v. Whole Foods Mkt., Inc.*, 281 F.R.D. 16, 24- 26 (D.D.C. 2012) ("Capps's approach to assessing damage . . . is incorrect" and his "methodology is not sufficiently developed").

The only expert report on which Khasin relies for this motion is that of Dr. Julie Caswell, who offered her personal opinion that Hershey's flavanol antioxidant statement is "material" to consumers. (Dkt. 157-1, Ex. A.)  Dr. Caswell performed no consumer survey, and spoke to no putative class members.  Rather, her opinion that the statement is "material" was based on her assumption that *every* statement on a product label matters to consumers.  (Dkt. 157, Ex. A ¶ 27.)

## C.   Khasin's Admissions and the Genesis of this Lawsuit

Khasin's deposition testimony revealed that his personal experience is totally inconsistent with the allegations in the Amended Complaint.  As the Court observed in its partial summary judgment ruling, Khasin testified that "[c]ontrary to the allegations made in the AC . . . he did not, in fact, rely on most of Defendant's representations outlined in the pleadings."  *Khasin*, 2014 U.S. Dist. LEXIS 62070, at *11-12.  For example, Khasin admitted that, notwithstanding the AC's allegations, he never once visited Hershey's website; he could not recall seeing any advertising for Hershey's products; and he had no concerns whatsoever regarding the labeling of Hershey's milk chocolate and mints.  (Tu Decl., Ex. A (hereinafter "Khasin Dep. Tr.") at 148:22-149:3; 216:21-23; 96:21-97:3; 142:21-25.)

Khasin testified that he did see the flavanol antioxidant seal on Hershey's dark chocolate and cocoa prior to purchasing those products.  Even as to the seal, however, Khasin's testimony flatly contradicted the AC's allegations.  For example:

- The AC alleged that Hershey's flavanol antioxidant statement was "false."  (AC ¶¶ 9, 15, 41, 50, 51-52, 55, 57, 61, 63.)  But Khasin testified that, as far as he was aware, the statement was true. (Khasin Dep. Tr. at 202:4-10) (Q:  Do you think that the statements regarding antioxidant[s] . . . on the dark chocolate products are false? A: No, I do not.); *id.* at 213:11-14 (same for cocoa).)

- The AC alleged that Hershey's flavanol antioxidant statement was "misleading" because it led him to think that the products contain flavanol antioxidants in specific amounts.  (AC ¶¶ 52, 60-63.)  But Khasin testified that the label, in fact, did not "convey anything to [him] about the amount of the flavanol antioxidants in the product."  (Khasin Dep. Tr. at 258:1-7.)

- The AC alleged that Khasin was misled to believe that Hershey's products are "healthy."  (AC ¶¶ 85-86.)  But Khasin testified that he was well aware that chocolate and candy are not health foods.  (Khasin Dep. Tr. at 79:23-80:18 (Q: Okay. But are any candy bars that you can think of today healthy for you? A: Healthy, no, I don't think so.).)

- The AC alleged that Khasin was misled because the flavanol antioxidant statement supposedly obscures the presence of fat and sodium.  (AC ¶¶ 6, 45, 77-86.)  But Khasin testified that he could not have cared less about the fat and sodium in Hershey's products.  (Khasin Dep. Tr. at 167:18-22) (Q:  Were you interested to know whether the product contained fat or sodium, or not particularly interested, before you purchased Hershey's Dark Chocolate Bars? A: No, I wasn't concern[ed] about that."); *id.* at 196:20-25 (same for cocoa).)

1    Khasin offered no explanation for these discrepancies between the AC's allegations and the true facts.

2    Tellingly, Khasin testified that he never reviewed the AC before it was filed.  (*Id*. at 254:10-19.)

3            Khasin also testified as to the dubious origins of this lawsuit.  At the time the case was brought,

4    Khasin's wife worked as a legal secretary for Khasin's counsel of record, Pierce Gore.  (*Id*. at 17:2-19:9,

5    24:4-18.)  One day, Khasin's wife suggested that he talk to Mr. Gore about getting involved in "possible

6    class actions."  (*Id*. at 24:4-18, 26:11-27:1, 31:1-7.)  She did not say whom these actions would be

7    against, or what products they would involve.  (*Id*. at 26:11-27:10.)  But Khasin had heard that "courts

8    sometimes hand . . . out" incentive payments in such cases.  (*Id*. at 32:2-6.)

9            According to Khasin, when he entered Mr. Gore's office, he was a lifelong Hershey customer

10   with no "concerns about the labeling or advertising of any Hershey products" and no "desire to sue the

11   Hershey Company."  (*Id*. at 28:3-8, 29:8-10.)  But by the time he walked out that day, Khasin had

12   agreed to file this lawsuit.  Khasin admitted that his claims against Hershey were conceived entirely by

13   Mr. Gore.  (*Id*. at 34:6-8, 39:25-40:23.)

14   **D.     Khasin's Belated Motion for Class Certification**

15           After fact and expert discovery closed, Hershey moved for summary judgment as to Khasin's

16   remaining UCL claim.  (Dkt. 139.)  As that motion demonstrated, Hershey's flavanol antioxidant

17   statement is true and provides consumers with valuable information.  The statement has no impact on

18   consumers' subjective impressions of the products' value or the prices that consumers pay.  And Khasin

19   lacks standing to obtain injunctive relief because he has no future plans to purchase Hershey's products

20   labeled with flavanol antioxidant statements, and thus is at no risk of prospective harm.[2]

21           Hershey also pointed out that, because Khasin never moved to certify a class, the Court could

22   proceed to enter summary judgment on Khasin's individual claim without any prejudice to absent class

23   members.  This apparently spurred Khasin to action.  On September 12, 2014, more than two-and-a-half

24   years after this case was filed, Khasin moved to certify a class of California purchasers of Hershey's

25

26   [2] Khasin opposed Hershey's motion largely on the ground that, because he sued under the UCL's
     unlawful prong, he is not required to prove the traditional elements of reliance, deception and injury.
27   (Dkt. 144.)  Khasin acknowledged that courts in this District have rejected his interpretation of
     California law, but argued that these cases are wrongly decided.  Khasin also filed a cross-motion for
28   summary judgment of his own.  (Dkt. 137-3.)

MEMORANDUM OF LAW IN OPPOSITION TO
                                                                  PLAINTIFF'S MOTION FOR CLASS CERTIFICATION
                                                                  CV12-01862 EJD

1    dark chocolate and cocoa products.  Khasin submitted three pieces of "evidence" in support of his

2    motion:  (1) selected quotes from his deposition, (2) an affidavit in which he contradicts portions of his

3    deposition testimony, and (3) the report of Dr. Caswell.

4                                                **ARGUMENT**

5           Khasin asserts that Rule 23's requirements "should be liberally construed," and that "[c]lass

6    actions in the Ninth Circuit are favored."  (Mot. at 2-3.)  Perhaps that was once so, but those days are

7    gone.  As the Supreme Court recently admonished, Rule 23 imposes "*stringent* requirements for

8    certification that in practice *exclude most claims*."  *Am. Express Co. v. Italian Colors Rest.*, 133 S. Ct.

9    2304, 2310 (2013) (emphasis added).  Rule 23 is "not" a "mere pleading standard."  *Wal-Mart Stores,*

10   *Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).  Rather, a plaintiff "must affirmatively . . . *prove*" each

11   Rule 23 requirement.  *Id.* (emphasis added); *see also Comcast Corp. v. Behrend,* 133 S. Ct. 1426, 1428

12   (2013) (plaintiff "must satisfy [Rule 23] through evidentiary proof"); *In re Google AdWords Litig.*, No.

13   08-cv-3369, 2012 U.S. Dist. LEXIS 1216, at * 35 (N.D. Cal. Jan. 5, 2012) (Davila, J.) ("A party seeking

14   class certification must provide facts sufficient to satisfy the requirements of [Rule 23]").

15          The Court must conduct a "rigorous analysis" of the record before certifying a class.  *Wal-Mart*,

16   131 S. Ct. at 2551.  This requires "weigh[ing] conflicting evidence" and resolving factual disputes.  *In re*

17   *Initial Pub. Offering Sec. Litig.*, 471 F.3d 24, 42 (2d Cir. 2006).  "Frequently, [the necessary] 'rigorous

18   analysis' will entail some overlap with the merits of the plaintiff's underlying claim."  *Wal-Mart*, 131 S.

19   Ct. at 2552; *Ramirez v. United Rentals, Inc.*, No. 10-cv-04374, 2013 U.S. Dist. LEXIS 82951, at *6

20   (N.D. Cal. Jun. 12, 2013) (Davila, J.).

21   **I.     KHASIN HAS NOT PROVEN THAT THE CLASS IS ASCERTAINABLE**

22          Khasin's motion must be denied because Khasin made no attempt to demonstrate that the

23   proposed class is ascertainable.  "Although there is no explicit ascertainability requirement in Rule 23,

24   courts in this district have routinely required plaintiffs to demonstrate ascertainability."  *Jones*, 2014 U.S.

25   Dist. LEXIS 81292, at *30.  This means that, "[a]s a threshold matter," a plaintiff must show that the

26   class "is defined by 'objective' criteria and [that] it is 'administratively feasible' to determine whether a

27   particular individual is a member."  *Bruton v. Gerber Prods. Co.*, 2014 U.S. Dist. LEXIS 86581, at *11-

28   12 (N.D. Cal. June 23, 2014).  This ascertainability requirement "serves several important objectives":

First, it eliminates serious administrative burdens that are incongruous with the efficiencies expected in a class action by insisting on the easy identification of class members. Second, it protects absent class members by facilitating the best notice practicable . . . . Third, it protects defendants by ensuring that those persons who will be bound by the final judgment are clearly identifiable.

*Carrera v. Bayer Corp.*, 727 F.3d 300, 305-06 (3d Cir. 2013); *see also Jones*, 2014 U.S. Dist. LEXIS 81292, at *30 ("Without an objective, reliable way to ascertain class membership, the class quickly would become unmanageable, and the preclusive effect of final judgment would be easy to evade.").

The leading case on ascertainability is *Carrera v. Bayer Corp.*  There, the Third Circuit decertified a class of consumers who purchased Bayer's "Weight Smart" supplements.  Because the supplements were sold in retail stores, "Bayer ha[d] no list of purchasers," and it was undisputed that purchasers were "unlikely to have documentary proof of purchase."  727 F.3d at 304.  The only remaining option for identifying class members, therefore, was to rely on "potential class members' say so."  *Id.*  The court recognized that this would be improper because, if defendants were forced "to accept as true absent persons' declarations that they are members of the class, without further indicia of reliability," class certification "would have serious due process implications."  *Id.* at 306.  Numerous federal courts in California and elsewhere have followed *Carrera*, especially in cases where, as here, the product at issue is a low-cost grocery item.[3]

Khasin completely ignores the requirement of ascertainability.  Nowhere in his motion does Khasin "establish[] how [he] will accurately identify all class members."  *Jones*, 2014 U.S. Dist. LEXIS 81292, at *39 n.20.  In fact, there are no means to do so.  Hershey typically does not sell its products directly to consumers, and thus has no records that identify the consumers who purchased its dark chocolate or cocoa products.  (*See* Declaration of Jennifer Podhajsky (Podhajsky Decl.) ¶¶ 9-10.)  And

---

[3] *See, e.g., Jones*, 2014 U.S. Dist. LEXIS 81292, at *32 (tomato products, cooking spray, and hot cocoa); *Bruton*, 2014 U.S. Dist. LEXIS 86581, at *11-33 (baby food); *Clancy v. Bromley Tea Co.*, No. 12-cv-03003, 2014 U.S. Dist. LEXIS 102917, at *6-7 (N.D. Cal. July 28, 2014) (tea); *In re POM Wonderful, LLC Mktg & Sales Practices Litig.*, No. 10-cv-02199, 2014 U.S. Dist. LEXIS 40415, at *23-24 (C.D. Cal. Mar. 25, 2014) (fruit juice); *Sethavanish v. ZonePerfect Nutrition Co.*, No. 12-cv-2907, 2014 U.S. Dist. LEXIS 18600, at *13-18 (N.D. Cal. Feb. 13, 2014) (nutrition bars); *Red v. Kraft Foods, Inc.*, No. 10-cv-1028, 2012 U.S. Dist. LEXIS 186948, at *14 (C.D. Cal. Apr. 12, 2012) (cookies and crackers); *Pagan v. Abbott Labs., Inc.*, 287 F.R.D. 139, 151 (E.D.N.Y. 2012) (infant formula); *True v. ConAgra Foods, Inc.*, No. 07-cv-00770, 2011 U.S. Dist. LEXIS 6770, at *15-17 (W.D. Mo. Jan. 4, 2011) (frozen pot pies); *In re Phenylpropanolamine (PPA) Prod. Liab. Litig.*, 214 F.R.D. 614, 617-19 & n.5 (W.D. Wash. 2003) (over-the-counter cold medication).

dark chocolate and cocoa are not products for which consumers typically maintain receipts.  Indeed, Khasin testified that he did not retain *his own* receipts for these purchases.  (Khasin Dep. Tr. at 170:10-12, 183:8-10, 187:24-188:1, 220:15-16, 221:24-3.)

That leaves ascertainment by consumers' say-so, which is legally "unsatisfactory."  *Bruton*, 2014 U.S. Dist. LEXIS 86581, at *24-25.  "Even assuming that all proposed class members would be honest, it is hard to imagine that they would be able to remember" whether they purchased Hershey's dark chocolate or cocoa within the class period.  *Jones*, 2014 U.S. Dist. LEXIS 81292, at *35-36.  The difficulty is exacerbated here by the fact that the proposed class does not include *every* Hershey's product, but only specific products sold under the Hershey's brand name.  A consumer thus would have to recall not just that she purchased a Hershey's product sometime in the past six years, but that the product *was not* milk chocolate, white chocolate, baking chips, syrup, or any other Hershey's variety outside Khasin's class definition.  *See Bruton*, 2014 U.S. Dist. LEXIS 86581, at *26-27 (recognizing the "likelihood that consumers will have difficulty remembering whether or not they purchased a qualifying product" when the class includes less than all products in a given line).

Moreover, as courts have recognized, it is especially difficult to ascertain a class when the disputed claim did not uniformly appear on all the products at issue.  *See Jones*, 2014 U.S. Dist. LEXIS 81292, at *35-38 (class not ascertainable where "the class definition carve[d] out some [] products that did not contain the challenged labels").  There were multiple times in the past six years when Hershey labeled its dark chocolate and cocoa products *without* the flavanol antioxidant statement.  For example, Hershey sometimes sells dark chocolate with holiday-themed labels that do not include a flavanol antioxidant statement.  (Podhajsky Decl. ¶ 6.)  Similarly, in 2010 and 2011, Hershey sold its cocoa with "nostalgia" labels that did not include the statement.  (*Id.* ¶ 5.)  In order to self-identify as a class member, a consumer would need to recall not merely that he bought the correct Hershey products, but also that "those products bore the challenged label statement[]."  *Jones*, 2014 U.S. Dist. LEXIS 81292, at *35.  Any such assertion would be entirely unverifiable.

In short, Khasin has altogether failed to establish that the class is ascertainable.  His motion should be denied for this reason alone.  *See Bruton*, 2014 U.S. Dist. LEXIS 86581, at *11.

## II.   KHASIN HAS NOT PROVEN THAT COMMON QUESTIONS EXIST, OR THAT CLASS ISSUES PREDOMINATE OVER INDIVIDUAL ONES

Class certification also must be denied because Khasin has not satisfied the commonality requirement of Rule 23(a)(2), or the predominance requirement of Rule 23(b)(3).  Khasin cites outdated precedent for the proposition that commonality is a "permissive" standard that merely requires "shared legal issues" or "a common core of salient facts."  (Mot. at 4.)  This is no longer good law.  In *Wal-Mart*, the Supreme Court explained that Rule 23(a)(2) requires more:

> [The class members'] claims must depend upon a common contention . . . of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of [their] claims in one stroke.  What matters to class certification . . . is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation.

131 S. Ct. at 2551 (emphasis in the original).  In other words, *Wal-Mart* "elevate[d] the [commonality] inquiry so that it is no longer easily satisfied."  *Id.* at 2565 (Ginsburg, J., dissenting) (internal quotation marks omitted).

The predominance requirement under Rule 23(b)(3) is "even more demanding."  *Comcast*, 133 S. Ct. at 1432.  A plaintiff must provide "evidentiary proof" that the common issues required by *Wal-Mart* "predominate over" issues that must be individually resolved.  *Id.*  Evaluating predominance requires a court to play out "how the case will be tried."  Fed. R. Civ. P. 23 Advisory Comm. Note, 2003 Amendments.  If there is "a significant risk that [a class-wide trial] would become an unmanageable set of mini-trials," predominance is lacking.  *Marlo v. U.P.S.*, 251 F.R.D. 476, 486 (C.D. Cal. 2008), *aff'd*, 639 F.3d 942 (9th Cir. 2011).

### A.   Legal Standards Governing UCL Claims

The commonality and predominance inquiry "begins, of course, with the elements of the underlying cause of action."  *Berger v. Home Depot USA, Inc.*, 741 F.3d 1061, 1068 (9th Cir. 2014).

#### 1.   The Court Has Already Rejected Khasin's Interpretation of the UCL

Khasin asserts that commonality and predominance are easily satisfied in this case because, to prevail under the UCL's "unlawful" prong, class members need only show that they purchased a Hershey's product whose label did not fully comply with FDA regulations.  (Mot. at 5, 16.)  In other words, according to Khasin, individualized issues of reliance, deception and injury cannot overwhelm

common issues because UCL plaintiffs are not required to prove those elements.  *Id.*

This Court has expressly rejected that interpretation of California law.  In granting partial summary judgment to Hershey, the Court made clear that, when a UCL claim is premised on alleged misrepresentations or deceptive statements on food labels, the plaintiff must satisfy the traditional elements of a UCL "fraudulent" prong claim—even if he invokes the "unlawful" prong of the statute. *See Khasin*, 2014 U.S. Dist. LEXIS 62070, at *10-11.  Other rulings by this Court express the same sentiment.  *See De Keczer v. Tetley USA, Inc.*, No. 12-cv-02409, 2014 U.S. Dist. LEXIS 121465, at *21-22 (N.D. Cal. Aug. 28, 2014) (Davila, J.); *Maxwell v. Unilever United States, Inc.*, No. 12-cv-01736, 2014 U.S. Dist. LEXIS 121462, at *22-23 (N.D. Cal. Aug. 28, 2014) (Davila, J.); *Thomas v. Costco Wholesale Corp.*, No. 12-cv-02908, 2014 U.S. Dist. LEXIS 46405, at *14-15 (N.D. Cal. Mar. 31, 2014) (Davila, J.); *Bishop v. 7-Eleven, Inc.*, No. 12-cv-02621, 2014 U.S. Dist. LEXIS 56010, at *13-14 (N.D. Cal. Apr. 21, 2014) (Davila, J.).  Khasin fails to even acknowledge this Court's controlling decisions.

For example, Khasin persists in arguing that "reliance is not required" under the UCL's unlawful prong (Mot. at 16), even though the Court has already rejected that argument ***in this case***.  *See Khasin*, 2014 U.S. Dist. LEXIS 62070, at *10-11.  Khasin also argues that the Court can presume that class members relied on Hershey's flavanol antioxidants statement under *In re Steroid Hormone Product Cases*, 181 Cal. App. 4th 145 at 155 (2010), which Khasin asserts is "indistinguishable from this case." (Mot. at 16).  But this Court has repeatedly rejected that assertion.  *See, e.g.*, *Thomas*, 2014 U.S. Dist. LEXIS 46405, at *23 (distinguishing *Steroid Hormone* because the "the alleged unlawful conduct in that case was not based on a statute prohibiting specific types of misrepresentations").

Khasin's injury arguments also fly in the face of this Court's prior decisions.  Having failed to proffer any model that would enable the Court to determine or apportion restitution, Khasin maintains that all class members were injured in the full amount of what they paid for Hershey's products, because the products were "legally worthless."  (Mot. at 20-21.)  Khasin advanced this same "legally worthless" argument in opposition to Hershey's motion for partial summary judgment, and the Court rejected it. *See Khasin*, 2014 U.S. Dist. LEXIS 62070, at *10-11.  Other courts have done the same.  *See Gitson v. Trader Joe's Co.*, No. 13-cv-01333, 2014 U.S. Dist. LEXIS 33936, at *30-31 (N.D. Cal. Mar. 14, 2014) (plaintiff is required to prove injury; an allegation that the product is "legally worthless" is insufficient);

1    *Wilson v. Frito-Lay N. Am.*, 961 F. Supp. 2d 1134, 1145 (N.D. Cal. 2013) (same); *Kane v. Chobani, Inc.*,

2    No. 12-cv-02425, 2013 U.S. Dist. LEXIS 134385, at *33 (N.D. Cal. Sept. 19, 2013) (same).[4]

3            **2.      The Actual Elements of a UCL Claim**

4            As discussed above, the traditional elements of a UCL claim apply here.  To prevail, a UCL

5    claimant must at a minimum (1) identify a false or misleading statement on which he actually relied,

6    *Thomas*, 2014 U.S. Dist. LEXIS 46405, at *13; (2) prove that a broad cross-section of reasonable

7    consumers was likely to have been misled, *Lavie v. Proctor & Gamble Co.*, 105 Cal. App. 4th 496, 508

8    (2003); and (3) establish, through "substantial evidence," the "specific measure of the amount of [his]

9    loss" caused by the statements, *Colgan v. Leatherman Tool Grp, Inc.*, 135 Cal. App. 4th 663, 699-700

10   (2006); *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 330 n. 15, 334-36 (2011).

11       **B.      Reliance, Deception and Injury Are Not Common Questions**

12           Khasin has failed to show that reliance and deception are questions that can be proven on a class-

13   wide basis.  Moreover, Khasin has proffered no damages model for assessing class members' purported

14   economic injury, or for apportioning restitution on a class-wide basis.

15           **1.      Reliance**

16           Khasin testified that he saw the "natural source of flavanol antioxidants" statement on Hershey's

17   dark chocolate and cocoa, and considered that information in making his purchase.  (Khasin Dep. Tr. at

18   155:5-13.)  But Khasin proffered no evidence that *other* purchasers of Hershey's products saw and relied

19   on that statement.  Class certification should be denied for this reason alone.  *See Mazza v. Am. Honda

20   Motor Co.*, 666 F.3d 581, 595-96 (9th Cir. 2012) (denying certification where not all class members

21   would even have seen the challenged representations); *Jones*, 2014 U.S. Dist. LEXIS 81292, at *67

22   (same); *Tucker v. Pac. Bell Mobile Servs.*, 208 Cal. App. 4th 201, 227-28 (2012) (denying certification

23   where "the issue of materiality or reliance is a matter that would vary from consumer to consumer").

24           In limited circumstances, courts have sometimes been willing to presume class-wide reliance

25   under the UCL.  However, as the Ninth Circuit has explained, such a presumption is appropriate only

26   _____

27   [4] Contrary to Khasin's assertions, Judge Grewal's decision in *Park v. Welch Foods, Inc.*, No. 12-cv-
     06449, 2014 U.S. Dist. LEXIS 37796 (N.D. Cal. Mar. 21, 2014), did not endorse the "legally worthless"
     theory.  Judge Grewal merely held that there were no grounds to strike these allegations from the
28   plaintiff's complaint because they did not meet the scandalous or impertinent standard under Rule 12(f).

when it is "justif[ied]" by the factual circumstances of the case. *Mazza*, 666 F.3d at 595-96. Courts have thus presumed reliance when the challenged claim was so ubiquitous that "there was little doubt" the entire consuming public saw it, and the claim at issue literally involved matters of life and death. *See id.* (discussing *In re Tobacco II Cases*, 46 Cal. 4th 298 (2009)). In other cases, courts have presumed reliance when the challenged claim was the product's only selling feature, and no consumer reasonably would have bought the product if the claim had not been present. *See Wiener v. Dannon Co.*, 255 F.R.D. 658, 669-70 (C.D. Cal. 2009) (presuming reliance where challenged claims were *the* "distinguishing characteristic of the Product" and a consumer would have "no reason" to choose the product otherwise).

Neither situation is present here. The "natural source of flavanol antioxidants" statement is not featured prominently on Hershey's labels. On Hershey's Special Dark chocolate bars, the statement appears in fine print around the edge of a "seal" in the corner of the label. (*See ante* at 3.) Some labels for Hershey's cocoa included the statement only on a *side* label. (*See* Podhajsky Decl. ¶¶ 7-8.) *See Jones*, 2014 U.S. Dist. LEXIS 81292, at *67 (denying certification where "some class members will never have seen the challenged statements" as they "were on the top or back of the [box]"). Some Hershey dark chocolate and cocoa products, at various times during the class period, did not include the statement *at all*. (Podhajsky Decl. ¶¶ 3-6.) Thus, many purchasers of the challenged products may never have read the flavanol antioxidants statement or even known it was there—a reality that Khasin himself conceded. (*See* Khasin Dep. Tr. at 271:25-272:19 (admitting it was entirely "possible" that consumers never read the statement).)

Moreover, Hershey proffered a survey demonstrating that, even when consumers focus on the flavanol antioxidant statement, they do not find it material. The survey was conducted by Dr. David Stewart, a Professor of Marketing and Law at Loyola Marymount University in Los Angeles and a former survey expert for the Federal Trade Commission. (Stewart Report ¶¶ 7, 12.) Dr. Stewart surveyed 400 California consumers interested in purchasing dark chocolate. (*Id.* ¶ 21.) Half the respondents were shown the actual Hershey's dark chocolate label, while the others were shown a version of the label with the "flavanol antioxidants" statement removed. Both groups were then questioned about their interest in purchasing the product and their perception of its price. Comparing

the responses of the two groups, Dr. Stewart found that the antioxidants statement has "no impact on California consumers' interest in purchasing" the products or their "perceptions of the [p]roducts' prices." (*Id.* ¶¶ 34, 42-45.)

Survey evidence showing that "materiality and reliance varies from consumer to consumer" is usually the best evidence that a UCL claim is "not subject to common proof." *Algarin v. Maybelline, LLC*, 300 F.R.D. 444, 457 (S.D. Cal. 2014); *see also Tucker*, 208 Cal. App. 4th at 227-28 (certification of UCL class inappropriate where "the issue of materiality or reliance . . . would vary from consumer to consumer"). Khasin offered no rebuttal to Dr. Stewart's survey and no survey evidence of his own. Rather, Khasin relies on a declaration by Dr. Caswell, a professor of "agricultural economics," who states in conclusory fashion that Hershey's flavanol antioxidant statement is material.[5] An expert's mere "subjective belief or unsupported speculation" is entitled to no weight. *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 589-90 (1993). For precisely this reason, courts have refused to rely on Dr. Caswell's opinion in other food labeling cases. *See Jones*, 2014 U.S. Dist. LEXIS 81292, at *56-57, *65 (refusing to credit a virtually identical "*ipse dixit*" declaration by Dr. Caswell).

Khasin urges the Court to presume that the flavanol antioxidants statements were material to all consumers, because otherwise Hershey would not have included it on product labels. Such circular reasoning would mean that every label statement by a manufacturer is material simply by virtue of the fact that it was made—a "rather weak" position that has previously been rejected. *Jones*, 2014 U.S. Dist. LEXIS 81292, at *56. Moreover, as Hershey's expert Dr. Stewart explained, chocolate and cocoa are "low-cost," "frequently purchased" products that people buy out of habit, hunger or impulse. (*See* Stewart Rebuttal Report, Ex. D to Tu Decl. (Ex. C to Stewart Decl.) ¶¶ 14-16.) Consumers pay very "little attention to information on labels" of such products (*id.* ¶ 17), and considerations of taste and familiarity play an outsize role. *Cf. Wiener*, 255 F.R.D. at 669-70 (presumption of reliance would be inappropriate where consumers could have purchased product for its characteristic "flavor," not for its claimed health benefits).

---

[5] At her deposition, Dr. Caswell testified that this conclusion was based on the"assum[ption]" that "consumers rely on every piece of information" on a product's label. (Tu Decl., Ex. G (hereinafter "Caswell Dep. Tr.") at 52:5-9.)

## 2.      Deception

Even if Khasin could somehow show that all class members saw and relied upon the flavanol antioxidants statement, that alone would not suffice.  Khasin must also prove that class members were actually *deceived—i.e.*, that they "received a product different from the one" they were led to expect.[6] *Thomas*, 2014 U.S. Dist. LEXIS 46405, at *15-16 (rejecting UCL attack on "0 grams trans fat" claims where plaintiff had not sufficiently alleged that the claims were "untruthful or misleading"); *see Khasin*, 2014 U.S. Dist. LEXIS 62070, at *10 (even under UCL "unlawful" prong, "plaintiffs [must] demonstrate the purchase of products as a result of deceptive advertising").

Khasin has not shown that he himself, let alone the entire class, was deceived by Hershey's flavanol antioxidants statement.  On the contrary, Khasin conceded at his deposition that, in his opinion, the statement is true.  (Khasin Dep. Tr. at 185:14-21; 195:3-9; 202:4-10.)  Moreover, as detailed in Hershey's motion for summary judgment, Khasin failed to rebut the testimony of Hershey's health and nutrition expert, Dr. Frank Sacks, who opined on the basis of a vast body of scientific research that Hershey's label statement is unequivocally true.  (Sacks Report ¶¶ 29, 85.)

Of course, even a literally truthful statement can violate the UCL if it is likely to mislead consumers.  *See Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008).  Seizing on this principle, Khasin sprinkles the words "misleading" and "deceptive" throughout his motion.  (Mot. at 1, 6.)  But Khasin does not even identify what misleading message *he believes* class members received from Hershey's flavanol antioxidant statement, let alone submit "evidentiary proof" that all class members *actually took away* that message.  *Comcast*, 133 S. Ct. at 1432.[7]  Accordingly, Khasin has failed to demonstrate that class members were misled by Hershey's truthful statement.

---

[6] The California Supreme Court has explained that "reliance" under the UCL must be interpreted "in the ordinary fraud" sense of the word, which means that a plaintiff must have relied "on the truth or falsity of a defendant's statement, not merely on the fact it was made."  *Kwikset*, 51 Cal. 4th at 327 n.10.

[7] In fact, Khasin denied under oath that he himself received the misleading messages alleged in the Amended Complaint.  *See* Khasin Dep. Tr. at 74:6-22 (no familiarity with FDA regulations with which labels supposedly complied); 258:8-260:3 (no understanding of an RDV or RDI); 174:1-15 (no expectation that flavanols are present in Hershey's products in a specific amount); 79:23-80:18 (no understanding that candy bars are healthy); 167:18-22 (no concern about fat or sodium levels in chocolate); 196:20-25 (same as to cocoa).

3.      **Injury**

In *Comcast*, the Supreme Court held that, to meet the predominance requirement, a plaintiff must offer a damages model that "measure[s] only those damages attributable" to the alleged wrongdoing and show that, using that model, "damages are capable of measurement on a classwide basis." 133 S. Ct. at 1429, 1433.[8]  Khasin proposes two damage models here:  (1) a full refund of the prices consumers paid for the challenged products, and (2) nominal damages for all class members.  Neither passes muster.

a.      **Full Refund**

It is well-established that a full refund is not an available remedy in a case such as this.  Rather, the "proper measure of restitution in a [food] mislabeling case" is "the difference [in value] between [the] product as labeled and the product as received."  *Jones*, 2014 U.S. Dist. LEXIS 81292, at *72-73; *see, e.g.*, *Ries v. Ariz. Bevs. USA, LLC*, No. 10-cv-01139, 2013 U.S. Dist. LEXIS 46013, at *22-23 (N.D. Cal. Mar. 28, 2013) ("The proper measure of restitution . . . [is] the difference between the value of an AriZona Iced Tea billed as all-natural and the value of a comparable beverage not marketed or sold at a premium due to such claims.").  A full refund is not authorized because it would provide plaintiffs with a "windfall."  *POM Wonderful*, 2014 U.S. Dist. LEXIS 40415, at *13.[9]

Khasin does not present any means of estimating the value deficit or "price premium" attributable to Hershey's flavanol antioxidants statement.  Courts in other food mislabeling cases have deemed this *per se* grounds for denial of class certification.  *See Lanovaz*, 2014 U.S. Dist. LEXIS 57535, at *24 (certification unavailable where plaintiffs "do not present any damages model capable of estimating" "price premium"); *ConAgra*, 2014 U.S. Dist. LEXIS 116103, at *106-07 (same).

---

[8] The Ninth Circuit has endorsed the first prong of *Comcast*.  *See Leyva v. Medline Indus.*, 716 F.3d 510, 514 (9th Cir. 2013).  In *Leyva*, however, the Ninth Circuit also stated that "the presence of individualized damages cannot, by itself, defeat certification"—at least, where those individualized damages "could feasibly and efficiently be calculated" using objective records.  *Id.*  This aspect of the Ninth Circuit's decision is in tension with *Comcast*, but it is irrelevant here.  Khasin has not proffered any damages model by which restitution "could feasibly and efficiently be calculated."

[9] Khasin insists that "courts have embraced" his full-refund measure of damages.  (Mot. at 18.)  This is incorrect.  None of the cases Khasin cites involved a UCL claim based on the purchase of an allegedly mislabeled product.  Khasin's reliance on cases brought by the government under the Federal Trade Commission Act is also misplaced because courts have refused "to import the remedies from the FTC Act into a California UCL" case.  *Jones*, 2014 U.S. Dist. LEXIS 81292, at *73-74 n.37.

Though Khasin bears the burden of proof on this issue, Hershey proffered an expert, Dr. Gregory Bell, who showed that there is *no* "price premium" attributable to Hershey's statements.  Dr. Bell is a Harvard-trained economist with more than 20 years of experience in business economics. (*See* Bell Report ¶¶ 1-2.)  As Dr. Bell explained, for reasons unique to the U.S. market for chocolate and confectionary products, Hershey's products are typically "line priced" with competitors' products, such that that all products of a similar size are priced the same.  (*Id.* ¶ 22.)

Dr. Bell analyzed historical sales data to compare (1) the prices of Hershey's dark chocolate and cocoa products before the flavanol antioxidants statement was added to the products' labels versus the prices of the same products after the statement was added; and (2) the prices of these products versus competing products that were never labeled with a flavanol antioxidant statement.  (*Id.* ¶¶ 16-22.)  This "empirical evidence shows there is no price premium attributable" to Hershey's flavanol antioxidant statement.  (*Id.* ¶ 6d.)  In fact, products "labeled with the [disputed] statements were priced equally . . . to similar products without" them.  (*Id.* ¶¶ 6d, 7.)  Khasin offered no rebuttal to Dr. Bell's opinions.

Khasin asserts that a full refund is the appropriate measure of restitution because class members received no value from the Hershey products.  This makes no sense.  Even if Hershey's labels violated a technical FDA labeling rule, class members still received value in the form of a good-tasting candy, caloric energy, or a useful baking ingredient.  *Cf. POM Wonderful*, 2014 U.S. Dist. LEXIS 40415, at *14 n.2 (consumers received "hydration, flavor, [and] energy" from juices, even if they were mislabeled).  Khasin himself admitted that he received value from his Hershey products.  (Khasin Dep. Tr. at 244:5-20 (admitting that he "got . . . value" from the products because "they tasted good").[10]

Finally, Khasin argues that, even if Hershey's products had some economic value, they nevertheless were "legally worthless."  But a UCL claim requires a plaintiff to "demonstrate . . . *economic* injury," not abstract *legal* injury.  *Kwikset*, 51 Cal. 4th at 323.  As noted above, courts have rejected the fiction that an alleged labeling violation automatically renders a product "worthless" for

---

[10] Khasin submitted an affidavit with his motion in which he states, in direct contradiction to his deposition testimony, that he received no value from "[a]t least 90% of his purchases" because the Hershey products he bought "were consumed by someone other than [him]." (Dkt. 159, Ex. 3, ¶¶ 7, 11, 15.)  The fact that other people *consumed* the products does not mean that Khasin received no value when he *purchased* them.  It means only that Khasin voluntarily transferred the value he received to someone else.  (*See* Khasin Dep. Tr. at 244:25-245:11 (conceding that this is the case).)

purposes of the UCL.  *See Gitson*, 2014 U.S. Dist. LEXIS 33936, at \*30-31; *Wilson*, 961 F. Supp. 2d at 1145; *Kane*, 2013 U.S. Dist. LEXIS 134385, at \*33-34.

### b.   Nominal Damages

As a fallback position, Khasin proposes that, even if restitution cannot be calculated, the Court should nevertheless award every class member nominal damages.  Khasin cites no case in which a California court (state or federal) has awarded nominal damages in a putative class action.  *See Stilson v. Reader's Digest Ass'n*, 28 Cal. App. 3d 270, 273-74 (1972) (recognizing "nominal damages" would provide no "benefit of substance" to class members).  Indeed, in the one other food labeling case where Khasin's counsel made this proposal, the court rejected it out of hand.  *See Jones*, 2014 U.S. Dist. LEXIS 81292, at \*85-86 (citing *Stilson*).

Khasin cites boilerplate statements that nominal damages are appropriate in certain cases where actual damages cannot be shown.  But none of the authorities Khasin cites is a UCL case.  *See Day v. AT&T Corp.*, 63 Cal. App. 4th 325, 339 (1998) ("in the absence of a measurable loss," the UCL "does not allow the imposition of a monetary sanction").  Only equitable relief—*i.e.*, restitution— is available under the UCL.  *See Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1149 (2003) (UCL remedies are "limited" to equitable relief; "damages cannot be recovered").  Like other forms of damages, "nominal damages are legal, not an equitable, remedy."  *United States v. Marolf*, 173 F.3d 1213, 1219 n.5 (9th Cir. 1999).  Khasin's nominal damages proposal is thus a non-starter.

### C.   *Tobacco II* Is Distinguishable

Khasin's failure to establish that reliance, deception and injury are susceptible to class-wide proof is fatal to his motion for class certification.  In response, Khasin will undoubtedly point to the California Supreme Court's *Tobacco II* decision, which stated that "relief under the UCL is available without individualized proof of deception, reliance and injury."  *Tobacco II*, 46 Cal. 4th 298 at 326-27.  As Khasin sees it, this means that commonality and predominance are automatically satisfied in a UCL case so long as the named plaintiff proves that *he* relied, was deceived, and was injured.  (Mot. at 6-7.)

This drastically "overstates the holding of *Tobacco II*."  *Campion v. Old Repub. Home Prot. Co.*, 272 F.R.D. 517, 535 (S.D. Cal. 2011).  The question there was limited to "who in a UCL class action must comply with Proposition 64's *standing* requirements, the class representatives or all unnamed class

members." *Tobacco II*, 46 Cal. 4th at 306 (emphasis added).  In holding that absent class members need not establish *standing*, the court did not determine that issues of deception, reliance and injury are irrelevant to *commonality and predominance*.  Quite to the contrary, *Tobacco II* recognized that, in a UCL class action (as in any other), plaintiffs may only "present claims on behalf of others who have similar, [if] not identical, interests," and that a class may not be "so broad as to include individuals" who could not "maintain the action on their own behalf." *Id.* at 318-19.

Some courts, therefore, have deemed *Tobacco II* "irrelevant" to the commonality and predominance analyses "because the issue of 'standing' simply is not the same thing as the issue of 'commonality.'" *Cohen v. DirecTV, Inc.*, 178 Cal. App. 4th 966, 981 (2009).  In fact, the California Court of Appeal has said that "no language in *Tobacco II* . . . suggests" that the California Supreme Court intended "to dispatch with an examination of commonality when addressing a motion for class certification under the UCL." *Davis-Miller v. Auto. Club of S. Cal.*, 201 Cal. App. 4th 106, 123-25 (2011) (quoting *Cohen*, 178 Cal. App. 4th at 981).

Even those decisions that find *Tobacco II* relevant to commonality and predominance recognize that it "does not stand for the proposition that causation and injury should be inferred on a class-wide basis in every [UCL] case." *Jones*, 2014 U.S. Dist. LEXIS 81292, at *53 (internal quotation marks omitted).  Rather, these cases at most hold that *Tobacco II* allows a *presumption* or *inference* that the named plaintiff's experience was shared class-wide.  Crucially, however, this "presumption . . . does not arise" where the circumstances "do not justify it." *Mazza*, 666 F.3d at 595-96; *see also Tucker*, 208 Cal. App. 4th at 227-28 ("[*Tobacco II*'s] rule permitting an inference of common reliance . . . will not arise where the record will not permit it.").

No presumption of class-wide reliance, deception or injury could be justified here.  Unlike *Tobacco II*, which concerned the tobacco industry's "decades-long" campaign to suppress and deny the fact that smoking kills, *Mazza*, 666 F.3d at 595-96, Khasin disputes one statement that appeared in small print on certain labels for dark chocolate and cocoa.  Not all consumers saw the statement in the first place.  And Hershey's survey shows that consumers in fact do not give the statement any weight.  On similar facts, numerous courts post-*Tobacco II* have refused to certify UCL classes for lack of

1   commonality and predominance.[11]  The outcome should be no different here.

2   **III.    KHASIN IS NOT TYPICAL OF THE CLASS**

3       The typicality criterion requires that "the claims or defenses of the representative parties [be]

4   typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3).  Its purpose is "to assure that the

5   interest of the named representative aligns with the interests of the class." *Hanon v. Dataproducts*

6   *Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).  Khasin has not shown that he is typical of the class he

7   purports to represent, and his interests and those of the class are not aligned.

8       The class complaint alleges that Hershey's flavanol antioxidant statement is false.  (AC ¶¶ 9, 41,

9   50.)  But Khasin has admitted the statement is true.  (*See ante* at 5 (citing relevant deposition

10  testimony).)  The complaint also alleges that Hershey's statement misleads consumers to believe that

11  Hershey's products comply with FDA regulations, are healthy, contain flavanol antioxidants in specific

12  amounts, and do not contain "disqualifying" levels of fat and sodium.  (AC ¶¶ 60, 73, 85.)  But Khasin

13  was not personally misled in any of these ways.  (*See ante* at 5 (citing relevant deposition testimony).)

14  And whereas Khasin claims to live in fear of being "arrested and prosecuted" for possessing Hershey's

15  dark chocolate and cocoa products (Mot. at 20), he has submitted no evidence that other class members

16  share this (unfounded) concern.  *See Oshana v. Coca-Cola Co.*, 472 F.3d 506, 514 (7th Cir. 2006) (a

17  named plaintiff's idiosyncratic reaction can make him atypical).

18  **IV.    KHASIN AND HIS COUNSEL ARE NOT ADEQUATE CLASS REPRESENTATIVES**

19      Rule 23(a)(4)'s adequacy criterion asks whether "the named plaintiffs and their counsel have any

20  conflicts of interest with other class members" and whether they will "prosecute the action vigorously

21  on behalf of the class." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).  It arises out of

22  "due process concerns" that "absent class members must be afforded adequate representation before the

23  entry of a judgment which binds them." *Id.*  Khasin and his counsel fail on both counts.

24  ───────────────

25  [11] *See Mazza*, 666 F.3d at 596 (distinguishing *Tobacco II* where not all class members saw the challenged statement); *Jones*, 2014 U.S. Dist. LEXIS 81292, at *64 (distinguishing *Tobacco II* where

26  class members' understanding of the statement was insufficiently uniform); *Astiana v. Kashi*, 297 F.R.D. 493, 508 (S.D. Cal 2013) (same); *ConAgra*, 2014 U.S. Dist. LEXIS 116103, at *103-05 (distinguishing

27  *Tobacco II* where plaintiff's "evidence regarding … materiality" was too "weak"); *Tucker*, 208 Cal. App. 4th at 227-28 (distinguishing *Tobacco II* where evidence showed that "materiality [and] reliance

28  [were] matter[s] that would vary from consumer to consumer"); *Cohen*, 178 Cal. App. 4th at 979 (same); *Algarin*, 300 F.R.D. 444, 457 (same).

### A.      Conflicts Of Interest

Courts recognize that the "structure of class actions . . . gives class action lawyers an incentive" to seek outcomes "that enrich themselves but give scant reward to class members." *Thorogood v. Sears, Roebuck & Co.*, 627 F.3d 289, 293 (7th Cir. 2010) (emphasis deleted).  To safeguard against such abuses, a court must be satisfied that class counsel will "prosecute the case in the interest of the class," and not "just in their interest as lawyers" wanting "compensation for their efforts."  *Creative Montessori Learning Ctrs. v. Ashford Gear LLC*, 662 F.3d 913, 917-18 (7th Cir. 2011); *see also Radcliffe v. Experian Info. Solutions*, 715 F.3d 1157, 1167 (9th Cir. 2013) ("responsibility of class counsel to absent class members" cannot "permit even the appearance of divided loyalties").

Here, it is clear that the self-interest of Khasin's lawyers is the driving force behind the litigation. Khasin admitted at deposition that he was recruited to lend his name to this lawsuit by his wife who, at the time, was the legal secretary to his counsel Mr. Gore.  (*See ante* at 6 (citing relevant deposition testimony).)  Khasin also testified that, prior to meeting with Mr. Gore, he was a lifelong purchaser of Hershey's products with no complaints about his purchases and no interest in suing Hershey.  (*Id.*)  The lawsuit was entirely Mr. Gore's idea.  (*Id.*)  Courts have rejected this "cart before the horse" approach— conceiving of a lawsuit and then finding a plaintiff to enable it—as "abhorrent" and a clear sign that counsel will not adequately represent absent class members.  *Bodner v. Oreck Direct, LLC*, No. 06-cv-4756, 2007 U.S. Dist. LEXIS 30408, at *5-7 (N.D. Cal. Apr. 25, 2007).[12]

A court must also consider the named plaintiff's ability to "protect the interests of the class against the possibly competing interests of the[ir] attorneys."  *Maywalt v. Parker & Parsley Petrol. Co.*, 67 F.3d 1072, 1077-78 (2d Cir. 1995).  In particular, the plaintiff must have "a sufficient level of knowledge" and involvement in the case "to be capable of 'controlling' . . . the litigation."  *Berger v. Compaq Computer Corp.*, 257 F.3d 475, 482-83 (5th Cir. 2001).  Here, Khasin's actions display a disturbing lack of oversight and confirm that Khasin is nothing more than a mouthpiece for counsel.

---

[12] *See also Moheb v. Nutramax Labs., Inc.*, No. 12-cv-3633, 2012 U.S. Dist. LEXIS 167330, at *14-15 (C.D. Cal. Sept. 4, 2012) (plaintiff inadequate where she was recruited through "friendship with the mother of one of her counsel"); *Sanchez v. Wal-Mart Stores, Inc.*, No. 06-cv-02573, 2009 U.S. Dist. LEXIS 48428, at *9-10 (E.D. Cal. May 28, 2009) (plaintiff inadequate where she "learned that she allegedly had a claim" only after "class counsel contacted her and told her so").

As the Court has already noted, Khasin filed two complaints rife with allegations that he has since disavowed.  *See Khasin*, 2014 U.S. Dist. LEXIS 62070 at *8.  At deposition, Khasin admitted that, as far as he could recall, he did not even review these patently inaccurate pleadings before they were filed in his name.[13]  (Khasin Dep. Tr. at 254:2-256:16.)  Moreover, Khasin did not know which of the various counsel of record actually represent him.[14]  (*Id.* 71:5-76:8.)  He had no idea how his own lawyers are being compensated.[15]  (*Id.* 44:12-45:17).  Indeed, Khasin did not even know whether his own wife continues to be involved in this case.[16]  (*Id.* 252:9-253:11.)

Khasin has also shown that he is willing to say whatever fits his counsel's legal needs of the moment.  At deposition, Khasin testified that he "got . . . value" from the challenged products because "they tasted good."  (*Id.* 244:5-20.)  But now that Khasin's counsel has abandoned any effort to establish a "price premium," Khasin has submitted an affidavit that parrots counsel's "unlawful product" theory. Khasin now states, under oath, that any benefits he received from Hershey's products "would have been more than negated by the negative monetary value attributable to the product being misbranded and illegal to buy and sell under California law."  (Dkt. 159, Ex. 3 at 8-9, 12-13, 16-17.)  If Khasin's concerns about misbranding were sincere, he presumably would have warned his family to stop purchasing Hershey products—but he has not.  (Khasin Dep. Tr. at 279:13-281:21.)

Considering the dubious origins of this lawsuit, Khasin's total lack of oversight, and his willingness to alter his testimony to fit counsel's needs, he cannot be trusted to "protect the interests of the class against the . . . competing interests of [his own] attorneys."  *Maywalt*, 67 F.3d at 1077-78.

### B.    Vigorous Prosecution

Typically, when a plaintiff moves to certify a class at the outset of a case, a court must assess how likely it is that the proposed class counsel will vigorously prosecute the action.  This is crucial, because absent class members are bound by the result of a certified class action, whether counsel gave

---

[13] *See Bodner*, 2007 U.S. Dist. LEXIS 30408, at *3 (failure to review pleadings indicates inadequacy).

[14] *See In re Quarterdeck Office Sys. Sec. Litig.*, No. 92-cv-3970, 1993 U.S. Dist. LEXIS 19806, at *18 (C.D. Cal. Sept. 30, 1993) (inability to identify counsel indicates inadequacy).

[15] *See Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 955 (9th Cir. 2009) (compensation arrangements may "create[] conflicts among . . . class representatives, their counsel, and the rest of the class").

[16] *See Zylstra v. Safeway Stores, Inc.*, 578 F.2d 102 (5th Cir. 1978) (spouse's employment by class counsel is a *per se* conflict of interest).

his best effort or merely went through the motions.  Here, no guesswork is required.  Fact and expert discovery are closed, and counsel's failures to adequately represent the interests of absent class members speak for themselves.  For example:

- **Counsel failed to conduct a reasonable investigation prior to filing suit.**  Both the original and Amended Complaint included numerous allegations that Khasin subsequently admitted had no basis in fact.  *See* Fed. R. Civ. P. 11(b) (counsel must make "an inquiry reasonable under the circumstances" to verify that a complaint's allegations "have evidentiary support").

- **Counsel did not even try to rebut the opinions of Hershey's experts.**  As noted above, Hershey proffered three experts, who demonstrated that (1) Hershey's flavanol antioxidant statement is true (Dr. Sacks); (2) the statement does not affect consumers' interest in purchasing the products or their subjective impressions of the products' value (Dr. Stewart); and (3) the statement has no impact on the products' prices (Dr. Bell).  Khasin's counsel proffered no rebuttal experts and served no rebuttal reports.  When given the opportunity to depose Hershey's experts, counsel declined.  (Tu. Decl., Ex. E-F.)

- **Counsel submitted no damages report.**  Notwithstanding the Supreme Court's holding in *Comcast* that a class cannot be certified unless the plaintiff proffers a viable class-wide damage model, counsel submitted no damages report in support of class certification.  During discovery, Khasin served a report from Dr. Capps, a damages expert whom Khasin's counsel has proffered in more than a dozen other food labeling cases.  But Dr. Capps did not actually perform a damages calculation in this case, and his shoddy methods have been exposed by other courts.

- **Counsel failed to timely move for class certification.**  Counsel moved for class certification only after discovery was closed, and Hershey had moved for summary judgment on Khasin's individual claims.  Such a "failure" to "move to certify with alacrity" alone "undermines confidence in the zeal with which [counsel] would represent the interests of absent class members."  *Rattray v. Woodbury Cnty.*, 614 F.3d 831, 836 (8th Cir. 2010); s*ee also Balarezo v. Nth Connect Telecom, Inc.*, No. 07-cv-05243, 2011 U.S. Dist. LEXIS 40648, at \*4-5 (N.D. Cal. Apr. 4, 2011) ("failure to move for class certification in a timely manner . . . bears strongly on . . . adequacy").

- **Counsel continues to press a discredited liability theory.**  Numerous courts, including this Court (in this case and others) and the California Supreme Court, have rejected counsel's central liability theory: that the UCL's "unlawful" prong automatically entitles consumers to recover for the purchase of a mislabeled product without proof of reliance, deception or injury.  Despite authoritative decisions holding that UCL plaintiffs are required to prove the traditional elements of a UCL claim, counsel never modified their litigation strategy in this case.  As a result, the absent class members' claims now rest entirely on counsel's untenable legal theory.

In short, Khasin and his attorneys have litigated this case in a manner that has compromised the interests of absent class members.  The Court should not "place [its] imprimatur on [these] litigation practices" by allowing Khasin and his counsel to serve as Court-appointed fiduciaries.  *Bodner*, 2007 U.S. Dist. LEXIS 30408, at \*7.

## V.    KHASIN LACKS STANDING TO REPRESENT A RULE 23(b)(2) CLASS

On occasion, courts have found that, where common issues do not "predominate," as required to certify a money-damages class under Rule 23(b)(3), a class can nevertheless be certified under Rule

1    23(b)(2) solely for purposes of injunctive relief.  That is not a viable option in this case.

2         Although Rule 23(b)(2) contains no explicit "predominance" requirement,[17] the requirements of

3    ascertainability, commonality, typicality and adequacy must be met before *any* class can be certified.

4    For the reasons shown above, Khasin has failed to carry his burden of proof as to any of these elements.

5    In addition, however, Khasin cannot represent a Rule 23(b)(2) class because he lacks Article III standing

6    to pursue injunctive relief.  *See Lierboe v. State Farm Mut. Auto Ins. Co*., 350 F.3d 1018, 1022-23 (9th

7    Cir. 2003) (a plaintiff without standing to bring a claim may not assert that claim on behalf of others).

8         The reasons why Khasin lacks standing to pursue an injunction are detailed in Hershey's pending

9    motion for summary judgment.  (Dkt. 139 at 16-17.)  In a nutshell, to establish standing to seek

10   injunctive relief, a plaintiff must be at "real" and "immediate" risk of being harmed again in the future.

11   *See City of Los Angeles v. Lyons*, 461 U.S. 95, 101-02 (1983).  In a mislabeling case such as this, this

12   requires the plaintiff to show that he has concrete plans to buy the mislabeled product in the future.

13   Otherwise there is *no* risk of future harm—let alone a "real" and "immediate" one.  *See Becker v. Skype*

14   *Inc*., No. 12-cv-06477, 2014 U.S. Dist. LEXIS 17583, *10 (N.D. Cal. Feb. 10, 2014) (Davila, J.).

15        The AC did not allege that Khasin had concrete future plans to purchase Hershey's dark

16   chocolate and cocoa products labeled with the flavanol antioxidant statement.  Moreover, at his

17   deposition, Khasin testified that he has foresworn Hershey's products because he believes (incorrectly)

18   that Hershey has been dishonest.  This renders Khasin ineligible to seek injunctive relief.  *See Garrison*

19   *v. Whole Foods Mkt. Grp., Inc.*, No. 13-cv-05222, 2014 U.S. Dist. LEXIS 75271, at *19-21 (N.D. Cal.

20   June 2, 2014); *Werdebaugh v. Blue Diamond Growers*, No. 12-cv-2724, 2014 U.S. Dist. LEXIS 71575,

21   at *30-33 (N.D. Cal. May 23, 2014).

22        Consistent with his opposition to summary judgment, Khasin submitted an affidavit with the

23   instant motion that states that he is "interested" in purchasing Hershey's products again (whatever that

24   means), but only once they are "properly labeled" and "no longer misbranded."  (Dkt. 159, Ex. 3 ¶¶ 3-

25   5.)  These averments do not cure Khasin's lack of standing.  As this Court has recognized, mere "'some

---

[17] Even so, many courts subject Rule 23(b)(2) classes to a "cohesion" test that closely resembles Rule

27   23(b)(3)'s predominance test.  *See In re St. Jude Med., Inc.*, 425 F.3d 1116, 1122 (8th Cir. 2005);
     *Barnes v. Am. Tobacco Co*., 161 F.3d 127, 142-43 (3d Cir. 1998); *Connelly v. Hilton Grand Vacations*

28   *Co.*, 294 F.R.D. 574, 579 (S.D. Cal. 2013); *Sweet v. Pfizer*, 232 F.R.D. 360, 374 (C.D. Cal. 2005).

1   day' intentions" to take action "without any description of concrete plans" are "not sufficient to confer

2   standing" to seek an injunction.  *Becker*, 2014 U.S. Dist. LEXIS 17583, at *9-10.  Khasin cannot

3   possibly be at risk of future injury if, as his affidavit concedes, he does not intend to purchase Hershey's

4   products *unless and until* Hershey discontinues its current labeling practice.  *See id.* at *10-11.

5                                       <u>**CONCLUSION**</u>

6         Khasin has staked his entire case on his discredited "unlawful product" theory.  The Court has

7   already rejected this liability theory, and could put an end to this case by simply granting summary

8   judgment to Hershey.  But if the Court does reach the certification question, the answer is clear.  Khasin

9   failed even to address the crucial issue of ascertainability; he has adduced no valid evidence in support

10  of the other Rule 23 factors, although it was his burden to do so; and he lacks standing to represent an

11  injunctive-relief class.  Khasin's motion for class certification must be denied.

12

13  Dated: October 14, 2014              By: _____ */s/ Steven A. Zalesin* _____

14                                            Steven A. Zalesin (admitted *pro hac vice*)

15                                       PATTERSON BELKNAP WEBB & TYLER LLP
                                         1133 Avenue of the Americas
16                                       New York, New York 10036
                                         Telephone:  (212) 336-2000
17

18                                       Attorneys for Defendant The Hershey Company

19

20

21

22

23

24

25

26

27

28

                                         MEMORANDUM OF LAW IN OPPOSITION TO
                                         PLAINTIFF'S MOTION FOR CLASS CERTIFICATION
                                         CV12-01862 EJD